(iii) the aggregate amount of Restricted Payments made subsequent to the Issue Date (the amount expended for such purposes, if other than cash, being the fair market value of such property as determined in good faith by the Board of Directors of the Company) shall exceed the sum of (the "*Restricted Payment Basket*"):

(w) 50% of the cumulative Consolidated Net Income (or if cumulative Consolidated Net Income shall be a loss, minus 100% of such loss) of the Company earned subsequent to the fiscal quarter during which the Issue Date occurs and on or prior to the date the Restricted Payment occurs (the "*Reference Date*") (treating such period as a single accounting period); plus

(x) 100% of the aggregate Net Equity Proceeds received by the Company from any Person (other than a Subsidiary of the Company) from the issuance and sale subsequent to the Issue Date and on or prior to the Reference Date of Qualified Capital Stock of the Company (including Capital Stock issued upon the conversion of convertible Indebtedness or in exchange for outstanding Indebtedness but excluding aggregate Net Equity Proceeds from the sale of Capital Stock to the extent used to repurchase or acquire shares of Capital Stock of the Company or a Subordinated Obligation of the Company or a Guarantor pursuant to clause (2) of the next succeeding paragraph (b) below); plus

(y) without duplication of any amounts included in clause (iii)(x) above, 100% of the aggregate Net Equity Proceeds of any equity contribution received by the Company from a holder of the Company's Capital Stock subsequent to the Issue Date; plus

(z) to the extent that any Investment (other than a Permitted Investment) that was made after the Issue Date is sold for cash or otherwise liquidated or repaid for cash, the net cash proceeds received with respect to such sale, liquidation or repayment of such Investment, but only to the extent not included in the calculation of Consolidated Net Income.

(b) Notwithstanding the foregoing, the provisions set forth in paragraph (a) do not prohibit:

(1) the payment of any dividend within 60 days after the date of declaration of such dividend if the dividend would have been permitted on the date of declaration;

(2) the acquisition of any shares of Capital Stock of the Company or the repurchase, redemption or other repayment of any Subordinated Obligation of the Company or any Guarantor in exchange for or solely out of the proceeds of the substantially concurrent sale (other than to a Subsidiary of the Company) of shares of Qualified Capital Stock of the Company;

(3) the repurchase, redemption or other repayment of any Subordinated Obligation of the Company or any Guarantor in exchange for or solely out of the proceeds of the substantially concurrent issuance (other than to a Subsidiary of the Company) of a Subordinated Obligation of the Company or such Guarantor with no

51

payments of principal required until at least six months following the maturity date of the Notes;

(4)     the making of distributions, loans or advances in an amount not to exceed (x) $5.0 million to pay the ordinary operating costs of Holdings (including, without limitation, directors fees, indemnification obligations, professional fees and expenses) related to Holdings' ownership of Capital Stock of the Company in any fiscal year plus (y) any other amounts of corporate overhead expenses payable by Holdings which were deducted in calculating the Consolidated Net Income of the Company in accordance with GAAP;

(5)     the payment by the Company of cash dividends to Holdings in the amounts and at the times of any payment by Holdings in respect of taxes, *provided* that (x) the amount of cash dividends paid pursuant to this clause (5) to enable Holdings to pay federal and state income taxes at any time shall not exceed the lesser of (A) the amount of such federal and state income taxes owing by Holdings at such time for the respective period and (B) the amount of such federal and state income taxes that would be owing by the Company and its Subsidiaries on a consolidated basis for such period if determined without regard to Holdings' ownership of the Company and (y) any refunds shall promptly be returned by Holdings to the Company;

(6)     payments for the purpose of and in an amount equal to the amount required to permit Holdings to redeem or repurchase Holdings' common equity or options in respect thereof, in each case in connection with the repurchase, put or call provisions under employee stock option, management subscription, retained share or stock purchase agreements or other agreements to compensate management employees; *provided* that such redemptions or repurchases pursuant to this clause (6) shall not exceed $15.0 million per annum; *provided* that amounts not used pursuant to this clause (6) in prior years shall not be carried forward for use in future years;

(7)     so long as no Default or Event of Default shall have occurred and be continuing, payments not to exceed $500,000 in the aggregate to enable Holdings to make payments to holders of its Capital Stock in lieu of issuance of fractional shares of its Capital Stock;

(8)     payments allowed pursuant to clauses (5), (8), (9), (10) and (11) of Section 4.13(b);

(9)     repurchases of Capital Stock deemed to occur upon the exercise of stock options if such Capital Stock represents a portion of the exercise price thereof; and

(10)     additional Restricted Payments in an aggregate amount not to exceed $20.0 million.

In determining the aggregate amount of the Restricted Payment Basket in accordance with clause (iii) of paragraph (a) above, amounts expended pursuant to clauses (1), (6) and (10) of paragraph (b) above shall be included in such calculation.

NY 71506945v7
08/08/08 05:21PM

(c)     Notwithstanding anything to the contrary herein, the Company shall not, and shall not cause or permit any of its Restricted Subsidiaries to, directly or indirectly, pay any cash interest on the Senior Notes prior to the payment in full in cash of the Obligations under this Indenture, including all Obligations accruing subsequent to the occurrence of any events specified in Section 6.1(f) or (g) or which would have accrued but for such event, but excluding any contingent obligations for which no claim has been asserted, except that cash interest may be paid on the Senior Notes (1) on or after the Maturity Date (as such term is defined in the Senior Notes Indenture) of the Senior Notes and (2) in connection with the consummation of a Net Proceeds Offer or Change of Control Offer (as such terms are defined in the Senior Notes Indenture).

Section 4.9.     <u>Limitation on Incurrence of Additional Indebtedness</u>.

(a)     The Company shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, create, incur, assume, guarantee, acquire, become liable, contingently or otherwise, with respect to, or otherwise become responsible for payment of (collectively, "*incur*") any Indebtedness (other than Permitted Indebtedness); *provided, however,* that if no Default or Event of Default shall have occurred and be continuing at the time or as a consequence of the incurrence of any such Indebtedness, the Company or any Guarantor may incur (x) Indebtedness (other than Senior Secured Indebtedness) if on the date of the incurrence of such Indebtedness, after giving effect to the incurrence thereof, the Consolidated Fixed Charge Coverage Ratio of the Company would have been greater than 2.0 to 1.0 and (y) Senior Secured Indebtedness, if on the date of the incurrence of such Indebtedness, after giving effect to the incurrence thereof, the Consolidated Senior Secured Leverage Ratio of the Company would have been less than or equal to 2.0 to 1.0.

No Indebtedness incurred pursuant to the Consolidated Fixed Charge Coverage Ratio or Consolidated Senior Secured Leverage Ratio test of the preceding sentence (including, without limitation, Indebtedness under the Senior Credit Facilities) shall reduce the amount of Indebtedness which may be incurred pursuant to any clause of the definition of "Permitted Indebtedness" (including, without limitation, Indebtedness under the Senior Credit Facilities pursuant to clause (2) of the definition of "Permitted Indebtedness").

(b)     The Company will not, and will not permit any Guarantor to, directly or indirectly, incur any Indebtedness which by its terms (or by the terms of any agreement governing such Indebtedness) is subordinated in right of payment to any other Indebtedness of the Company or such Guarantor, as the case may be, unless such Indebtedness is also by its terms (or by the terms of any agreement governing such Indebtedness) made expressly subordinate in right of payment to the Notes or the Guarantee of such Guarantor, as the case may be, to the same extent and in the same manner as such Indebtedness is subordinated to other Indebtedness of the Company or such Guarantor, as the case may be.

(c)     For purposes of determining compliance with this covenant, (1) in the event that an item of Indebtedness meets the criteria of more than one of the types of Indebtedness described in the definition of "Permitted Indebtedness", the Company, in its sole discretion, will classify such item of Indebtedness at the time of incurrence and will be entitled to divide and classify an item of Indebtedness in more than one of the types of Indebtedness described in the

53

definition of "Permitted Indebtedness" and (2) the Company will be entitled from time to time to reclassify any Indebtedness incurred pursuant to any clause in the definition of "Permitted Indebtedness".

Section 4.10. <u>Limitation on Dividend and Other Payment Restrictions Affecting Subsidiaries</u>.

The Company shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, create or otherwise cause or permit to exist or become effective any consensual encumbrance or restriction on the ability of any Restricted Subsidiary to:

(1)     pay dividends or make any other distributions on or in respect of its Capital Stock;

(2)     make loans or advances or to pay any Indebtedness or other obligation owed to the Company or any other Restricted Subsidiary of the Company; or

(3)     transfer any of its property or assets to the Company or any other Restricted Subsidiary of the Company, except for such encumbrances or restrictions existing under or by reason of:

(a)     applicable law;

(b)     this Indenture or encumbrances or restrictions substantially similar to the encumbrances and restrictions contained in this Indenture, taken as a whole;

(c)     non-assignment provisions of any contract or any lease entered into in the ordinary course of business;

(d)     any instrument governing Acquired Indebtedness, which encumbrance or restriction is not applicable to the Company or any Restricted Subsidiary of the Company, or the properties or assets of any such Person, other than the Person or the properties or assets of the Person so acquired; *provided, however*, that such Acquired Indebtedness was not incurred in connection with, or in anticipation or contemplation of, an acquisition by the Company or the Restricted Subsidiary;

(e)     agreements existing on the Issue Date;

(f)     the Senior Credit Facilities or any A/R Facility;

(g)     restrictions on the transfer of assets subject to any Lien permitted under this Indenture imposed by the holder of such Lien;

(h)     restrictions imposed by any agreement to sell assets permitted under this Indenture to any Person pending the closing of such sale;

54

(i)     Indebtedness or other contractual requirements of a Receivables Entity in connection with a Qualified Receivables Transaction; *provided* that such restrictions apply only to such Receivables Entity;

(j)     agreements governing Indebtedness permitted to be Incurred pursuant to Section 4.9, *provided* that the provisions relating to such encumbrances or restrictions contained in such Indebtedness are not materially less favorable to the Company as determined by the Board of Directors of the Company in their reasonable and good faith judgment than the provisions contained in the Senior Credit Facilities as in effect on the Issue Date; or

(k)     an agreement effecting a refinancing, replacement or substitution of Indebtedness issued, assumed or Incurred pursuant to an agreement referred to in clause (b), (d), (e) or (f) above; *provided, however*, that the provisions relating to such encumbrance or restriction contained in any such refinancing, replacement or substitution agreement are no less favorable to the Company or the Holders in any material respect as determined by the Board of Directors of the Company than the provisions relating to such encumbrance or restriction contained in agreements referred to in such clause (b), (d), (e) or (f).

Section 4.11.  Limitation on Liens.

The Company shall not, and shall not permit any of its Restricted Subsidiaries to, create, incur, assume or suffer to exist any Liens (other than Permitted Liens) of any kind against or upon any of their respective property or assets, or any proceeds, income or profit therefrom which secure any Indebtedness of the Company or a Guarantor, unless:

(1)     in the case of Liens securing Subordinated Obligations of the Company, the Notes are secured by a Lien on such property, assets, proceeds, income or profit that is senior in priority to such Liens;

(2)     in the case of Liens securing Subordinated Obligations of a Guarantor, such Guarantor's Guarantee is secured by a Lien on such property, assets, proceeds, income or profit that is senior in priority to such Liens; and

(3)     in all other cases, the Notes are or such Guarantor's Guarantee is, as the case may be, equally and ratably secured by a Lien on such property, assets, proceeds, income or profit; *provided* that after giving effect to the incurrence of such Indebtedness secured by such Lien, the Consolidated Senior Secured Leverage Ratio of the Company would have been less than or equal to 2.0 to 1.0.

Section 4.12.  Limitation on Asset Sales.

(a)     The Company shall not, and shall not permit any of its Restricted Subsidiaries to, consummate an Asset Sale unless:

(1)     the Company or the applicable Restricted Subsidiary, as the case may be, receives consideration at the time of such Asset Sale at least equal to the fair market

55

value of the assets sold or otherwise disposed of (as determined in good faith by the Company's Board of Directors);

(2)     at least 75% of the consideration received by the Company or such Restricted Subsidiary, as the case may be, from such Asset Sale shall be cash or Cash Equivalents and is received at the time of such disposition; *provided* that the amount of (x) any liabilities (as shown on the Company's or such Restricted Subsidiary's most recent balance sheet or in the notes thereto) of the Company or such Restricted Subsidiary (other than liabilities that are by their terms subordinated to the Notes and other than liabilities consisting of Disqualified Capital Stock) (i) that are assumed by the transferee of any such assets and from which the Company and its Restricted Subsidiaries are unconditionally released or (ii) in respect of which neither the Company nor any Restricted Subsidiary following such sale has any obligation and (y) any notes or other obligations received by the Company or such Restricted Subsidiary from such transferee that are promptly, but in no event more than 60 days after receipt, converted by the Company or such Restricted Subsidiary into cash or Cash Equivalents (to the extent of the cash or Cash Equivalents received), shall be deemed to be cash for purposes of this provision; and

(3)     upon the consummation of an Asset Sale, the Company shall apply, or cause such Restricted Subsidiary to apply, the Net Cash Proceeds relating to such Asset Sale within 360 days of receipt thereof either:

(a)     to repay any Obligations under (y) the Senior Credit Facilities and/or interest rate protection, currency and other hedging agreements permitted under the Senior Credit Facilities or (z) any other secured Indebtedness (other than (1) Subordinated Obligations, (2) Equal Lien Indebtedness and (3) Indebtedness secured by Liens junior in priority to Equal Lien Indebtedness) and, in the case of any such Indebtedness under any revolving credit facility, effect a permanent reduction in the availability under such revolving credit facility;

(b)     to reinvest in Productive Assets (and to the extent such reinvestment constitutes an Investment, such reinvestment complies with Section 4.8); or

(c)     a combination of repayment and investment permitted by the foregoing clauses (3)(a) and (3)(b).

On the 361st day after an Asset Sale or such earlier date, if any, as the Board of Directors of the Company or of such Restricted Subsidiary determines not to apply the Net Cash Proceeds relating to such Asset Sale as set forth in clauses (3)(a), (3)(b) and (3)(c) of the immediately preceding sentence (each, a "*Net Proceeds Offer Trigger Date*"), such aggregate amount of Net Cash Proceeds which have not been applied on or before such Net Proceeds Offer Trigger Date as permitted in clauses (3)(a), (3)(b) and (3)(c) of the immediately preceding sentence (each a "*Net Proceeds Offer Amount*") shall be applied by the Company or such Restricted Subsidiary to make an offer to purchase for cash (the "*Net Proceeds Offer*") on a date (the "*Net Proceeds Offer Payment Date*") not less than 30 nor more than 60 days following the applicable Net Proceeds

56

Offer Trigger Date, from all Holders and holders of Equal Lien Indebtedness on a *pro rata* basis, that amount of Notes and Equal Lien Indebtedness (if such Equal Lien Indebtedness provides for such a repurchase offer equal to the Net Proceeds Offer Amount at a price in cash equal to 100% of the principal amount of the Notes and Equal Lien Indebtedness to be purchased, plus accrued and unpaid interest thereon, if any, to the date of purchase; *provided, however,* that if at any time any non-cash consideration received by the Company or any Restricted Subsidiary of the Company, as the case may be, in connection with any Asset Sale is converted into or sold or otherwise disposed of for cash (other than interest, dividends or other earnings received with respect to any such non-cash consideration), then such conversion or disposition shall be deemed to constitute an Asset Sale hereunder as of the date of such conversion or disposition and the Net Cash Proceeds thereof shall be applied in accordance with this covenant.

(b) Notwithstanding the foregoing, if a Net Proceeds Offer Amount is less than $30.0 million, the application of the Net Cash Proceeds constituting such Net Proceeds Offer Amount to a Net Proceeds Offer may be deferred until such time as such Net Proceeds Offer Amount plus the aggregate amount of all Net Proceeds Offer Amounts arising subsequent to the Net Proceeds Offer Trigger Date relating to such initial Net Proceeds Offer Amount from all Asset Sales by the Company and its Restricted Subsidiaries aggregates at least $30.0 million, at which time the Company or such Restricted Subsidiary shall apply all Net Cash Proceeds constituting all Net Proceeds Offer Amounts that have been so deferred to make a Net Proceeds Offer (the first date the aggregate of all such deferred Net Proceeds Offer Amounts is equal to $30.0 million or more shall be deemed to be a Net Proceeds Offer Trigger Date).

(c) Notwithstanding paragraphs (a) and (b) of this Section 4.12, the Company and its Restricted Subsidiaries will be permitted to consummate an Asset Sale without complying with such paragraphs to the extent that:

(1) at least 75% of the consideration for such Asset Sale constitutes Productive Assets (and to the extent any of such Productive Assets constitutes an Investment, such Investment complies with Section 4.8); and

(2) such Asset Sale is for at least fair market value (as determined in good faith by the Company's Board of Directors); *provided* that any consideration not constituting Productive Assets received by the Company or any of its Restricted Subsidiaries in connection with any Asset Sale permitted to be consummated under this paragraph shall constitute Net Cash Proceeds and shall be subject to the provisions of this covenant with respect to the application of Net Cash Proceeds; *provided* that at the time of entering into such transaction or immediately after giving effect thereto, no Default or Event of Default shall have occurred or be continuing or would occur as a consequence thereof.

(d) Within 25 days following the Net Proceeds Offer Trigger Date, the Company shall mail or cause the Trustee to mail (in the Company's name and at its expense) notice of a Net Proceeds Offer to the Holders of the Notes at their last registered addresses with a copy to the Trustee and the Paying Agent. The Net Proceeds Offer shall remain open from the time of mailing for at least 20 Business Days and until the close of business on the third Business Day prior to the Net Proceeds Offer Payment Date or such longer period as may be required by Law.

57

The notice shall contain all instructions and materials necessary to enable such Holders to tender Notes pursuant to the Net Proceeds Offer. The notice, which shall govern the terms of the Net Proceeds Offer, shall state:

(i)     that the Net Proceeds Offer is being made pursuant to this Section 4.12;

(ii)    the purchase price (including the amount of accrued and unpaid interest, if any) for each Note and the Net Proceeds Offer Payment Date;

(iii)   that any Note not tendered or accepted for payment will continue to accrue interest in accordance with the terms thereof;

(iv)    that any Note accepted for payment pursuant to the Net Proceeds Offer shall cease to accrue interest after the Net Proceeds Offer Payment Date unless the Company shall fail to make payment therefor;

(v)     that Holders electing to have Notes purchased pursuant to a Net Proceeds Offer will be required to surrender their Notes to the Paying Agent at the address specified in the notice prior to 5:00 p.m., New York City time, on the third Business Day immediately preceding the Net Proceeds Offer Payment Date and must complete any form letter of transmittal proposed by the Company and acceptable to the Trustee and the Paying Agent;

(vi)    that Holders will be entitled to withdraw their election if the Paying Agent receives, not later than 5:00 p.m., New York City time, on the third Business Day immediately preceding the Net Proceeds Offer Payment Date, a telex or facsimile transmission (confirmed by overnight delivery of the original thereof) or letter setting forth the name of the Holder, the principal amount of Notes the Holder delivered for purchase, the Note certificate number (if any) and a statement that such Holder is withdrawing his election to have such Notes purchased;

(vii)   that if Notes and, if applicable, Equal Lien Indebtedness in a principal amount in excess of the Holders' *pro rata* share of the Net Proceeds are tendered pursuant to a Net Proceeds Offer, the Company shall purchase Notes and, if applicable, Equal Lien Indebtedness on a *pro rata* basis among the Notes and Equal Lien Indebtedness tendered (with such adjustments as may be deemed appropriate by the Company so that only Notes in denominations of a minimum of $1.00 and integral multiples of $1.00 thereof shall be acquired);

(viii)  that Holders whose Notes are purchased only in part will be issued new Notes equal in principal amount to the unpurchased portion of the Notes surrendered; and

(ix)    the instructions that Holders must follow in order to tender their Notes.

On or before the Net Proceeds Offer Payment Date, the Company shall (i) accept for payment, on a *pro rata* basis among the Notes, Notes or portions thereof tendered pursuant to the Net Proceeds Offer, (ii) deposit with the Paying Agent money, in immediately available funds, in an amount sufficient to pay the purchase price of all Notes or portions thereof so tendered and

NY 71506945v7
08/08/08 05:21PM

accepted and (iii) deliver to the Paying Agent the Notes so accepted together with an Officer's Certificate setting forth the Notes or portions thereof tendered to and accepted for payment by the Company. The Paying Agent shall promptly mail or deliver to Holders of Notes so accepted payment in an amount equal to the purchase price, and the Trustee shall promptly authenticate and mail or deliver to such Holders a new Note equal in principal amount to any unpurchased portion of the Note surrendered. Any Notes not so accepted shall be promptly mailed or delivered by the Company to the Holder thereof. The Paying Agent shall promptly deliver to the Company the balance of any moneys held by the Paying Agent after payment to the Holders of Notes as aforesaid.

(e)     To the extent that the aggregate amount of Notes tendered pursuant to a Net Proceeds Offer is less than the Net Proceeds Offer Amount, the Company may use any remaining Net Proceeds Offer Amount for general corporate purposes. Upon completion of any such Net Proceeds Offer, the Net Proceeds Offer Amount shall be reset at zero.

(f)     The Company shall comply, to the extent applicable, with the requirements of Section 14(e) of the Exchange Act and any other securities laws or regulations (including Rule 14e-1 under the Exchange Act) in connection with the repurchase of Notes pursuant to a Net Proceeds Offer. To the extent that the provisions of any securities laws or regulations conflict with the provisions of this Section 4.12, the Company shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Section 4.12 by virtue thereof.

Section 4.13.   Limitations on Transactions with Affiliates.

(a)     The Company shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, enter into or permit to exist any transaction or series of related transactions (including, without limitation, the purchase, sale, lease or exchange of any property or the rendering of any service) with, or for the benefit of, any of its Affiliates (an "*Affiliate Transaction*"), other than (x) Affiliate Transactions permitted under paragraph (b) below and (y) Affiliate Transactions entered into on terms that are fair and reasonable to, and in the best interests of, the Company or such Restricted Subsidiary, as the case may be, as determined in good faith by the Company's Board of Directors; *provided, however*, that for a transaction or series of related transactions with an aggregate value of $5.0 million or more, at the Company's option (i) such determination shall be made in good faith by a majority of the disinterested members of the Board of the Directors of the Company or (ii) the Board of Directors of the Company or any such Restricted Subsidiary party to such Affiliate Transaction shall have received a favorable opinion from a nationally recognized investment banking firm that such Affiliate Transaction is fair from a financial point of view to the Company or such Restricted Subsidiary; *provided, further*, that for a transaction or series of related transactions with an aggregate value of $20.0 million or more, the Board of Directors of the Company shall have received a favorable opinion from a nationally recognized investment banking firm that such Affiliate Transaction is fair from a financial point of view to the Company or such Restricted Subsidiary.

(b)     The foregoing restrictions shall not apply to:

NY 71506945v7
08/08/08 05:21PM

(1)     transactions exclusively between or among the Company and any of its Restricted Subsidiaries or exclusively between or among such Restricted Subsidiaries, provided such transactions are not otherwise prohibited by this Indenture;

(2)     transactions effected as part of a Qualified Receivables Transaction;

(3)     any agreement as in effect as of the Issue Date or any amendment thereto or any transaction contemplated thereby (including pursuant to any amendment thereto) or in any replacement agreement thereto so long as any such amendment or replacement agreement is not more disadvantageous to the Holders in any material respect than the original agreement as in effect on the Issue Date;

(4)     Restricted Payments permitted by this Indenture;

(5)     loans or advances to officers, directors or employees of the Company or its Restricted Subsidiaries not in excess of $15.0 million at any one time outstanding;

(6)     Permitted Investments or Permitted Liens;

(7)     transactions with Persons solely in their capacity as holders of Indebtedness or Capital Stock of the Company or any of its Restricted Subsidiaries, where such Persons are treated no more favorably than holders of Indebtedness or Capital Stock of the Company or such Restricted Subsidiary generally;

(8)     (A) reasonable and customary fees and compensation paid to, indemnity (including payment thereof) provided on behalf of, and reimbursement of reasonable out-of-pocket expenses incurred in connection with services provided by, officers, directors, consultants or employees of Holdings or any of its Restricted Subsidiaries (other than with respect to any fees and compensation paid to the Advisors which are set forth in clauses (9) and (10) below), as determined by the Board of Directors of the Company or any such Restricted Subsidiary or the senior management thereof in good faith, including, without limitation, issuances of stock, payment of bonuses and other transactions pursuant to employment or compensation agreements, stock option agreements, indemnification agreements (including payments thereunder) and other arrangements in effect on the Issue Date or substantially similar thereto and (B) reimbursement of reasonable out-of-pocket expenses incurred by any Observer (as defined in the Stockholders' Agreement) permitted to be present at any meeting of the Board of Directors of Holdings in connection with attending any such meeting;

(9)     the accrual (but not payment), on a quarterly basis, of Advisory Fees to (A) the Avenue Advisors not to exceed $187,500 in the aggregate in any fiscal quarter pursuant to any Avenue Advisory Services Agreement and (B) the Goldman Advisors and the TCW Advisors, collectively, not to exceed $62,500 in the aggregate in any fiscal quarter pursuant to any Goldman Advisory Services Agreement or TCW Advisory Services Agreement, as applicable;

(10)     (A) the reimbursement of the Avenue Advisors for all reasonable out-of-pocket expenses incurred by the Avenue Advisors pursuant to any Avenue Advisory

60

Services Agreement, (B) the reimbursement of the Goldman Advisors for all reasonable out-of-pocket expenses incurred by the Goldman Advisors pursuant to any Goldman Advisory Services Agreement, (C) the reimbursement of the TCW Advisors for all reasonable out-of-pocket expenses incurred by the TCW Advisors pursuant to any TCW Advisory Services Agreement and (D) the provision of indemnities (including payment thereof) to the Advisors in connection with the agreements described in clauses (A), (B) and (C); and

(11)     fees paid to Advisors and their Affiliates solely in their capacity as lenders or holders of Indebtedness (or prospective lenders or holders of Indebtedness) of the Company or any Restricted Subsidiary in connection with issuance or incurrence of such Indebtedness (or in connection with amendments, waivers or forbearances of any such Indebtedness) and original issue discount in respect of any such Indebtedness.

(c)     Notwithstanding anything to the contrary contained herein, except with respect to payments to officers, directors and employees permitted in clause (b)(8) above, and payments permitted in clauses (b)(10) and (b)(11) above, (i) the Company shall not, and shall not cause or permit any of its Restricted Subsidiaries, directly or indirectly, to pay any consulting, advisory, management or transaction fees to Avenue, Goldman Sachs, TCW or any of their respective Affiliates (*"Advisory Fees"*), including any fees accrued as permitted in Section 4.13(b)(9), prior to the time when all Obligations under this Indenture, including all Obligations accruing subsequent to the occurrence of any events specified in Section 6.1(f) or (g) or which would have accrued but for such event (but excluding any contingent obligations for which no claim has been asserted), are refinanced or no longer outstanding and (ii) any Advisory Fees earned by Avenue, Goldman Sachs, TCW or any of their respective Affiliates, including, without limitation, any fees accrued pursuant to Section 4.13(b)(9), shall be expressly subordinated in right of payment to the prior payment in full of all Obligations under this Indenture, including all Obligations accruing subsequent to the occurrence of any events specified in Section 6.1(f) or (g) or which would have accrued but for such event (but excluding any contingent obligations for which no claim has been asserted).

(d)     Notwithstanding anything to the contrary contained herein, the Company shall not, and shall not cause or permit its Restricted Subsidiaries to, enter into any agreement with any of the Advisors or their Affiliates providing for the payment of any Advisory Fees other than the Advisory Fees contemplated in Section 4.13(b).

Section 4.14.    Change of Control.

(a)     Upon the occurrence of a Change of Control (the date of such occurrence, the *"Change of Control Date"*), each Holder shall have the right to require that the Company purchase all or a portion of such Holder's Notes pursuant to an offer to purchase (the "Change of Control Offer") at a purchase price equal to 101% of the aggregate principal amount thereof plus accrued interest thereon to the date of repurchase. Prior to the mailing of the notice to the Holders provided for in paragraph (b) below but in any event within 30 days following the date upon which the Company obtains actual knowledge of any Change of Control, the Company hereby covenants to (i) (A) repay in full all Obligations under the Senior Credit Facilities and terminate all commitments under the Senior Credit Facilities and any other Indebtedness under

61

interest rate protection and other hedging agreements that are secured equally and ratably therewith or (B) offer to repay in full all Obligations under the Senior Credit Facilities and terminate all commitments under the Senior Credit Facilities and repay in full all Obligations under the Senior Credit Facilities and terminate all commitments under the Senior Credit Facilities of each Bank Lender which has accepted such offer or (ii) obtain the requisite consents under the Senior Credit Facilities to permit the repurchase of the Notes as provided for in paragraph (c) below. The Company shall first comply with the covenant in the immediately preceding sentence before it shall be required to repurchase the Notes pursuant to this Section 4.14. The Company's failure to comply with the covenant described in the second preceding sentence (and any failure to send the notice referred to in paragraph (b) below as a result of the prohibition in the second preceding sentence) may (with notice and lapse of time) constitute an Event of Default described in Section 6.1(c) but shall not constitute an Event of Default described in Section 6.1(b).

(b)     Notice of a Change of Control Offer shall be mailed by the Company within 30 days following the date upon which the Company obtains actual knowledge that a Change of Control occurred to the Holders of Notes at their last registered addresses with a copy to the Trustee and the Paying Agent. The date on which Notes are purchased pursuant to the Change of Control Offer shall be a business day that is no earlier than 30 days nor later than 60 days from the date such notice is mailed (the "*Change of Control Payment Date*"). The Change of Control Offer shall remain open from the time of mailing for at least 20 Business Days and until 3:00 p.m., New York City time, on the third Business Day prior to the Change of Control Payment Date. The notice, which shall govern the terms of the Change of Control Offer, shall include such disclosures as are required by law and shall state:

(i)     that the Change of Control Offer is being made pursuant to this Section 4.14 and that all Notes will be accepted for payment;

(ii)     the purchase price (including the amount of accrued and unpaid interest, if any) for each Note and the Change of Control Payment Date;

(iii)     that any Note not tendered for payment will continue to accrue interest in accordance with the terms thereof;

(iv)     that any Note accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest after the Change of Control Payment Date unless the Company shall fail to make payment therefor;

(v)     that Holders electing to have Notes purchased pursuant to a Change of Control Offer will be required to surrender their Notes to the Paying Agent at the address specified in the notice prior to 3:00 p.m., New York City time, on the Change of Control Payment Date and must complete any form letter of transmittal proposed by the Company and acceptable to the Trustee and the Paying Agent;

(vi)     that Holders of Notes will be entitled to withdraw their election if the Paying Agent receives, not later than 3:00 p.m., New York City time, on the Business Day prior to the Change of Control Payment Date, a telex or facsimile transmission

(confirmed by overnight delivery of the original thereof) or letter setting forth the name of the Holder, the principal amount of Notes the Holder delivered for purchase, the Note certificate number (if any) and a statement that such Holder is withdrawing his election to have such Notes purchased;

(vii)    that Holders whose Notes are purchased only in part will be issued Notes equal in principal amount to the unpurchased portion of the Notes surrendered; and

(viii)    the instructions that Holders must follow in order to tender their Notes.

(c)    On the Change of Control Payment Date, the Company shall (i) accept for payment Notes or portions thereof tendered pursuant to the Change of Control Offer, (ii) deposit with the Paying Agent money sufficient to pay the purchase price of all Notes or portions thereof so tendered and accepted and (iii) deliver to the Trustee the Notes so accepted together with an Officer's Certificate setting forth the Notes or portions thereof tendered to and accepted for payment by the Company. The Paying Agent shall promptly mail or deliver to the Holders of Notes so accepted payment in an amount equal to the purchase price, and the Trustee shall promptly authenticate and mail or deliver to such Holders a new Note equal in principal amount to any unpurchased portion of the Note surrendered. Any Notes not so accepted shall be promptly mailed or delivered by the Company to the Holder thereof. The Company will publicly announce the results of the Change of Control Offer not later than the first Business Day following the Change of Control Payment Date.

(d)    The Company shall comply, to the extent applicable, with the requirements of Section 14(e) of the Exchange Act, and any other securities laws or regulations (including Rule 14e-1 under the Exchange Act) in connection with the purchase of Notes pursuant to a Change of Control Offer. To the extent that the provisions of any securities laws or regulations conflict with provisions of this Section 4.14, the Company shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Section 4.14 by virtue thereof.

Section 4.15.    Waiver of Stay; Extension of Usury Laws.

The Company covenants (to the extent that it may lawfully do so) that it shall not, nor shall it cause or permit any of the Guarantors to, at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive the Company or any Guarantor from paying all or any portion of the principal of or interest on the Notes or the Guarantees, as applicable, as contemplated herein or in the Notes and the Guarantees, wherever enacted, now or at any time hereafter in force, or that may affect the covenants or the performance of this Indenture; and (to the extent that it may lawfully do so) each of the Company and the Guarantors hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 4.16.    Limitation on Guarantees by Restricted Subsidiaries.

The Company shall not permit any of its Domestic Restricted Subsidiaries that is not a Guarantor (whether formed or acquired before or after the Issue Date), directly or indirectly, by way of the pledge of any intercompany note or otherwise, to assume, guarantee or in any other manner become liable with respect to any Indebtedness of the Company (other than: (1) Indebtedness under Currency Agreements in reliance on clause (5) of the definition of "Permitted Indebtedness"; or (2) Interest Swap Obligations incurred in reliance on clause (4) of the definition of "Permitted Indebtedness"), unless, in any such case:

      (1)    such Restricted Subsidiary executes and delivers a supplemental indenture to this Indenture providing a guarantee of payment of the Notes by such Restricted Subsidiary, and

      (2)    if any such assumption, guarantee or other liability of such Restricted Subsidiary is provided in respect of Indebtedness that is expressly subordinated to the Notes, the guarantee or other instrument provided by such Restricted Subsidiary in respect of such Subordinated Obligation shall be subordinated to such Guarantor's Guarantee of the Notes.

Notwithstanding the foregoing, any such Guarantee by a Restricted Subsidiary of the Notes shall provide by its terms that it shall be automatically and unconditionally released and discharged, without any further action required on the part of the Trustee or any Holder, upon:

      (1)    the unconditional release of such Restricted Subsidiary from its liability in respect of the Indebtedness in connection with which such Guarantee was executed and delivered pursuant to the preceding paragraph and all other Indebtedness which would require that a Guarantee be executed and delivered pursuant to the preceding paragraph;

      (2)    any sale or other disposition (by merger or otherwise) to any Person which is not a Restricted Subsidiary of the Company of all of the Company's Capital Stock in, or all or substantially all of the assets of, such Restricted Subsidiary; *provided* that (a) such sale or disposition of such Capital Stock or assets is otherwise in compliance with the terms of this Indenture and (b) such assumption, guarantee or other liability of such Restricted Subsidiary has been released by the holders of the other Indebtedness of the Company so guaranteed;

      (3)    the Legal Defeasance or Covenant Defeasance of the Notes as described under Section 8.2 (subject to reinstatement pursuant to Section 8.6); or

      (4)    such Restricted Subsidiary being designated as an Unrestricted Subsidiary in compliance with this Indenture.

Section 4.17.   Limitation on Preferred Stock of Subsidiaries.

The Company shall not permit any of its Restricted Subsidiaries that is not a Guarantor to issue any Preferred Stock (other than to the Company or to a Restricted Subsidiary of the Company) or permit any Person (other than the Company or a Restricted Subsidiary of the Company) to own any Preferred Stock of any Restricted Subsidiary of the Company that is not a Guarantor.

64

Section 4.18.   Conduct of Business.

The Company and its Restricted Subsidiaries shall not engage in any businesses which are not the same, similar, related or ancillary to the businesses in which the Company and its Restricted Subsidiaries are engaged on the Issue Date.

Section 4.19.   Impairment of Security Interest.

The Company shall not, and the Company shall not permit any of its Restricted Subsidiaries to, take, or knowingly omit to take, any action, which action or omission would have the effect of causing a Lien to be created in favor of the Collateral Agent or the Bank Lenders (in their respective capacities as such) on any property or assets of the type that would constitute Collateral unless a Lien is created in favor of the Collateral Agent for the benefit of the Notes Secured Creditors with respect to such property or assets (which Lien in favor of the Notes Secured Creditors shall have the priority set forth in the Security Documents). Such Lien in favor of the Collateral Agent for the benefit of the Notes Secured Creditors shall at all times be in accordance with the provisions of this Indenture and the Security Documents.

Section 4.20.   Post Closing Action Related to Collateral.

Notwithstanding anything to the contrary contained in this Agreement, the Indenture or the Security Documents, the parties hereto acknowledge and agree that the Company and the relevant Guarantor shall be required to take the following actions as promptly as reasonably practicable, and in any event

(a)     Within 45 days after the Issue Date:

(i)     fully executed counterparts of Mortgages or Amended and Restated Mortgages as appropriate which Mortgages or Amended and Restated Mortgages, as the case may be, (1) shall cover the Mortgaged Property owned or leased by the Company or any of its Guarantors, as are designated on Annex A hereto, together with evidence that counterparts of the Mortgages or Amended and Restated Mortgages as appropriate, have been delivered to the title insurance company insuring the Lien of such Mortgages or Amended and Restated Mortgages, as the case may be, for recording in all places to the extent necessary or, in the reasonable opinion of the Collateral Agent, desirable to effectively create a valid and enforceable second-priority mortgage Lien on each Mortgaged Property in favor of the Collateral Agent for the benefit of the Notes Secured Creditors securing the obligations under this Indenture, the Notes and the Security Documents (provided that in jurisdictions that impose mortgage recording taxes, such Mortgages or Amended and Restated Mortgages shall not secure indebtedness in an amount exceeding 100% of the fair market value of such Real Property, as reasonably determined, in good faith, by the Company and reasonably acceptable to the Collateral Agent, subject to (i) those Liens, created by the Security Documents, (ii) those Liens, encumbrances, hypothecs and other matters affecting title to such Mortgaged Property and found reasonably acceptable by the Collateral Agent, (iii) as to any particular Mortgaged Property at any time, such easements, encroachments, covenants, rights of way, minor defects, irregularities or encumbrances on title which could not reasonably be

65

expected to materially impair such Mortgaged Property for the purpose for which it is held by the mortgagor or grantor thereof, or the lien or hypothec held by the Collateral Agent, (iv) zoning and other municipal ordinances which are not violated in any material respect by the existing improvements and the present use made by the mortgagor or grantor thereof of the premises, (v) general real estate taxes and assessments not yet delinquent, and (vi) such other similar items as the Collateral Agent may consent to (such consent not to be unreasonably withheld) (the liens described in clauses (i) through (v) of this sentence, collectively, the "Permitted Encumbrances");

(ii)    with respect to each Mortgage intended to encumber a Mortgaged Property, a policy of title insurance (or commitment to issue such a policy) or with respect to each Amended and Restated Mortgage intended to encumber a Mortgaged Property, an endorsement of an existing policy of title insurance, insuring (or committing to insure) the Lien of such Mortgage or Amended and Restated Mortgage as a valid and enforceable second-priority mortgage Lien on the Mortgaged Properties described therein, in an amount not less than 100% of the fair market value of such Mortgaged Property as reasonably determined, in good faith, by the Company and reasonably acceptable to the Collateral Agent, (such policies collectively, "the Mortgage Policies") issued by such title insurers, which reasonably assures the Collateral Agent that the Mortgages or Amended and Restated Mortgages, as the case may be, on such Mortgaged Properties are valid and enforceable second priority mortgage liens on the respective Mortgaged Properties, free and clear of all defects and encumbrances except Permitted Encumbrances, and such Mortgage Policies shall otherwise be in form and substance reasonably satisfactory to the Trustee and shall include, as appropriate, to the extent available at commercially reasonably rates, an endorsement for future advances and for any and all other matters that the Collateral Agent may request, shall not include an exception for mechanics' liens or creditors' rights, and shall provide for affirmative insurance and such reinsurance (including direct access agreements) as the Collateral Agent may reasonably request;

(iii)    surveys, in form and substance reasonably satisfactory to the Collateral Agent, of each Mortgaged Property designated as a "Surveyed Property" on Annex B hereto, dated a recent date acceptable to the Collateral Agent and certified in a manner reasonably satisfactory to the Collateral Agent by a licensed professional surveyor reasonably satisfactory to the Collateral Agent;

(iv)    duly authorized, fully executed, acknowledged and delivered subordination, nondisturbance and attornment agreements, assignment of leases, landlord consents, tenant estoppel certificates and such other documents relating to the Mortgages that the Collateral Agent may reasonably request;

(v)    proper fixture filings under the UCC on Form UCC-1 or the equivalent fully executed for filing under the UCC in the appropriate jurisdiction in which the Mortgaged Properties are located, desirable to perfect the security interests purported to be created by the Mortgage or Amended and Restated Mortgages in favor of the Collateral Agent for the benefits of the holders of the Notes;

NY 71506945v7
08/08/08 05:21PM

(vi)     to the extent necessary in order to perfect the security interest in that portion of the Collateral constituting deposit accounts within the meaning of Section 9-102(a)(29) of the UCC, deposit account control agreements each substantially in the form of Annex M to the Security Agreement (each a "Control Agreement") and satisfying the control requirement of Section 9-104(a)(2) of the UCC; *provided* that the Collateral Agent has specifically identified to the Company those deposit accounts required to be governed by a Control Agreement to meet the control requirements of the UCC; and

(vii)     the opinions, addressed to the Notes Secured Creditors, of (1) [_____], special counsel to the Company, or other special or in-house counsel, as to the due authorization, execution and delivery of the Amended and Restated Mortgages by the Company or any of the Guarantors and (2) local counsel in each jurisdiction where Mortgaged Property is located, each in form and substance reasonably satisfactory to the Collateral Agent.

(b)     Within seven days after the Issue Date, the Trustee shall have received to the extent not received on the Issue Date any filings with the United States Patent and Trademark Office or the United States Copyright Office or other appropriate filing offices of each jurisdiction as may be necessary or, in the reasonable opinion of the Trustee, desirable to perfect the security interests purported to be created by the Security Agreement.

(c)     Within five days after the Issue Date, the Trustee shall have received to the extent not received on the Issue Date, proper forms of UCC-3 amendments or the equivalent under revised Article 9 of the UCC in each applicable jurisdiction to be filed as soon as reasonably practicable in the jurisdiction of incorporation of the Company and each Guarantor, desirable to perfect the security interests purported to be created by the U.S. Security Agreement in favor of the Collateral Agent for the benefits of the holders of the Notes.

## ARTICLE V

## SUCCESSOR CORPORATION

Section 5.1.     Limitation on Mergers, Consolidations or Sales of Assets.

The Company shall not, in a single transaction or a series of related transactions, consolidate with or merge with or into, or sell, assign, transfer, lease, convey or otherwise dispose of (or cause or permit any Restricted Subsidiary of the Company to sell, assign, transfer, lease, convey or otherwise dispose of) all or substantially all of the Company's assets to, another Person or Persons unless:

(1)     either:

(a)     the Company shall be the surviving or continuing corporation of such merger or consolidation; or

(b)     the surviving Person is a corporation existing under the laws of the United States, any state thereof or the District of Columbia and such surviving

Person shall expressly assume all the obligations of the Company under the Notes and this Indenture;

(2)     immediately after giving effect to such transaction (on a pro forma basis, including any Indebtedness incurred or anticipated to be incurred in connection with such transaction and the other adjustments that are referred to in the definition of "Consolidated Fixed Charge Coverage Ratio"), the Company or the surviving Person is able to incur at least $1.00 of additional Indebtedness (other than Permitted Indebtedness) in compliance with Section 4.9;

(3)     immediately before and immediately after giving effect to such transaction (including any Indebtedness incurred or anticipated to be incurred in connection with the transaction), no Default or Event of Default shall have occurred and be continuing; and

(4)     the Company or the surviving entity, as the case may be, has delivered to the Trustee an Officer's Certificate and Opinion of Counsel, each stating that such consolidation, merger or transfer complies with this Indenture, that the surviving Person agrees to be bound thereby and by the Notes, and that all conditions precedent in this Indenture relating to such transaction have been satisfied.

For purposes of the foregoing, the transfer (by lease, assignment, sale or otherwise, in a single transaction or series of transactions) of all or substantially all of the properties and assets of one or more Subsidiaries of the Company, the Capital Stock of which constitutes all or substantially all of the properties and assets of the Company, shall be deemed to be the transfer of all or substantially all of the properties and assets of the Company.

Notwithstanding the foregoing clauses (1), (2) and (3):

(a)     any Restricted Subsidiary of the Company may consolidate with, merge into or transfer all or part of its properties and assets to the Company; and

(b)     the Company may merge with an Affiliate that is (x) a corporation that has no material assets or liabilities and which was incorporated solely for the purpose of reincorporating the Company in another jurisdiction or (y) a Restricted Subsidiary of the Company that is a Guarantor so long as all assets of the Company and the Restricted Subsidiaries immediately prior to such transaction are owned by such Restricted Subsidiary and its Restricted Subsidiaries immediately after the consummation thereof.

Each Guarantor (other than any Guarantor whose Guarantee is to be released in accordance with the terms of this Indenture) shall not, and the Company shall not cause or permit any Guarantor to, consolidate with or merge with or into any Person other than the Company or any other Guarantor unless:

(1)     the entity formed by or surviving any such consolidation or merger (if other than the Guarantor) or to which such sale, lease, conveyance or other disposition shall have been made is a corporation organized and existing under the laws of the United States or any State thereof or the District of Columbia;

68

(2)     such entity assumes by supplemental indenture all of the obligations of the Guarantor on the Guarantee;

(3)     immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing; and

(4)     immediately after giving effect to such transaction and the use of any net proceeds therefrom on a pro forma basis, the Company could satisfy the provisions of clause (2) of the first paragraph of this Section 5.1.

Any merger or consolidation of a Restricted Subsidiary with and into the Company (with the Company being the surviving entity) or another Guarantor that is a Wholly Owned Subsidiary of the Company need only comply with clause (4) of the first paragraph of this Section 5.1.

The following additional conditions shall apply to each transaction described in the above paragraphs:

(1)     the Company, such Guarantor or the relevant surviving entity, as applicable, will cause to be filed and recorded in the relevant jurisdictions (so long as such jurisdictions are in the United States) such amendments or other instruments, if any, as may be required by applicable law to preserve and protect the Lien on the Collateral owned by or transferred to such Person created by the Security Documents in favor of the Collateral Agent for the benefit of the Notes Secured Creditors, together with such financing statements as may be required to perfect any security interests in such Collateral which may be perfected by the filing of a financing statement under the Uniform Commercial Code of the relevant states;

(2)     following any such transaction, to the extent that any assets constituted Collateral prior to such transaction, the Collateral owned by or transferred to the Company, such Guarantor or the relevant surviving entity, as applicable, shall: (a) continue to constitute Collateral under this Indenture and the Security Documents; and (b) not be subject to any Lien other than Liens permitted by this Indenture and created by the Security Documents;

(3)     the assets of the Person which is merged or consolidated with or into the relevant surviving entity, to the extent such assets are of the types which would constitute Collateral under the Security Documents and which would be required to be pledged thereunder, shall be treated as after-acquired property and such surviving entity shall take such action as may be reasonably necessary to cause such assets to be made subject to the Lien created by the Security Documents in the manner and to the extent required in this Indenture; and

(4)     the Company shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such transaction and, if a supplemental indenture or supplemental Security Documents are required in connection with such transaction, such supplemental indenture and Security Documents comply with the applicable provisions of this Indenture, that all conditions precedent in this Indenture

69

relating to such transaction have been satisfied and that such supplemental indenture and Security Documents are enforceable, subject to customary qualifications.

Section 5.2.    Successor Entity Substituted.

Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of the Company or any assignment of its obligations under this Indenture in accordance with Section 5.1 hereof, upon assumption by the successor corporation, by supplemental indenture, executed and delivered to the Trustee and satisfactory in form to the Trustee, of the due and punctual payment of the principal of, premium, if any, and interest on all of the Notes and the due and punctual performance and observance of all the covenants and conditions of this Indenture to be performed or observed by the Company, the surviving entity formed by such consolidation or into or with which the Company is merged or to which such sale, lease, conveyance or other disposition or assignment is made will succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such surviving entity has been named as the Company herein and such surviving entity may cause to be signed and may issue in its own name or in the name of the Company, any or all Notes issuable hereunder and the predecessor Company in the case of a sale, lease, conveyance or other disposition or assignment, will be released from all obligations under the Notes.

## ARTICLE VI

## DEFAULT AND REMEDIES

Section 6.1.    Events of Default.

"*Event of Default*", whenever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a)    the failure to pay interest on any Notes when the same becomes due and payable and the default continues for a period of 30 days;

(b)    the failure to pay the principal of any Notes when such principal becomes due and payable, at maturity, upon redemption or otherwise (including the failure to make a payment to purchase Notes tendered pursuant to a Change of Control Offer or a Net Proceeds Offer);

(c)    a default in the observance or performance of any other covenant or agreement contained in this Indenture which default continues for a period of 30 days after the Company receives written notice specifying the default (and demanding that such default be remedied) from the Trustee or the Holders of at least 25% of the outstanding principal amount of the Notes;

(d)    the failure to pay at final stated maturity (giving effect to any applicable grace periods and any extensions thereof) the principal amount of any Indebtedness of the Company or any Restricted Subsidiary (other than a Receivables Entity) of the Company, or the acceleration of the final stated maturity of any such Indebtedness (which acceleration is not rescinded,

70

annulled or otherwise cured within 30 days of receipt by the Company or such Restricted Subsidiary of notice of any such acceleration) if the aggregate principal amount of such Indebtedness, together with the principal amount of any other such Indebtedness in default for failure to pay principal at final stated maturity or which has been accelerated (in each case with respect to which the 30-day period described above has elapsed), aggregates $30.0 million or more at any time;

(e)     one or more judgments in an aggregate amount in excess of $30.0 million shall have been rendered against the Company or any of its Significant Subsidiaries and such judgments remain undischarged, unpaid or unstayed for a period of 60 days after such judgment or judgments become final and non-appealable;

(f)     a court of competent jurisdiction enters a Bankruptcy Order under any Bankruptcy Law that:

(1)     is for relief against the Company or any of its Significant Subsidiaries in an involuntary case or proceeding, or

(2)     appoints a Custodian of the Company or any of its Significant Subsidiaries for all or substantially all of its respective properties, or

(3)     orders the liquidation of the Company or any of its Significant Subsidiaries, and in each case the order or decree remains unstayed and in effect for 60 consecutive days;

(g)     the Company or any Significant Subsidiary pursuant to or within the meaning of any Bankruptcy Law:

(1)     commences a voluntary case or proceeding, or

(2)     consents to the entry of a Bankruptcy Order for relief against it in an involuntary case or proceeding, or

(3)     consents to the appointment of a Custodian of it or for all or substantially all of its property, or

(4)     makes a general assignment for the benefit of its creditors or files a proposal or scheme of arrangement involving the rescheduling or composition of its indebtedness, or

(5)     consents to the filing of a petition in bankruptcy against it;

(h)     any Guarantee of a Significant Subsidiary ceases to be in full force and effect or any Guarantee of a Significant Subsidiary is declared to be null and void and unenforceable or any Guarantee of a Significant Subsidiary is found to be invalid or any Guarantor that is a Significant Subsidiary denies its liability under its Guarantee (other than by reason of release of a Guarantor in accordance with the terms of this Indenture); or

71

(i)      so long as the Security Documents have not otherwise been terminated in accordance with their terms or the Collateral as a whole has not otherwise been released from the Lien in favor of the Collateral Agent for the benefit of the Notes Secured Creditors created by the Security Documents in accordance with the terms thereof, (a) a default by the Company or any Guarantor which is a Significant Subsidiary in the performance of the Security Documents which materially and adversely affects the enforceability, validity, perfection or priority of the Lien granted to the Collateral Agent on the Collateral, in each case taken as a whole, (b) a repudiation or disaffirmation by the Company or any Guarantor that is a Significant Subsidiary of its material obligations under the Security Documents or (c) the determination in a judicial proceeding that all or any material portion of the Security Documents, taken as a whole, is unenforceable or invalid against the Company or any Guarantor that is a Significant Subsidiary for any reason (which default, repudiation, disaffirmation or determination is not rescinded, annulled or otherwise cured within 30 days after the Company receives written notice of such default, repudiation, disaffirmation or determination from the Trustee or the Holders of 25% of the outstanding principal amount of the Notes, including the waiver during such 30-day period by the Required Secured Creditors (as defined in the U.S. Security Agreement) by written instrument delivered to the Company and the applicable defaulting party); or

(j)      the Weighted Average Term Loan Cash Yield exceeds the Maximum Term Loan Cash Yield on any Interest Adjustment Date.

Section 6.2.   Acceleration.

(a)      If an Event of Default (other than an Event of Default specified in Section 6.1(f) or 6.1(g) above with respect to the Company) shall occur and be continuing, then, and in every such case, unless the principal of all the Notes shall have already become due and payable, either the Trustee or the Holders of not less than 25% in aggregate principal amount of the then outstanding Notes, by notice in writing to the Company, the agent or other representative under the Senior Credit Facilities and to the Trustee (the "*Acceleration Notice*"), may declare all of the unpaid principal of, and premium, if any, and accrued interest thereon to be, and the same (x) shall become immediately due and payable, or (y) if there are any amounts outstanding under the Senior Credit Facilities, shall become immediately due and payable upon the first to occur of an acceleration under the Senior Credit Facilities or five business days after receipt by the Company and the agent or other representative under the Senior Credit Facilities of such Acceleration Notice but only if such Event of Default is then continuing. If an Event of Default specified in Section 6.1(f) or 6.1(g) with respect to the Company occurs and is continuing, all unpaid principal of, and premium, if any, and accrued interest due and payable on all the outstanding Notes shall ipso facto become and be immediately due and payable without any declaration, notice or other act on the part of the Trustee or any Holder.

(b)      At any time after a declaration of acceleration with respect to the Notes as described in the preceding paragraph, the Holders of a majority in aggregate principal amount of the Notes, by written notice to the Company and the Trustee, may rescind and cancel, on behalf of all Holders, such declaration and its consequences:

(1)      if the rescission would not conflict with any judgment or decree;

72

(2)     if all existing Events of Default have been cured or waived except nonpayment of principal or interest that has become due solely because of the acceleration;

(3)     to the extent the payment of such interest is lawful, interest on overdue installments of interest and overdue principal, which has become due otherwise than by such declaration of acceleration, has been paid;

(4)     if the Company has paid the Trustee its reasonable compensation and reimbursed the Trustee for its expenses, disbursements and advances; and

(5)     in the event of the cure or waiver of an Event of Default of the type described in Section 6.1(f) or (g), the Trustee shall have received an Officer's Certificate to the effect that such Event of Default has been cured or waived.

No such rescission shall affect any subsequent Default or impair any right consequent thereto.

In the event that the maturity of the Notes is accelerated pursuant to this Section 6.2, 100% of the principal amount thereof plus accrued interest to the date of payment shall become due and payable.

Section 6.3.     Other Remedies.

If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy by proceeding at law or in equity to collect the payment of principal of or interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Holders of the Notes in respect of which such judgment has been recovered.

Section 6.4.     Waiver of Past Default.

Subject to Sections 6.7 and 9.2, prior to the declaration of acceleration of the maturity of the Notes, the Holder or Holders of not less than a majority in aggregate principal amount of the Notes at the time outstanding by written notice to the Company and the Trustee may waive on behalf of all the Holders any past default or Event of Default under this Indenture and its consequence, except a default in the payment of principal of or interest on any Note or a default with respect to any covenant or provision which cannot be modified or amended without the consent of the Holder of each outstanding Note affected pursuant to Section 9.2.

Section 6.5.     Control by Majority.

NY 71506945v7
08/08/08 05:21PM

The Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on it, including, without limitation, any remedies provided for in Section 6.3. However, the Trustee may refuse to follow any direction that conflicts with law, the Notes or this Indenture, or that the Trustee determines may be unduly prejudicial to the rights of another Securityholder or that may involve the Trustee in personal liability.

Section 6.6.     Limitation on Suits.

A Securityholder may not pursue any remedy with respect to this Indenture or the Notes unless:

(a)     the Holder gives to the Trustee written notice of a continuing Event of Default;

(b)     the Holders of at least 25% in principal amount of the then outstanding Notes make a written request to the Trustee to pursue a remedy;

(c)     such Holder or Holders offer and, if requested, provide to the Trustee indemnity satisfactory to the Trustee against any loss, liability or expense;

(d)     the Trustee does not comply with the request within 30 days after receipt of the request and the offer of indemnity; and

(e)     during such 30-day period the Holders of at least a majority in principal amount of the then outstanding Notes do not give the Trustee a direction which is inconsistent with the request.

A Securityholder may not use this Indenture to prejudice the rights of another Securityholder or to obtain a preference or priority over such other Securityholder.

Section 6.7.     Rights of Holders To Receive Payment.

Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of principal of and interest on a Note, on or after the respective due dates expressed in the Note, or to bring suit for the enforcement of any such payment on or after such respective dates, is absolute and unconditional and shall not be impaired or affected without the consent of such Holder.

Section 6.8.     Collection Suit by Trustee.

If an Event of Default specified in Section 6.1(a) or (b) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Company or any other obligor on the Notes for the whole amount of principal and accrued interest remaining unpaid, together with interest overdue on principal and, to the extent that payment of such interest is lawful, interest on overdue installments of interest, in each case at the interest rate and such further amount as shall be sufficient to cover the costs and expenses of

74

collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel.

Section 6.9. <u>Trustee May File Proofs of Claim</u>.

The Trustee shall be entitled and empowered, but not required, to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and the Securityholders allowed in any judicial proceedings relative to the Company or any of its Subsidiaries (or any other obligor upon the Notes), its creditors or its property and shall be entitled and empowered to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same, and any Custodian in any such judicial proceedings is hereby authorized by each Securityholder to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Securityholders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agent and counsel, and any other amounts due the Trustee under Section 7.7. Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Securityholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Securityholder in any such proceeding.

Section 6.10. <u>Priorities</u>.

If the Trustee collects any money pursuant to this Article VI, it shall pay out such money in the following order:

First: to the Trustee for amounts due under Section 7.7;

Second: to Holders for amounts due and unpaid on the Notes for principal and interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Notes for principal and interest, respectively; and

Third: to the Company.

The Trustee, upon prior written notice to the Company, may fix a record date and payment date for any payment to Securityholders pursuant to this Article VI.

Section 6.11. <u>Undertaking for Costs</u>.

In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. This Section 6.11 does not apply to a suit by the Trustee, a

NY 71506945v7
08/08/08 05:21PM

suit by a Holder pursuant to Section 6.7, or a suit by any Holder, or group of Holders, holding in the aggregate more than 10% in principal amount of the outstanding Notes.

Section 6.12.  Rights and Remedies Cumulative.

No right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 6.13.  Delay or Omission Not Waiver.

No delay or omission of the Trustee or of any Holder of any Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article VI or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

ARTICLE VII

TRUSTEE

Section 7.1.  Duties of Trustee.

(a)  If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of his own affairs.

(b)  Except during the continuance of an Event of Default:

(i)  The Trustee need perform only those duties as are specifically set forth in this Indenture or the TIA and no others and no implied covenants or obligations shall be read into this Indenture against the Trustee.

(ii)  In the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture. However, in the case of any such certificate or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall examine such certificates and opinions to determine whether or not they conform to the requirements of this Indenture.

(c)  Notwithstanding anything to the contrary herein contained, the Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

76

(i)     This paragraph does not limit the effect of paragraph (b) of this Section 7.1.

(ii)     The Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts.

(iii)     The Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Sections 6.4 and 6.5.

(d)     No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(e)     Every provision of this Indenture that in any way relates to the Trustee is subject to paragraphs (a), (b), (c) and (d) of this Section 7.1.

(f)     The Trustee shall not be liable for interest on any money received by it except as the Trustee may agree in writing with the Company. Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

Section 7.2.     Rights of Trustee.

Subject to Section 7.1:

(a)     The Trustee may rely and shall be protected in acting or refraining from acting upon any document reasonably believed by it to be genuine and to have been signed or presented by the proper Person. The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit.

(b)     Before the Trustee acts or refrains from acting with respect to any matter contemplated by this Indenture, it may require an Officer's Certificate or an Opinion of Counsel, which shall conform to the provisions of Section 11.5. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on such certificate or opinion.

(c)     The Trustee may act through its attorneys and agents and shall not be responsible for the misconduct or negligence of any agent (other than the negligence or willful misconduct of an agent who is an employee of the Trustee) appointed with due care.

(d)     The Trustee shall not be liable for any action it takes or omits to take in good faith and without negligence which it reasonably believes to be authorized or within its rights or powers conferred upon it by this Indenture or the TIA.

77

(e)     The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the Holders, pursuant to the provisions of this Indenture, unless such Holders shall have offered to the Trustee security or indemnity against the costs, expenses and liabilities which may be incurred therein or thereby.

(f)     The Trustee may consult with counsel of its selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

(g)     The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other Person employed to act hereunder.

(h)     The Trustee may request that the Company deliver an Officer's Certificate setting forth the names of individuals and or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Officer's Certificate may be signed by any person authorized to sign an Officer's Certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

Section 7.3.     Individual Rights of Trustee.

The Trustee in its individual capacity or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Company, or its Subsidiaries and Affiliates with the same rights it would have if it were not Trustee. Any Agent may do the same with like rights. However, the Trustee is subject to Sections 7.10 and 7.11.

Section 7.4.     Trustee's Disclaimer.

The Trustee makes no representation as to the validity or adequacy of this Indenture, the Notes or the Guarantees, and it shall not be accountable for the Company's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Company in this Indenture, or any statement in the Notes other than the Trustee's certificate of authentication.

Section 7.5.     Notice of Defaults.

If a Default or an Event of Default with respect to the Notes occurs and is continuing and is actually known to a Responsible Officer, the Trustee shall mail to each Holder a notice of the Default or Event of Default within 60 days after it occurs or, if later, within 10 days after such Default or Event of Default becomes known to the Trustee, unless such Default or Event of Default has been cured. Except in the case of a Default or Event of Default in the payment of principal of or interest on any Note, including an acceleration, and the failure to make payment when required by Sections 4.12 and 4.14, the Trustee may withhold the notice to the Holders if and so long as a committee of its Responsible Officers determines in good faith that withholding the notice is in the interest of the Holders.

Section 7.6.     Reports by Trustee to Holders.

78

Within 60 days after each May 15, beginning with the first May 15 following the date of this Indenture, the Trustee shall transmit to each Securityholder a report dated as of such reporting date of the relevant year that complies with the requirements of TIA § 313(a). The Trustee also shall comply with TIA § 313(b) and TIA § 313(c) and (d). A copy of such report at the time of its transmission to Securityholders shall be filed with the SEC, if required, with each stock exchange, if any, on which the Notes are listed and with the Company.

The Company shall promptly notify the Trustee if the Notes become listed on any stock exchange and the Trustee shall comply with TIA § 313(d).

Section 7.7.    Compensation and Indemnity.

The Company shall pay to the Trustee, the Paying Agent and the Registrar from time to time such compensation for their respective services rendered hereunder as agreed in writing. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Company shall reimburse the Trustee upon request for all reasonable out-of-pocket disbursements, expenses and advances (including reasonable fees and expenses of counsel) incurred or made by each of them in connection with the performance of its duties under this Indenture. Such expenses shall include the reasonable compensation, reasonable out-of-pocket disbursements and reasonable expenses of the Trustee's agents and counsel.

The Company shall indemnify and hold harmless the Trustee and their agents, employees, officers, directors and shareholders against (i) any and all claims, expenses, loss or liability incurred by it arising out of or in connection with the administration of its duties under this Indenture and (ii) Environmental Damages (as defined below). The Trustee shall notify the Company promptly of any claim asserted against it for which it may seek indemnity. The Company shall defend the claim with counsel designated by the Company, who may be outside counsel to the Company, but shall in all events be reasonably satisfactory to the Trustee, and the Trustee shall cooperate in the defense. The Trustee may have separate counsel and the Company shall pay the reasonable fees and expenses of such counsel; *provided* that the Company will not be required to pay such fees and expenses if it assumes the Trustee's defense and there is no conflict of interest between the Company and the Trustee in connection with such defense. The Company need not pay for any settlement made without its written consent, which consent may not be unreasonably withheld. The Company need not reimburse any expense or indemnify against any loss or liability incurred by the Trustee through the Trustee's own willful misconduct, negligence or bad faith.

"Environmental Damages" shall mean all claims, demands, liabilities, losses, damages, causes of action, judgments, penalties, fines, costs and expenses, made, incurred, suffered, brought, or imposed at any time and from time to time relating to:

(i)    the presence of any Hazardous Material on the Mortgaged Property in violation of any Environmental Law, or any escape, seepage, leakage, spillage, emission, release, discharge or disposal of any Hazardous Material on or from the Mortgaged Property, requiring any investigation remediation pursuant to any Environmental Law; or

NY 71506945v7
08/08/08 05:21PM

(ii)     any act, omission, or event occurring in connection with the handling, treatment, containment, removal, storage, decontamination, clean-up, transport or disposal of any Hazardous Material which is present on the Mortgaged Property requiring investigation or remediation pursuant to any Environmental Law; or

(iii)     any violation of any Environmental Law, regardless of whether any act, omission, event or circumstance giving rise to the violation constituted a violation at the time of the occurrence or inception of such act, omission, event or circumstance.

"Environmental Law" means any federal, state or local law, statue, ordinance, code, rule, regulation, license, authorization, order, injunction or decree, of any of the foregoing, which pertains to health and safety as it relates to any Hazardous Material, or to the protection of the environment (including but not limited to ground or air or water or noise pollution or contamination, and underground or above ground tanks) and shall include without limitation, the Solid Waste Disposal Act, 42 U.S.C. § 6901 et seq.; the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq. ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"); the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq.; the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq.; the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq.; the Safe Drinking Water Act, 42 U.S.C. § 300f et seq.; and any other state or federal environmental statutes, and all rules, regulations, orders and decrees now or hereafter promulgated under any of the foregoing, as any of the foregoing now exist or may be changed or amended or come into effect in the future.

"Hazardous Material" means any substance, whether solid, liquid or gaseous: which is listed defined or regulated as a "hazardous substance", "hazardous waste" or "solid waste", or otherwise classified as hazardous or toxic, in or pursuant to any Environmental Requirement; or which is or contains asbestos, radon, any polychlorinated biphenyl, urea formaldehyde foam insulation, explosive or radioactive material, or motor fuel or other petroleum hydrocarbons.

To secure the Company's payment obligations in this Section 7.7, the Trustee shall have a lien prior to the Notes and the Guarantees on all money or property held or collected by it in its capacity as Trustee, except money or property held in trust to pay principal of or interest on particular Notes.

When the Trustee incurs expenses or renders services after an Event of Default specified in Section 6.1(f) or 6.1(g) occurs, the expenses and the compensation for the services are intended to constitute expenses of administration under any Bankruptcy Law.

This section shall survive the resignation or removal of the Trustee.

Section 7.8.     Replacement of Trustee.

The Trustee may resign at any time by so notifying the Company in writing, such resignation to be effective upon the appointment of a successor Trustee. The Holders of a majority in principal amount of the outstanding Notes may remove the Trustee by so notifying the Trustee in writing and may appoint a successor Trustee with the Company's consent which consent shall not be unreasonably withheld. The Company may remove the Trustee if:

80

(a)     the Trustee fails to comply with Section 7.10;

(b)     the Trustee is adjudged a bankrupt or an insolvent;

(c)     a receiver or other public officer takes charge of the Trustee or its property; or

(d)     the Trustee becomes incapable of acting.

If the Trustee resigns or is removed or if a vacancy exists in the office of Trustee for any reason (the Trustee in such event being referred to herein as the retiring Trustee), the Company shall promptly appoint a successor Trustee. Within one year after the successor Trustee takes office, the Holders of a majority in principal amount of the Notes may appoint a successor Trustee to replace the successor Trustee appointed by the Company.

A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Company. Immediately after that, the retiring Trustee shall transfer all property held by it as Trustee to the successor Trustee (subject to the lien provided in Section 7.7), the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under this Indenture. A successor Trustee shall mail notice of its succession to each Securityholder.

If a successor Trustee does not take office within 60 days after the retiring Trustee resigns or is removed, the retiring Trustee, the Company or the Holders of at least 25% in principal amount of then outstanding Notes may petition any court of competent jurisdiction at the expense of the Company for the appointment of a successor Trustee.

If the Trustee fails to comply with Section 7.10, any Securityholder may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

Notwithstanding replacement of the Trustee pursuant to this Section 7.8, the Company's obligations under Section 7.7 shall continue for the benefit of the retiring Trustee.

Section 7.9.     Successor Trustee by Merger, Etc.

If the Trustee consolidates with, merges or converts into, or transfers all or substantially all of its corporate trust business to, another corporation or national banking association, the resulting, surviving or transferee corporation or national banking association without any further act shall be the successor Trustee; *provided* such corporation shall be otherwise qualified and eligible under this Article VII.

Section 7.10.    Eligibility; Disqualification.

This Indenture shall always have a Trustee who satisfies the requirements of TIA § 310(a)(1) and (2). The Trustee shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition. The Trustee shall comply with TIA § 310(b); *provided* that there shall be excluded from the operation of TIA § 310(b)(1) any indenture or indentures under which other securities, or certificates of interest or

81

participation in other securities, of the Company are outstanding if the requirements for such exclusion set forth in TIA § 310(b)(1) are met. The provisions of TIA § 310 shall apply to the Company, as obligor of the Notes.

Section 7.11.   Preferential Collection of Claims Against Company.

The Trustee shall comply with TIA § 311(a), excluding any creditor relationship listed in TIA § 311(b). A Trustee who has resigned or been removed shall be subject to TIA § 311(a) to the extent indicated therein.

ARTICLE VIII

DISCHARGE OF INDENTURE; DEFEASANCE

Section 8.1.   Termination of the Company's Obligations.

This Indenture will be discharged and will cease to be of further effect (except as set forth below) and the Trustee at the expense of the Company, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture when:

(1)     either:

(a)     all the Notes theretofore authenticated and delivered (except lost, stolen or destroyed notes which have been replaced or paid as provided in Section 2.7 and Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Company and thereafter repaid to the Company or discharged from such trust) have been delivered to the Trustee for cancellation; or

(b)     all Notes not theretofore delivered to the Trustee for cancellation have become due and payable and the Company has irrevocably deposited or caused to be deposited with the Trustee funds in an amount sufficient to pay and discharge the entire Indebtedness on the Notes not theretofore delivered to the Trustee for cancellation, for principal of, premium, if any, and interest on the Notes to the date of deposit together with irrevocable instructions from the Company directing the Trustee to apply such funds to the payment thereof at maturity or redemption, as the case may be;

(2)     the Company has paid all other sums payable under this Indenture by the Company; and

(3)     the Company has delivered to the Trustee an Officer's Certificate and an Opinion of Counsel stating that all conditions precedent under this Indenture relating to the satisfaction and discharge of this Indenture have been complied with.

Notwithstanding the foregoing paragraph, the Company's obligations in Sections 2.5, 2.6, 2.7, 2.10, 7.7, 8.5 and 8.6 shall survive until the Notes are no longer outstanding pursuant to the last paragraph of Section 2.8. After the Notes are no longer outstanding, the Company's obligations in Sections 7.7, 8.5 and 8.6 shall survive.

NY 71506945v7
08/08/08 05:21PM

After such delivery or irrevocable deposit, the Trustee upon request shall acknowledge in writing the discharge of the Company's and the Guarantors' obligations under the Notes and the Guarantees, as the case may be, and this Indenture except for those surviving obligations specified above.

Section 8.2.    Legal Defeasance and Covenant Defeasance.

(a)    The Company may, at its option by Board Resolution of the Board of Directors, at any time, elect to have either paragraph (b) or (c) below be applied to all outstanding Notes upon compliance with the conditions set forth in Section 8.3.

(b)    Upon the Company's exercise under paragraph (a) hereof of the option applicable to this paragraph (b), each of the Company and the Guarantors shall, subject to the satisfaction of the conditions set forth in Section 8.3, be deemed to have been discharged from its obligations with respect to all outstanding Notes on the date the conditions set forth below are satisfied (hereinafter, "*Legal Defeasance*"). For this purpose, Legal Defeasance means that the Company shall be deemed to have paid and discharged the entire Indebtedness represented by the outstanding Notes, which shall thereafter be deemed to be "outstanding" only for the purposes of Section 8.4 hereof and the other Sections of this Indenture referred to in (i) and (ii) below, and to have satisfied all its other obligations under such Notes and this Indenture (and the Trustee, on demand of and at the expense of the Company, shall execute proper instruments acknowledging the same), except for the following provisions, which shall survive until otherwise terminated or discharged hereunder: (i) the rights of Holders of outstanding Notes to receive solely from the trust fund described in Section 8.4 hereof, and as more fully set forth in such Section, payments in respect of the principal of and interest on such Notes when and to the extent such payments are due, (ii) the Company's obligations with respect to such Notes under Article II and Section 4.2 hereof, (iii) the rights, powers, trusts, duties and immunities of the Trustee hereunder and the Company's obligations in connection therewith, including Section 7.7 hereof and (iv) this Article VIII. Subject to compliance with this Article VIII, the Company may exercise its option under this paragraph (b) notwithstanding the prior exercise of its option under paragraph (c) hereof.

(c)    Upon the Company's exercise under paragraph (a) hereof of the option applicable to this paragraph (c), each of Holdings, the Company and the Guarantors shall, subject to the satisfaction of the conditions set forth in Section 8.3 hereof, be released from its obligations under the covenants contained in Sections 4.8 through 4.14 and Sections 4.16 through 4.18 and Articles V and X hereof with respect to the outstanding Notes on and after the date the conditions set forth below are satisfied (hereinafter, "*Covenant Defeasance*"), and the Notes shall thereafter be deemed not "outstanding" for the purposes of any direction, waiver, consent or declaration or act of Holders (and the consequences of any thereof) in connection with such covenants, but shall continue to be deemed "outstanding" for all other purposes hereunder (it being understood that such Notes shall not be deemed outstanding for accounting purposes). For this purpose, such Covenant Defeasance means that, with respect to the outstanding Notes, the Company and its Subsidiaries may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such covenant, whether directly or indirectly, by reason of any reference elsewhere herein to any such covenant or by reason of any reference in any such covenant to any other provision herein or in any other document and such omission to comply shall not constitute a Default or an Event or Default under Section 6.1(c) hereof, but,

83

except as specified above, the remainder of this Indenture and such Notes shall be unaffected thereby. In addition, upon the Company's exercise under paragraph (a) hereof of the option applicable to this paragraph (c), subject to the satisfaction of the conditions set forth in Section 8.3 hereof, Sections 6.1(c) and 6.1(e) shall not constitute Events of Default.

Section 8.3.    Conditions to Legal Defeasance or Covenant Defeasance.

The following shall be the conditions to the application of either Section 8.2(b) or 8.2(c) hereof to the outstanding Notes:

In order to exercise either Legal Defeasance or Covenant Defeasance:

(a)    the Company must irrevocably deposit with the Trustee, in trust, for the benefit of the Holders, U.S. Legal Tender, U.S. Government Obligations which through the scheduled payment of principal and interest in respect thereof in accordance with their terms, will provide, not later than one day before the due date of any payment on the Notes, U.S. Legal Tender, or a combination thereof, in such amounts as will be sufficient, in the opinion of a nationally recognized firm of independent public accountants, to pay the principal of, premium, if any, and interest on the Notes on the stated date for payment thereof or on the applicable redemption date, as the case may be, of such principal or installment of principal of or interest on the Notes; *provided* that the Trustee shall have received an irrevocable written order from the Company instructing the Trustee to apply such U.S. Legal Tender or the proceeds of such U.S. Government Obligations to said payments with respect to the Notes;

(b)    in the case of an election under Section 8.2(b) hereof, the Company shall have delivered to the Trustee an Opinion of Counsel in the United States reasonably acceptable to the Trustee confirming that (A) the Company has received from, or there has been published by, the Internal Revenue Service a ruling or (B) since the date of this Indenture, there has been a change in the applicable federal income tax law, in either case to the effect that, and based thereon such Opinion of Counsel shall confirm that, the Holders of the Notes will not recognize income, gain or loss for federal income tax purposes as a result of such Legal Defeasance and will be subject to federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such Legal Defeasance had not occurred;

(c)    in the case of an election under Section 8.2(c) hereof, the Company shall have delivered to the Trustee an Opinion of Counsel in the United States reasonably acceptable to the Trustee confirming that the Holders of the Notes will not recognize income, gain or loss for federal income tax purposes as a result of such Covenant Defeasance and will be subject to federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such Covenant Defeasance had not occurred;

(d)    no Default or Event of Default or event which with notice or lapse of time or both would become a Default or an Event of Default with respect to the Notes shall have occurred and be continuing on the date of such deposit (other than a Default or Event of Default resulting from the incurrence of Indebtedness all or a portion of the proceeds of which will be used to defease the Notes pursuant to this Article VIII concurrently with such incurrence) or insofar as Sections

6.1(f) and 6.1(g) hereof are concerned, at any time in the period ending on the 91st day after the date of such deposit;

(e)     such Legal Defeasance or Covenant Defeasance shall not result in a breach or violation of or constitute a default under this Indenture, the Senior Credit Facilities or any other material agreement or instrument to which the Company or any of its Subsidiaries is a party or by which the Company or any of its Subsidiaries is bound;

(f)     the Company shall have delivered to the Trustee an Officer's Certificate stating that the deposit was not made by the Company with the intent of preferring the Holders over any other creditors of the Company or with the intent of defeating, hindering, delaying or defrauding any other creditors of the Company or others;

(g)     the Company shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent provided for or relating to the Legal Defeasance or the Covenant Defeasance have been complied with; and

(h)     the Company shall have delivered to the Trustee an Opinion of Counsel to the effect that assuming no intervening bankruptcy or insolvency of the Company between the date of deposit and the 91st day following the date of deposit and that no Holder is an insider of the Company, after the 91st day following the date of deposit, the trust funds will not be subject to the effect of any applicable Bankruptcy Laws affecting creditors' rights generally.

Notwithstanding the foregoing, the Opinion of Counsel required by clause (b) above of this Section 8.3 need not be delivered if all Notes not theretofore delivered to the Trustee for cancellation (i) have become due and payable, or (ii) will become due and payable on the Maturity Date within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name and at the expense of the Company.

Section 8.4.    Application of Trust Money.

The Trustee or Paying Agent shall hold in trust U.S. Legal Tender or U.S. Government Obligations deposited with it pursuant to this Article VIII, and shall apply the deposited U.S. Legal Tender and the money from U.S. Government Obligations in accordance with this Indenture to the payment of principal of and interest on the Notes. The Trustee shall be under no obligation to invest said U.S. Legal Tender or U.S. Government Obligations except as it may agree with the Company.

The Company shall pay and indemnify the Trustee against any tax, fee or other charge imposed on or assessed against the U.S. Legal Tender or U.S. Government Obligations deposited pursuant to Section 8.3 hereof or the principal and interest received in respect thereof other than any such tax, fee or other charge which by law is for the account of the Holders of the outstanding Notes.

Anything in this Article VIII to the contrary notwithstanding, the Trustee shall deliver or pay to the Company from time to time upon the Company's request any U.S. Legal Tender or U.S. Government Obligations held by it as provided in Section 8.3 hereof which, in the opinion of a nationally recognized firm of independent public accountants expressed in a written

certification thereof delivered to the Trustee, are in excess of the amount thereof that would then be required to be deposited to effect an equivalent Legal Defeasance or Covenant Defeasance.

Section 8.5.    Repayment to the Company.

Subject to this Article VIII, the Trustee and the Paying Agent shall promptly pay to the Company upon request any excess U.S. Legal Tender or U.S. Government Obligations held by them at any time and thereupon shall be relieved from all liability with respect to such money. The Trustee and the Paying Agent shall pay to the Company upon request any money held by them for the payment of principal or interest that remains unclaimed for two years; *provided* that the Trustee or such Paying Agent, before being required to make any payment, may at the expense of the Company cause to be published once in a newspaper of general circulation in the City of New York or mail to each Holder entitled to such money notice that such money remains unclaimed and that after a date specified therein which shall be at least 30 days from the date of such publication or mailing any unclaimed balance of such money then remaining will be repaid to the Company. After payment to the Company, Holders entitled to such money must look to the Company for payment as general creditors unless an applicable law designates another Person.

Section 8.6.    Reinstatement.

If the Trustee or Paying Agent is unable to apply any U.S. Legal Tender or U.S. Government Obligations in accordance with this Article VIII by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the Company's obligations and each Guarantor's obligations under this Indenture and the Notes and any Guarantee shall be revived and reinstated as though no deposit had occurred pursuant to this Article VIII until such time as the Trustee or Paying Agent is permitted to apply all such U.S. Legal Tender or U.S. Government Obligations in accordance with this Article VIII; *provided* that if the Company has made any payment of interest on or principal of any Notes because of the reinstatement of its obligations, the Company shall be subrogated to the rights of the Holders of such Notes to receive such payment from the U.S. Legal Tender or U.S. Government Obligations held by the Trustee or Paying Agent.

ARTICLE IX

AMENDMENTS, SUPPLEMENTS AND WAIVERS

Section 9.1.    Without Consent of Holders.

Without the consent of any Holders, the Company and the Guarantors, when authorized by resolutions of their respective Boards of Directors (copies of which shall be delivered to the Trustee), and the Trustee may amend or supplement this Indenture, the Notes or the Guarantees without notice to any Holder for any of the following purposes:

(a)    to cure any ambiguity, defect or inconsistency herein;

NY 71506945v7
08/08/08 05:21PM

(b) to add to the covenants of the Company for the benefit of the Holders, or surrender any right or power herein conferred upon the Company;

(c) to provide for additional collateral for the Notes;

(d) to provide for uncertificated Notes in addition to or in place of certificated Notes;

(e) to effect or maintain the qualification of this Indenture under the TIA;

(f) to evidence the succession in accordance with Article V hereof of another Person to the Company and the assumption by any such successor of the covenants of the Company herein and in the Notes;

(g) to add a Guarantor under this Indenture; or

(h) to make any other change that does not adversely affect the rights of any Holder in any material respect; *provided* that in making such change, the Trustee may rely upon an Opinion of Counsel stating that such change does not adversely affect the rights of any Holder in any material respect.

Section 9.2.    With Consent of Holders.

Subject to Section 6.7 and the provisions of this Section 9.2, the Company and the Guarantors, when authorized by resolutions of their respective Boards of Directors (copies of which shall be delivered to the Trustee), and the Trustee may amend or supplement this Indenture with the written consent of the Holders of at least a majority in aggregate principal amount of the Notes then outstanding. Subject to Section 6.7 and the provisions of this Section 9.2, the Holders of, in the aggregate, at least a majority in principal amount of the then outstanding Notes affected may waive compliance by the Company with any provision of this Indenture without notice to any other Securityholder.

However, without the consent of each Securityholder affected, an amendment, supplement or waiver, including a waiver pursuant to Section 6.4 may not:

(a) reduce the percentage of principal amount of Notes whose Holders must consent to an amendment, supplement or waiver of any provision of this Indenture or the Notes;

(b) reduce the rate of or change or have the effect of changing the time for payment of interest, including defaulted interest, on any Note;

(c) reduce the principal of or change or have the effect of changing the fixed maturity of any Notes, or change the date on which any Notes may be subject to redemption or reduce the redemption price therefor;

(d) make the principal of, or any interest on, any Note payable in money other than that stated in the Note;

(e)     make any change in provisions of this Indenture protecting the right of each Holder to receive payment of principal of and interest on such Note on or after the due date thereof or to bring suit to enforce such payment, or permitting Holders of a majority in principal amount of Notes to waive Defaults or Events of Default;

(f)     after the Company's obligation to purchase Notes arises thereunder, amend, change or modify any provisions of this Indenture or the related definitions affecting the Company's obligation to make a Change of Control Offer in a manner which adversely affects the Holders;

(g)     after the Company's obligation to purchase Notes arises thereunder, amend, change or modify in any material respect the obligation of the Company to make and consummate a Net Proceeds Offer with respect to any Asset Sale that has been consummated or, after such Asset Sale has been consummated, modify any of the provisions or definitions with respect thereto; or

(h)     release any Guarantor that is a Significant Subsidiary from any of its obligations under its Guarantee or this Indenture otherwise than in accordance with the terms of this Indenture.

Without the consent of the Holders of at least 75% in principal amount of the Notes then outstanding, no amendment may release from the Lien created by the Security Documents in favor of the Collateral Agent for the benefit of the Notes Secured Creditors pursuant to this Indenture or the Notes and the Security Documents all or substantially all of the Collateral otherwise than in accordance with the terms of such Security Documents.

It shall not be necessary for the consent of the Holders under this Section 9.2 to approve the particular form of any proposed amendment, supplement or waiver, but it shall be sufficient if such consent approves the substance thereof.

After an amendment, supplement or waiver under this Section 9.2 becomes effective, the Company shall mail to the Holders affected thereby a notice briefly describing the amendment, supplement or waiver. Any failure of the Company to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

In connection with any amendment, supplement or waiver under this Article IX, the Company may, but shall not be obligated to, offer to any Holder who consents to such amendment, supplement or waiver, or to all Holders, consideration for such Holder's consent to such amendment, supplement or waiver.

Section 9.3.    Compliance with Trust Indenture Act.

Every amendment to or supplement of this Indenture, the Notes or the Guarantees shall be set forth in a supplemental indenture that complies with the TIA as then in effect.

Section 9.4.    Revocation and Effect of Consents.

88

Until an amendment, supplement or waiver becomes effective, a consent to it by a Holder is a continuing consent by the Holder and every subsequent Holder of that Note or portion of that Note that evidences the same debt as the consenting Holder's Note, even if notation of the consent is not made on any Note. However, any such Holder or subsequent Holder may revoke the consent as to his Note or portion of a Note. Such revocation shall be effective only if the Trustee receives the notice of revocation before the date the amendment, supplement or waiver becomes effective. Notwithstanding the above, nothing in this paragraph shall impair the right of any Securityholder under § 316(b) of the TIA.

The Company may, but shall not be obligated to, fix a record date for the purpose of determining the Holders entitled to consent to any amendment, supplement or waiver which record date shall be at least 10 days prior to the first solicitation of such consent. If a record date is fixed, then notwithstanding the second and third sentences of the immediately preceding paragraph, those Persons who were Holders at such record date (or their duly designated proxies), and only those Persons, shall be entitled to consent to such amendment, supplement or waiver or to revoke any consent previously given, whether or not such Persons continue to be Holders after such record date. Such consent shall be effective only for actions taken within 90 days after such record date.

After an amendment, supplement or waiver becomes effective, it shall bind every Securityholder unless it makes a change described in any of clauses (a) through (l) of Section 9.2. In that case the amendment, supplement or waiver shall bind each Holder of a Note who has consented to it.

Section 9.5.    Notation on or Exchange of Notes.

If an amendment, supplement or waiver changes the terms of a Note, the Trustee may (in accordance with the specific direction of the Company) request the Holder of the Note to deliver it to the Trustee. The Trustee may (in accordance with the specific direction of the Company) place an appropriate notation on the Note about the changed terms and return it to the Holder. Alternatively, if the Company or the Trustee so determines, the Company in exchange for the Note shall issue and the Trustee shall authenticate a new Note (together with related Guarantees of the Guarantors) that reflects the changed terms. Failure to make the appropriate notation or issue a new Note shall not affect the validity and effect of such amendment, supplement or waiver.

Section 9.6.    Trustee To Sign Amendments, Etc.

The Trustee shall sign any amendment, supplement or waiver authorized pursuant to this Article IX if the amendment, supplement or waiver does not adversely affect the rights, duties or immunities of the Trustee. If it does, the Trustee may, but need not, sign it. In signing any amendment, supplement or waiver, the Trustee shall be entitled to receive, if requested, an indemnity reasonably satisfactory to it and to receive, and shall be fully protected in relying upon, an Officer's Certificate and an Opinion of Counsel stating that the execution of any amendment, supplement or waiver authorized pursuant to this Article IX is authorized or permitted by this Indenture. Neither the Company nor any Guarantor may sign an amendment until its Board of Directors approves it. Notwithstanding the foregoing, an Opinion of Counsel

89