shall not be required in connection with the addition of a Guarantor under this Indenture upon execution and delivery by such Guarantor and the Trustee of a supplemental indenture to this Indenture and notation of Guarantee.

## ARTICLE X

## GUARANTEE

Section 10.1. <u>Unconditional Guarantee</u>.

Each Guarantor hereby unconditionally, jointly and severally, guarantees (each such guarantee to be referred to herein as a "*Guarantee*"), to each of the Holders and to the Trustee and their respective successors and assigns that (i) the principal of and interest on the Notes will be promptly paid in full when due, subject to any applicable grace period, whether at maturity, by acceleration or otherwise, and interest on the overdue principal, if any, and interest on any interest, if any, to the extent lawful, of the Notes and all other obligations of the Company to the Holders or the Trustee hereunder or thereunder will be promptly paid in full or performed, all in accordance with the terms hereof and thereof; and (ii) in case of any extension of time of payment or renewal of any of the Notes or of any such other obligations, the same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, subject to any applicable grace period, whether at stated maturity, by acceleration or otherwise, subject, however, in the case of clauses (i) and (ii) above, to the limitations set forth in Section 10.4. Each Guarantor hereby agrees that its obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or this Indenture, the absence of any action to enforce the same, any waiver or consent by any of the Holders with respect to any provisions hereof or thereof, the recovery of any judgment against the Company, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor. Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Company, any right to require a proceeding first against the Company, protest, notice and all demands whatsoever and covenants that this Guarantee will not be discharged except by complete performance of the obligations contained in the Notes, this Indenture and in this Guarantee. If any Holder or the Trustee is required by any court or otherwise to return to the Company, any Guarantor, or any custodian, trustee, liquidator or other similar official acting in relation to the Company or any Guarantor, any amount paid by the Company or any Guarantor to the Trustee or such Holder, this Guarantee, to the extent theretofore discharged, shall be reinstated in full force and effect. Each Guarantor further agrees that, as between each Guarantor, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the obligations guaranteed hereby may be accelerated as provided in Article VI for the purposes of this Guarantee, and (y) in the event of any acceleration of such obligations as provided in Article VI, such obligations (whether or not due and payable) shall forthwith become due and payable by each Guarantor for the purpose of this Guarantee.

Section 10.2. <u>Severability</u>.

90

In case any provision of this Guarantee shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 10.3.  Release of a Guarantor.

Upon (i) the unconditional release of a Guarantor from its liability in respect of the Indebtedness in connection with which such Guarantee was executed and delivered in accordance with the first paragraph of Section 4.16, (ii) any sale or other disposition (by merger or otherwise) to any Person which is not a Restricted Subsidiary of the Company of all of the Company's Capital Stock in, or all or substantially all of the assets of, a Guarantor; *provided* that (a) such sale or disposition of such Capital Stock or assets is otherwise in compliance with the terms of this Indenture and (b) such assumption, guarantee or other liability of such Guarantor has been released by the holders of the other Indebtedness of the Company so guaranteed, (iii) the Legal Defeasance or Covenant Defeasance of the Notes as described under Section 8.2 (subject to reinstatement pursuant to Section 8.6) or (iv) a Guarantor being designated as an Unrestricted Subsidiary as described under the definition of "Unrestricted Subsidiary," such Guarantor shall be deemed released from all obligations under this Article X without any further action required on the part of the Trustee or any Holder; *provided* that any such termination shall occur only to the extent that all obligations of such Guarantor under all of its guarantees of, and under all of its pledges of assets or other security interests which secure, such Indebtedness of the Company shall also terminate upon such release, sale or transfer.

The Trustee shall promptly deliver an appropriate instrument evidencing such release upon receipt of a request by the Company accompanied by an Officer's Certificate certifying as to the compliance with this Section 10.3. Any Guarantor not so released remains liable for the full amount of principal of and interest on the Notes as provided in this Article X.

Section 10.4.  Limitation of Guarantor's Liability.

Each Guarantor and by its acceptance hereof each of the Holders hereby confirm that it is the intention of all such parties that the guarantee by such Guarantor pursuant to its Guarantee not constitute a fraudulent transfer or conveyance for purposes of any Bankruptcy Law, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar Federal or state law. To effectuate the foregoing intention, the Holders and such Guarantor hereby irrevocably agree that the obligations of such Guarantor under the Guarantee shall be limited to the maximum amount as will, after giving effect to all other contingent and fixed liabilities of such Guarantor (including, but not limited to, the Guarantor Senior Debt of such Guarantor) and after giving effect to any collections from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under its Guarantee or pursuant to Section 10.6, result in the obligations of such Guarantor under the Guarantee not constituting such fraudulent transfer or conveyance.

Section 10.5.  Consolidation, Merger and Sale of Assets.

Upon any consolidation, merger, sale or conveyance of a Guarantor as permitted by Article V, the Guarantee of such Guarantor set forth in this Article X, and the due and punctual

91

performance and observance of all of the covenants and conditions of this Indenture to be performed by such Guarantor, shall be expressly assumed (in the event that the Company, the Guarantor or another Guarantor is not the surviving corporation in the merger), by an agreement or supplemental indenture reasonably satisfactory in form to the Trustee, executed and delivered to the Trustee, by the corporation formed by such consolidation, or into which the Guarantor shall have merged, or by the corporation that shall have acquired such property. In the case of any such consolidation, merger, sale or conveyance and upon the assumption by the successor corporation, by an agreement or supplemental indenture executed and delivered to the Trustee and satisfactory in form and substance to the Trustee of the due and punctual performance of all of the covenants and conditions of this Indenture to be performed by the Guarantor, such successor corporation shall succeed to and be substituted for the Guarantor with the same effect as if it had been named herein as a Guarantor.

Section 10.6. <u>Contribution</u>.

In order to provide for just and equitable contribution among the Guarantors, the Guarantors agree, *inter se*, that in the event any payment or distribution is made by any Guarantor (a "*Funding Guarantor*") under its Guarantee, such Funding Guarantor shall be entitled to a contribution from all other Guarantors in a *pro rata* amount based on the Adjusted Net Assets of each Guarantor (including the Funding Guarantor) for all payments, damages and expenses incurred by that Funding Guarantor in discharging the Company's obligations with respect to the Obligations. "*Adjusted Net Assets*" of such Guarantor at any date shall mean the lesser of (x) the amount by which the fair value of the property of such Guarantor exceeds the total amount of liabilities, including, without limitation, contingent liabilities (after giving effect to all other fixed and contingent liabilities incurred or assumed on such date (other than liabilities of such Guarantor under Subordinated Obligation)), but excluding liabilities under the Guarantee, of such Guarantor at such date and (y) the amount by which the present fair salable value of the assets of such Guarantor at such date exceeds the amount that will be required to pay the probable liabilities of such Guarantor on its debts (after giving effect to all other fixed and contingent liabilities incurred or assumed on such date and after giving effect to any collection from any Subsidiary of such Guarantor in respect of the obligations of such Subsidiary under the Guarantee), excluding debt in respect of the Guarantee of such Guarantor, as they become absolute and matured.

Section 10.7. <u>Waiver of Subrogation</u>.

Each Guarantor hereby irrevocably waives any claim or other rights which it may now or hereafter acquire against the Company that arise from the existence, payment, performance or enforcement of such Guarantor's obligations under its Guarantee and this Indenture, including, without limitation, any right of subrogation, reimbursement, exoneration, indemnification, and any right to participate in any claim or remedy of any Holder against the Company, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law, including, without limitation, the right to take or receive from the Company, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim or other rights. If any amount shall be paid to any Guarantor in violation of the preceding sentence and the Notes shall not have been paid in full, such amount shall be deemed to have been paid to such Guarantor for the benefit of, and held in trust for the benefit

92

of, the Holders, and shall, subject to the provisions of Section 10.2, forthwith be paid to the Trustee for the benefit of such Holders to be credited and applied upon the Notes, whether matured or unmatured, in accordance with the terms of this Indenture. Each Guarantor acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by this Indenture and that the waiver set forth in this Section 10.7 is knowingly made in contemplation of such benefits.

Section 10.8. Evidence of Guarantee.

To evidence their guarantees to the Holders set forth in this Article X, each of the Guarantors hereby agrees to execute the notation of Guarantee in substantially the form included in Exhibit C. Each such notation of Guarantee shall be signed on behalf of each Guarantor by an Officer or an assistant Secretary.

Section 10.9. Waiver of Stay, Extension or Usury Laws.

Each Guarantor covenants that it will not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive such Guarantor from performing its Guarantee as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this Indenture; and each Guarantor hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

ARTICLE XI

MISCELLANEOUS

Section 11.1. Trust Indenture Act Controls.

The provisions of TIA §§ 310 through 317 that impose duties on any Person (including the provisions automatically deemed included unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

If any provision of this Indenture limits, qualifies or conflicts with the duties imposed by the above paragraph, the imposed duties shall control.

Section 11.2. Notices.

Any notice or communication shall be sufficiently given if in writing and delivered in Person or mailed by first-class mail or by telecopier or email, followed by first-class mail, or by overnight service guaranteeing next-day delivery, addressed as follows:

(a)     if to the Company or any Guarantor:

c/o Vertis, Inc.
250 W. Pratt Street

93

18th Floor
Baltimore, MD 21201
Attention: Chief Financial Officer
Telecopier Number: (410) 528-9287
Email: _____ ]

(b)     if to the Trustee:

Wilmington Trust Company
1100 North Market Street
Wilmington, DE 19890-1615
Telecopier Number: 302-636-4145
Email: KLMoore@wilmingtontrust.com

The Company or the Trustee by notice to the other may designate additional or different addresses for subsequent notices or communications.

Any notice or communication mailed to a Securityholder, including any notice delivered in connection with TIA § 310(b), TIA § 313(c), TIA § 314(a) and TIA § 315(b), shall be mailed to such Holder, first-class postage prepaid, at his address as it appears on the registration books of the Registrar and shall be sufficiently given to such Holder if so mailed within the time prescribed.

Failure to mail a notice or communication to a Securityholder or any defect in it shall not affect its sufficiency with respect to other Securityholders. Except for a notice to the Trustee, which is deemed given only when received, if a notice or communication is mailed in the manner provided above, it is duly given, whether or not the addressee receives it.

Section 11.3.  Communications by Holders with Other Holders.

Securityholders may communicate pursuant to TIA § 312(b) with other Securityholders with respect to their rights under this Indenture, the Notes or the Guarantees. The Company, the Guarantors, the Trustee, the Registrar and any other Person shall have the protection of TIA § 312(c).

Section 11.4.  Certificate and Opinion of Counsel as to Conditions Precedent.

Upon any request or application by the Company to the Trustee to take any action under this Indenture, the Company shall furnish to the Trustee at the request of the Trustee (a) an Officer's Certificate in form and substance reasonably satisfactory to the Trustee stating that, in the opinion of the signers, all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with (which officer signing such certificate may rely, as to matters of law, on an Opinion of Counsel), (b) an Opinion of Counsel in form and substance reasonably satisfactory to the Trustee stating that, in the opinion of counsel, all such conditions have been complied with (which counsel, as to factual matters, may rely on an Officer's Certificate and certificates of public officials) and (c) where applicable, a certificate or

94

opinion by an independent certified public accountant satisfactory to the Trustee that complies with TIA § 314(c).

Section 11.5. <u>Statements Required in Certificate and Opinion of Counsel</u>.

Each certificate and Opinion of Counsel with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(a)     a statement that the Person making such certificate or rendering such Opinion of Counsel has read such covenant or condition;

(b)     a brief statement as to the nature and scope of the examination or investigation upon which the statements contained in such certificate or Opinion of Counsel are based;

(c)     a statement that, in the opinion of such Person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)     a statement as to whether or not, in the opinion of such Person, such condition or covenant has been complied with.

Section 11.6. <u>Rules by Trustee, Paying Agent, Registrar</u>.

The Trustee may make reasonable rules in accordance with the Trustee's customary practices for action by or at a meeting of Securityholders. The Paying Agent or Registrar may make reasonable rules for its functions.

Section 11.7. <u>Legal Holidays</u>.

If a payment date is a Legal Holiday at a place of payment, payment may be made at that place on the next succeeding day that is not a Legal Holiday, and no interest shall accrue for the intervening period.

Section 11.8. <u>Governing Law</u>.

THE LAWS OF THE STATE OF NEW YORK SHALL GOVERN THIS INDENTURE AND THE NOTES WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE COMPANY AGREES TO SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS INDENTURE OR THE NOTES.

Section 11.9. <u>No Recourse Against Others</u>.

No past, present or future director, officer, employee, incorporator or stockholder of the Company or any Guarantor, as such, shall have any liability for any obligations of the Company or any Guarantor under the Notes, the Guarantees or this Indenture or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder by accepting a Note

NY 71506945v7
08/08/08 05:21PM

waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes and the Guarantees.

Section 11.10. Successors.

All agreements of the Company and the Guarantors in this Indenture, the Notes and the Guarantees shall bind their respective successors. All agreements of the Trustee in this Indenture shall bind its successor.

Section 11.11. Counterparts.

The parties may sign any number of counterparts of this Indenture. Each such counterpart shall be an original, but all of them together represent the same agreement.

Section 11.12. Severability.

In case any provision in this Indenture, the Notes or the Guarantees shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby, and a Holder shall have no claim therefor against any party hereto.

Section 11.13. Table of Contents, Headings, Etc.

The table of contents, cross-reference sheet and headings of the Articles and Sections of this Indenture have been inserted for convenience of reference only, and are not to be considered a part hereof, and shall in no way modify or restrict any of the terms or provisions hereof.

Section 11.14. No Adverse Interpretation of Other Agreements.

This Indenture may not be used to interpret another indenture, loan or debt agreement of the Company or any of its Subsidiaries. Any such indenture, loan or debt agreement may not be used to interpret this Indenture.

Section 11.15. Benefits of Indenture.

Nothing in this Indenture, the Notes or the Guarantees, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture, the Notes or the Guarantees.

Section 11.16. Independence of Covenants.

All covenants and agreements in this Indenture shall be given independent effect so that if any particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or otherwise be within the limitations of, another covenant shall not avoid the occurrence of a Default or an Event of Default if such action is taken or condition exists.

NY 71506945v7
08/08/08 05:21PM

## ARTICLE XII

## COLLATERAL AND SECURITY DOCUMENTS

Section 12.1.  Security Documents; Additional Collateral.

(a)  In order to secure the due and punctual payment of the Notes and all other Obligations in respect of the Notes and this Indenture, and the other amounts payable to the Trustee hereunder, the Company and the Guarantors shall, on the Issue Date, enter into the applicable Security Documents to create the Lien on the Collateral in favor of the Collateral Agent for the benefit of the Notes Secured Creditors and to provide for certain related intercreditor matters. Any Guarantor shall, upon becoming a Guarantor, become a party to each applicable Security Document as shall be necessary or appropriate to grant and create a valid Lien on and security interest in the personal property of such Guarantor of the type described in the definition of "Collateral" in the U.S. Security Agreement and, to the extent required by the Senior Credit Facilities, all real property owned by such Guarantor, in each case, subject to no Liens other than Permitted Liens.

(b)  If at any time, the Company or any Guarantor acquires in fee simple any real property with a fair market value in excess of $1.0 million or any entity which owns in fee simple any real property with a fair market value in excess of $1.0 million becomes a Guarantor, in either case as determined in good faith by the Company's Board of Directors, the Company or such Guarantor shall grant to the Collateral Agent for the benefit of the Notes Secured Creditors a Mortgage or Amended and Restated Mortgage, as appropriate, on such real property that is not already covered by the Security Documents. All such Mortgages or Amended and Restated Mortgages, as appropriate, shall be reasonably satisfactory in form and substance to the Collateral Agent. In connection therewith, the Company shall deliver title insurance policies, proper fixture filings under the UCC on Form UCC-1, opinions of counsel, documents of the type described in clause (iv) of Section 4.20 of this Indenture, surveys and insurance certificates, in each case, in form and substance reasonably satisfactory to the Collateral Agent.

(c)  The Trustee (in its capacity as a secured creditor on behalf of the Holders pursuant to the Security Documents) and each Holder, by accepting a Note, agrees to all of the terms and provisions of each of the Security Documents, as the same may be amended from time to time pursuant to the provisions of Security Documents and this Indenture, and acknowledge that (i) until such time as all First-Lien Obligations, all commitments and letters of credit under the Senior Credit Facilities and all interest rate protection, currency and other hedging agreements entitled to the benefits of the Security Documents have been paid in full in cash in accordance with the respective terms thereof and/or terminated, the Security Documents may be amended, to the extent set forth therein and to the extent permitted by law, without the consent of the Trustee or the Holders and (ii) the Security Documents also may be amended to the extent permitted by law without the consent of the Trustee or the Holders to add new classes of creditors to the extent such Indebtedness and Liens are permitted hereby.

(d)  The Trustee (in its capacity as a secured creditor on behalf of the Holders pursuant to the Security Documents) and the Holders expressly acknowledge and agree (i) to all of the terms and agreements contained in Annex I to the U.S. Security Agreement, (ii) that the

97

claims of the Holders and the Trustee against the Assignors (as defined in the U.S. Security Agreement) in respect of the Collateral constitute junior claims separate and apart (and of a different class) from the senior claims of the Lender Creditors and the Other Creditors (as such term is defined in the U.S. Security Agreement) against the Assignors in respect of the Collateral and (iii) the Obligations under the Senior Credit Facilities and all Primary Obligations and Secondary Obligations (as each such term is defined in the U.S. Security Agreement) include all interest that accrues after the commencement of any case, proceeding or other action relating to the bankruptcy, insolvency, reorganization or similar proceeding of any Assignor at the rate provided for in the respective Secured Debt Agreements (as defined in the U.S. Security Agreement) governing the same, whether or not a claim for post-petition interest is allowed in any such case, proceeding or other action.

(e)     In the event that any provisions of this Indenture are deemed to conflict with any Security Document, the provisions of such Security Document shall govern.

Section 12.2.  Recording, Etc.

(a)     The Company and the Guarantors shall take or cause to be taken all action required or desirable to be taken by the Company or such Guarantor to maintain and perfect the Lien on the Collateral granted by the Security Documents, to the extent required thereby, including, but not limited to, causing all financing statements, any mortgage or deed of trust, the Security Documents (or a short form version thereof), other instruments of further assurance, including, without limitation, continuation statements covering security interests in personal property to be executed and delivered to the Collateral Agent to be promptly recorded, registered and filed, and at all times to be kept recorded and will execute and cause to be filed such financing statements and cause to be issued and filed such continuation statements, all in such manner and in such places as may be required by law fully to maintain the perfection of the Holders' and the Trustee's rights under this Indenture and the Security Documents to all property comprising the Collateral. Without limiting the generality of the foregoing, the Company will cause each Guarantor that is not in existence on the Issue Date to execute and deliver to the Collateral Agent and the Trustee at such time as such Guarantor becomes a Guarantor and owns, possesses or acquires any property or assets of the type or nature that would constitute Collateral (i) a counterpart to the U.S. Security Agreement and such other documents as required by the U.S. Security Agreement and (ii) any other Security Documents as shall be necessary or reasonably requested by the Collateral Agent or the Trustee in order to grant and perfect the Lien on the Collateral of such property and assets. Notwithstanding the foregoing, to the extent the Bank Lenders do not require the Company or the Guarantors to maintain or perfect a Lien in certain Collateral, the Holders shall not require the Company or the Guarantors to maintain or perfect a Lien on such Collateral.

The Company shall from time to time promptly pay and discharge all mortgage and financing and continuation statement recording and/or filing fees, charges and taxes relating to this Indenture and the Security Documents, any amendments thereto and any other instruments of further assurance. Notwithstanding the foregoing, the Trustee shall not have any duty or obligation to ascertain whether any such taxes are required to be paid at any time, and the determination referred to in the preceding sentence shall only be made by the Trustee upon

NY 71506945v7
08/08/08 05:21PM

receipt of written notice that such taxes are due and owing. This paragraph (a) is subject to the provisions of the U.S. Security Agreement.

(b)     The Company shall furnish or cause to be furnished to the Trustee:

(1)     at the time of execution and delivery of this Indenture, a reliance letter with respect to Opinions of Counsel delivered on the Issue Date to the Initial Purchasers (other than from counsel to the Initial Purchasers) with respect to UCC Collateral;

(2)     as promptly as practicable after the Issue Date (1) in any event within five days after the Issue Date in the case of UCC-3 amendments or the equivalent under revised Article 9 of the UCC in each applicable jurisdiction; and (2) in any event within 45 days after the Issue Date in the case of Real Property, Opinion(s) of Counsel either (a) substantially to the effect that, in the opinion of such counsel, each Security Document and all other instruments of further assurance or assignment have been properly recorded, or filed to the extent necessary to perfect or create the security interests created by each such Security Document, to the extent that perfection of such security interests is required by the Security Documents, and reciting the details of such action, and stating that as to the security interests created pursuant to each such Security Document, such recordings, registrations and filings are the only recordings, registrations and filings necessary to give notice thereof and that no re-recordings, re-registrations or refilings are necessary to maintain such notice (other than as stated in such opinion), or (b) if perfection of such security interests is required by the Security Documents, to the effect that, in the opinion of such counsel, no such action is necessary to perfect such security interests; and

(3)     within 30 days after [_____] in each year beginning with [____], an Opinion of Counsel dated as of such date either (a) to the effect that, in the opinion of such counsel, such action has been taken with respect to the recordings, registrations, filings, re-recordings, re-registrations and refilings of all instruments of further assurance as is necessary to maintain the validity, enforceability and perfection of the security interests of each of the Security Documents, to the extent that perfection of such security interests is required by the Security Documents, and reciting with respect to such security interests the details of such action (or to the extent that further action is required to be taken within the next twelve months, details of such further action) or referencing prior Opinions of Counsel in which such details are given, or (b) if perfection of such security interests is required by the Security Documents, to the effect that, in the opinion of such counsel, no such action is necessary to maintain such security interests.

Section 12.3.   Release of Collateral.

The Company, the Guarantors and the Trustee agree that, and each Holder, by accepting a Note, acknowledges that, subject to the terms of the Security Documents:

(a)     The Bank Lenders (or, after the Obligations and all commitments and letters of credit under the Senior Credit Facilities have been paid in full in cash in accordance with the respective terms thereof and/or terminated, the holders of the Obligations under all interest rate protection, currency and other hedging agreements entitled to the benefits of the Security

99

Documents) shall have the exclusive right and authority to determine the release, sale or other disposition of the Collateral; *provided* that no release of the Notes Secured Creditors' Lien on the Collateral shall be made if the Collateral to be released is not the subject of a sale or other disposition and such release is being made in connection with or in contemplation of the repayment in full of the First-Lien Obligations.

(b)     At such time as all First-Lien Obligations, all commitments and letters of credit under the Senior Credit Facilities, all interest rate protection, currency and other hedging agreements entitled to the benefits of the Security Documents and any other senior-priority Permitted Liens have been satisfied in full in cash in accordance with the terms thereof and/or terminated, except as set forth in paragraphs (c) and (d) below and subject to Article IX, the Trustee (together with any other representative under Equal Lien Agreements) will have the exclusive right and authority to determine the release, sale or other disposition of the Collateral in accordance with instructions from the holders of a majority in aggregate principal amount of all Equal Lien Indebtedness (acting together as a single class) or, in the absence of such instructions, in such manner as the Trustee (together with any other representative under Equal Lien Agreements) deems appropriate in its (or their) absolute discretion.

(c)     At such time as all First-Lien Obligations, all commitments and letters of credit under the Senior Credit Facilities, all interest rate protection, currency and other hedging agreements entitled to the benefits of the Security Documents and any other senior-priority Permitted Liens have been satisfied in full in cash in accordance with the terms thereof and/or terminated, the Company and the Guarantors shall have the right to obtain a release of items of Collateral (the "*Released Interest*") in connection with an Asset Sale upon compliance with the condition that the Company deliver to the Trustee the following:

(1)     an Officer's Certificate stating that:

(i)     such Asset Sale complies with the terms and conditions of Section 4.12;

(ii)     all Net Cash Proceeds from the sale of the Released Interest will be applied pursuant to the provisions of Section 4.12; and

(iii)     all conditions precedent in this Indenture relating to the release in question have been complied with;

(2)     appropriate legal opinion(s) (from counsel, which may be in-house counsel, reasonably acceptable to the Trustee) to the effect set forth in clause (1) above, if requested by the Trustee (although the Trustee shall have no obligation to make any such request);

(3)     all documentation necessary or reasonably requested by the Trustee to grant to the Trustee a first priority security interest in and Lien on all assets (other than cash or Cash Equivalents) comprising a portion of the consideration received in such Asset Sale, if any, to the extent such security interest and Lien are required by this Indenture or the Security Documents; and

(4)    all documentation required by the TIA, if any, prior to the release of the Collateral.

Upon compliance by the Company with the conditions set forth in this paragraph (c), the Trustee will instruct the Collateral Agent to release the Released Interest from the Lien in favor of the Collateral Agent for the benefit of the Notes Secured Creditors.

(d)    At such time as all First-Lien Obligations, all commitments and letters of credit under the Senior Credit Facilities, all interest rate protection and other hedging agreements entitled to the benefits of the Security Documents have been satisfied in full in cash in accordance with the terms thereof and/or terminated, subject to the provisions of this Indenture and the Security Documents, the Company or any Guarantor may, without any release or consent by the Trustee or the Collateral Agent, if no Default or Event of Default shall have occurred and be continuing:

(1)    abandon, terminate, cancel, release or make alterations in or substitutions of any leases, contracts or rights-of-way subject to the Lien of the Security Documents; *provided* that (i) any altered or substituted leases, contracts or rights-of-way shall forthwith, without further action, be subject to the Lien created by the Security Documents to the same extent as those previously existing and (ii) if the Company or such Guarantor, as the case may be, shall receive any money or property in excess of its expenses in connection with such termination, cancellation, release, alteration or substitution as consideration or compensation for such termination, cancellation, release, alteration or substitution, such money or property shall be treated as monies received in connection with an Asset Sale and subject to the provisions of Section 4.12 hereof;

(2)    surrender or modify any franchise, license or permit subject to the Lien created by the Security Documents which it may own or under which it may be operating; *provided* that, after the surrender or modification of any such franchise, license or permit, the Company or such Guarantor, as the case may be, shall still, in its reasonable business judgment, be entitled, under some other or without any franchise, license or permit, to conduct its business in the territory in which it is then operating; and *provided, further*, that if the Company or such Guarantor, as the case may be, shall be entitled to receive any money or property in excess of its expenses in connection with such surrender or modification as consideration or compensation for such surrender or modification, such money or property shall be treated as monies received in connection with an Asset Sale and subject to the provisions of Section 4.12 hereof;

(3)    alter, repair, replace, change the location or position of and add to its plants, structures, machinery, systems, equipment, fixtures and appurtenances;

(4)    demolish, dismantle, tear down, scrap or abandon any Collateral if, in the Company's or such Guarantor's reasonable business judgment, such demolition, dismantling, tearing down, scrapping or abandonment is in the best interest of the Company or such Guarantor;

101

(5)     grant a license of any Patent, Mark or Copyright (each as defined in the U.S. Security Agreement); *provided* that the Company or such Guarantor receives consideration at least equal to the fair market value of such license;

(6)     abandon any Patent, Mark or Copyright where subsequent applications relating to such Patent, Mark or Copyright have been filed with respect to similar subject matter or where the Company or such Guarantor, as the case may be, in its reasonable business judgment, concludes that such Patent, Mark or Copyright is no longer useful in the conduct of its business;

(7)     grant rights-of-way and easements over or in respect of any real property; *provided* that such grant will not in any material respect, in the reasonable business judgment of the Company or the Guarantor, as the case may be, impair the usefulness of such property in the conduct of its business and will not be prejudicial to the interests of the Holders;

(8)     grant leases or subleases in respect of any owned real property in the event that the Company or such Guarantor, as the case may be, determines, in its reasonable business judgment, that such owned real property is no longer useful in the conduct of its business and that such lease or sublease would not be reasonably likely to have a material adverse effect on the value of the property subject thereto; *provided* that any such lease or sublease shall by its terms be subject and subordinate to the Lien, and otherwise comply with the provisions, of the mortgage affecting such real property; and

(9)     sell, exchange or otherwise dispose of any asset constituting Collateral; *provided* that such sale, exchange or other disposition does not constitute an Asset Sale; *provided, further*, that if the Collateral being sold, exchanged or otherwise disposed of is real property and constitutes a portion (but not all) of the real property covered by a single mortgage, then the Company shall, if requested by the Collateral Agent or the Trustee, deliver to the Trustee a title endorsement and an updated survey, in each case covering the portion of such real property that is not so sold, exchanged or otherwise disposed of.

Upon any such sale, exchange or other disposition permitted by this Section 12.3(d) (other than sales, exchanges or dispositions to the Company or a Guarantor) such Collateral shall be sold, exchanged or otherwise disposed of free and clear of Liens created by the Security Documents. In the event that the Company or a Guarantor has sold, exchanged or otherwise disposed of or proposes to sell, exchange or otherwise dispose of any portion of the Collateral (other than sales, exchanges or dispositions to the Company or a Guarantor) which under the provisions of this Section 12.3(d) may be sold, exchanged or otherwise disposed of by the Company or such Guarantor without any release or consent of the Trustee or the Collateral Agent, and the Company or such Guarantor requests the Trustee to furnish a written disclaimer, release or quitclaim of any interest in such property under any of the Security Documents, the Trustee shall promptly execute such an instrument (in recordable form, where appropriate) upon delivery to the Trustee of (i) an Officer's Certificate by the Company or such Guarantor reciting the sale, exchange or other disposition made or proposed to be made and describing in reasonable detail the property affected thereby, and stating that such property is property which

102

may be sold, exchanged or otherwise disposed of or dealt with by the Company or such Guarantor without any release or consent of the Trustee or the Collateral Agent in accordance with the provisions of this Section 12.3(d), and (ii) if requested by the Trustee, an Opinion of Counsel stating that the sale, exchange or other disposition made or proposed to be made was duly taken by the Company or such Guarantor in conformity with this Section 12.3(d) and that the execution of such written disclaimer, release or quitclaim is appropriate under this Section 12.3(d).

Section 12.4.   Taking and Destruction.

At such time as all First-Lien Obligations, all commitments and letters of credit under the Senior Credit Facilities and all interest rate protection and other hedging agreements entitled to the benefits of the Security Documents have been satisfied in full in cash in accordance with the terms thereof and/or terminated, upon any Taking or Destruction of any Collateral, all Net Insurance Proceeds received by the Company or any Guarantor shall be deemed Net Cash Proceeds and shall be applied in accordance with Section 4.12.

Section 12.5.   Trust Indenture Act Requirements.

The release of any Collateral from the Lien of any of the Security Documents or the release of, in whole or in part, the Liens created by any of the Security Documents will not be deemed to impair the security interests in contravention of the provisions hereof if and to the extent the Collateral or Liens are released pursuant to the applicable Security Documents and pursuant to the terms hereof. The Trustee and each of the Holders acknowledge that a release of Collateral or Liens strictly in accordance with the terms of the Security Documents and the terms hereof will not be deemed for any purpose to be an impairment of the Security Interests in contravention of the terms of this Indenture. To the extent applicable following the qualification of this Indenture under the TIA, without limitation, the Company and the Guarantors will comply with TIA section 314(d) relating to the release of property or securities from the Liens hereof and of the Security Documents. Any certificate or opinion required by TIA Section 314(d) may be made by an Officer of the Company, except in cases in which TIA Section 314(d) requires that such certificate or opinion be made by an independent Person.

Section 12.6.   Suits To Protect the Collateral.

Subject to the provisions of the Security Documents, the Trustee and any other representative under Equal Lien Agreements, acting together, on behalf of the Equal Lien Creditors, shall have power to instruct the Collateral Agent to institute and to maintain such suits and proceedings as it may deem expedient to prevent any impairment of the Collateral by any acts which may be unlawful or in violation of any of the Security Documents or this Indenture, and such suits and proceedings as the Trustee and any other representative under Equal Lien Agreements, acting together, may deem expedient to preserve or protect the interests of the Equal Lien Creditors in the Collateral (including power to instruct the Collateral Agent to institute and maintain suits or proceedings to restrain the enforcement of or compliance with any legislative or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid if the enforcement of, or compliance with, such enactment, rule or order would impair the Security Interests or be prejudicial to the interests of the Equal Lien Creditors).

103

Section 12.7.   Purchaser Protected.

In no event shall any purchaser in good faith of any property purported to be released hereunder or under any of the Security Documents be bound to ascertain the authority of the Trustee or the Collateral Agent, as the case may be, to execute the release or to inquire as to the satisfaction of any conditions required by the provisions hereof for the exercise of such authority or to see to the application of any consideration given by such purchaser or other transferee; nor shall any purchaser or other transferee of any property or rights permitted by this Article XII to be sold be under obligation to ascertain or inquire into the authority of the Company, to make any such sale or other transfer.

Section 12.8.   Powers Exercisable by Receiver or Trustee.

In case the Collateral shall be in the possession of a receiver or trustee, lawfully appointed, the powers conferred in this Article XII upon the Company with respect to the release, sale or other disposition of such property may be exercised by such receiver or trustee, and an instrument signed by such receiver or trustee shall be deemed the equivalent of any similar instrument of the Company or of any officer or officers thereof required by the provisions of this Article XII.

Section 12.9.   Determinations Relating to Collateral.

In the event (i) the Trustee shall receive any written request from the Company or any Guarantor under any Security Document for consent or approval with respect to any matter or thing relating to any Collateral or the Company's or any Guarantor's obligations with respect thereto; or (ii) there shall be required from the Trustee under the provisions of any Security Document any performance or the delivery of any instrument; or (iii) a Responsible Officer of the Trustee shall become aware of any nonperformance by the Company or any Guarantor of any covenant or any breach of any representation or warranty of the Company or any Guarantor set forth in any Security Document, and, in the case of clause (i), (ii) or (iii) above, the Trustee's response or action is not otherwise specifically contemplated hereunder then, in each such event, the Trustee shall, within seven Business Days thereafter, advise the Holders, in writing and at the Company's expense, of the matter or thing as to which consent has been requested or the performance or instrument required to be delivered or the nonperformance or breach of which the Trustee has become aware. Subject to Article IX, the Holders of not less than a majority in aggregate principal amount of the outstanding Notes shall have the exclusive authority to direct the Trustee's response to any of the circumstances contemplated in clauses (i), (ii) and (iii) above. In the event the Trustee shall be required to respond to any of the circumstances contemplated in this Section 12.9, the Trustee shall not be required so to respond unless it shall have received written authority by not less than a majority in aggregate principal amount of the outstanding Notes; *provided* that the Trustee shall be entitled to hire experts, consultants, agents and attorneys to advise the Trustee on the manner in which the Trustee should respond to such request or render any requested performance or response to such nonperformance or breach (the expenses of which shall be reimbursed to the Trustee pursuant to Section 7.7). The Trustee shall be fully protected in the taking of any action recommended or approved by any such expert, consultant, agent or attorney or agreed to by a majority of such Holders.

NY 71506945v7
08/08/08 05:21PM

Section 12.10. <u>Release upon Termination of the Company's Obligations</u>.

In the event that the Company delivers an Officer's Certificate certifying that its obligations under this Indenture have been satisfied and discharged by complying with the provisions of Article VIII and such other documents and/or funds as are required to be delivered or paid pursuant to Article VIII, (i) the Trustee shall or shall instruct the Collateral Agent to execute and deliver, in each case without recourse, representation or warranty, such releases, termination statements and other instruments (in recordable form, where appropriate) as the Company may reasonably request evidencing the termination of the Liens created by the Security Documents in favor of the Collateral Agent for the benefit of the Trustee and the Holders and (ii) neither the Trustee nor the Collateral Agent shall be deemed to hold the Liens for the benefit of the Trustee and the Holders.

Section 12.11. <u>Limitation on Duty of Trustee in Respect of Collateral</u>

(a)     Beyond the exercise of reasonable care in the custody thereof, the Trustee shall have no duty as to any Collateral in its possession or control or in the possession or control of any agent or bailee or any income thereon or as to preservation of rights against prior parties or any other rights pertaining thereto and the Trustee shall not be responsible for filing any financing or continuation statements or recording any documents or instruments in any public office at any time or times or otherwise perfecting or maintaining the perfection of the security interest in the Collateral.

(b)     The Trustee shall not be responsible for the existence, genuineness or value of any of the Collateral or for the validity, perfection, priority or enforceability of the Liens upon any of the Collateral, whether impaired by operation of law or by reason of any action or omission to act on its part hereunder, except to the extent such action or omission constitutes negligence or willful misconduct on the part of the Trustee, for the validity or sufficiency of the Collateral or any agreement or assignment contained therein, for the validity of the title of the Company to the Collateral, for insuring the Collateral or for the payment of taxes, charges, assessments or Liens upon the Collateral or otherwise as to the maintenance of the Collateral.

ARTICLE XIII

TRUST MONIES

Section 13.1.  <u>Trust Monies</u>.

All Trust Monies shall be held by or delivered to the Trustee, for the benefit of the Equal Lien Creditors in accordance with the provisions of the applicable Security Documents. Applicable Trust Monies, if any, shall, at the direction of the Company, be (a) applied by the Trustee from time to time to the payment of the principal of, premium, if any, and interest on any Notes at maturity or upon redemption or retirement, or to the purchase of notes upon tender or in the open market or otherwise, (b) released to the extent such cash would be considered Collateral under the Security Documents following such release or (c) applied to cure any payment Event of Default in each case in accordance with the Security Documents.

Section 13.2.  <u>Investment of Trust Monies</u>.

105

All or any part of any Trust Monies held by the Trustee hereunder (except such as may be held for the account of any particular Notes) shall from time to time be invested or reinvested by the Trustee in any Cash Equivalents pursuant to the written direction of the Company, which shall specify the Cash Equivalents in which such Trust Monies shall be invested. Unless an Event of Default occurs and is continuing, any interest on such Cash Equivalents (in excess of any accrued interest paid at the time of purchase) which may be received by the Trustee shall be forthwith paid to the Company. Such Cash Equivalents shall be held by the Trustee as a part of the Collateral, subject to the same provisions hereof as the cash used by it to purchase such Cash Equivalents. The Trustee shall not be liable or responsible for any loss resulting from such investments or sales except only for its own grossly negligent action, its own grossly negligent failure to act or its own willful misconduct in complying with this Section 13.2.

Section 13.3. Return of Applicable Trust Monies.

The Company shall be entitled to request in writing the return of any or all of the Applicable Trust Monies and the Trustee shall return such Applicable Trust Monies to the Company if: (1) no Default or Event of Default has occurred and is continuing, (2) such Applicable Trust Monies, when released to the Company, will be deposited into a Deposit Account (as defined in the U.S. Security Agreement) over which the Collateral Agent has control (as defined in the UCC (as defined in the U.S. Security Agreement)), (3) such Applicable Trust Monies are applied pursuant to the U.S. Security Agreement and (4) the Company delivers to the Trustee an Officer's Certificate stating that all conditions precedent herein provided for relating to such return of Applicable Trust Monies have been complied with.

[Signature Pages Follow]

106

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of the date first written above.

VERTIS, INC.,
as the Company

By: _____
      Name:
      Title:


[_____],
as Trustee

By: _____
      Name:
      Title:


GUARANTORS:

WEBCRAFT, LLC

By: _____
      Name:
      Title:


WEBCRAFT CHEMICALS, LLC

By: _____
      Name:
      Title:


ENTERON GROUP, LLC

By: _____
      Name:
      Title:

107

USA DIRECT, LLC

By: _____
      Name:
      Title:

VERTIS MAILING, LLC

By: _____
      Name:
      Title:

ACG HOLDINGS, INC

By: _____
      Name:
      Title:

AMERICAN COLOR GRAPHICS, INC.

By: _____
      Name:
      Title:

SULLIVAN MARKETING, INC.

By: _____
      Name:
      Title:

NY 71506945v7
08/08/08 05:21PM

AMERICAN IMAGES OF NORTH
AMERICA, INC.

By: _____
     Name:
     Title:


SULLIVAN MEDIA CORPORATION


By: _____
     Name:
     Title:

NY 71506945v7
08/08/08 05:21PM

EXHIBIT A

[FORM OF NOTE]

THESE NOTES HAVE BEEN ISSUED WITH ORIGINAL ISSUE DISCOUNT ("OID") FOR UNITED STATES FEDERAL INCOME TAX PURPOSES. THE ISSUE PRICE, AMOUNT OF OID, ISSUE DATE AND YIELD TO MATURITY OF THESE NOTES MAY BE OBTAINED BY WRITING TO VERTIS, INC. AT [          ].

No.                                                          $

## VERTIS, INC.

### 16% SENIOR SECURED SECOND LIEN NOTES DUE 2012

VERTIS, INC. promises to pay to            or registered assigns the principal sum of
Dollars on [_____], 2012.

Interest Payment Dates: [_____]

Record Dates: [_____]

By:   <u>Authorized Signature</u>

By:   <u>Authorized Signature</u>

Dated:

NY 71506945v7
08/08/08 05:21PM

## CERTIFICATE OF AUTHENTICATION

This is one of the 16% Senior Secured Second Lien Notes due 2012 referred to in the within-mentioned Indenture.

WILMINGTON TRUST COMPANY,
as Trustee

By: _____
Authorized Signatory

Dated:

Exhibit A-2

## 16% SENIOR SECURED SECOND LIEN NOTES DUE 2012

(1)    Interest. VERTIS, INC., a Delaware corporation (the "*Company*", which term shall include any successor thereto in accordance with the Indenture), promises to pay, until the principal hereof is paid or made available for payment, interest (including any Accrued Bankruptcy Interest) on the unpaid principal balance of this Note at a rate of 16% per annum. Interest on the Notes will accrue from and including the most recent date to which interest has been paid or, if no interest has been paid, from and including the date of issuance of such Notes through but excluding the date on which interest is paid. Interest shall be payable in arrears on [_____] (each an "*Interest Payment Date*"). Interest will be computed on the basis of a 360-day year of twelve full 30-day months.

Cash interest will accrue on this Note at a rate of 13% per annum. PIK Interest on this Note will accrue at a rate of 3% per annum and be payable (a) on and after the Maturity Date in cash and (b) prior to the Maturity Date [by increasing the principal amount of this Note by an amount equal to the amount of PIK Interest for the applicable interest period (rounded up to the nearest whole dollar) (or, if necessary, pursuant to requirements of the depository or otherwise, to authenticate a new Global Security executed by the Company with such increased principal amounts][1] [by issuing PIK Notes in an aggregate principal amount equal to the amount of PIK Interest for the applicable interest period (rounded up to the nearest whole dollar) and the Trustee will, at the request of the Company, authenticate and deliver such PIK Notes for original issuance to the Holder of this Note on the relevant record date, as shown by the records of the Register][2]. Following an increase in the principal amount of this Note as a result of a payment of PIK Interest, this Note will bear interest on such increased principal amount from and after the date of such payment of PIK Interest. Any PIK Notes will be dated as of the applicable Interest Payment Date and will bear interest from and after such date. All PIK Notes issued pursuant to a payment of PIK Interest will mature on [        ], 2012 and will be governed by, and subject to the terms, provisions and conditions of, the Indenture and shall have the same rights and benefits as the Notes issued on the Issue Date. Any PIK Notes will be issued with the description "PIK" on the face of such PIK Note.

(2)    Method of Payment. The Company will pay interest on the Notes (except defaulted interest) to the Persons who are registered Holders of Notes at the close of business on the [_____] immediately preceding the Interest Payment Date. Holders must surrender Notes to a Paying Agent to collect principal payments. The Company will pay principal, premium, if any, and interest, except for PIK Interest, in money of the United States that at the time of payment is legal tender for payment of public and private debts. At the Company's option, cash interest may be paid by check mailed to the registered address of the Holder of this Note. provided that [all cash payments of principal, premium, if any, and interest on, this Note will be made by wire transfer of immediately available funds to the accounts

---

[1] Applicable if this Note is represented by a Global Security registered in the name of or held by DTC or its nominee on the relevant record date.

[2] Applicable if this Note is represented by a Physical Security.

Exhibit A-3

specified by the Holder or Holders thereof][1] [all cash payments of principal, premium, if any, and interest on, this Note will be made by wire transfer to a U.S. dollar account maintained by the payee with a bank in the United States if such Holder elects payment by wire transfer by giving written notice to the Trustee or the Paying Agent to such effect designating such account no later than 30 days immediately preceding the relevant due date for payment (or such other date as the Trustee may accept in its discretion)][2].

    (3)    <u>Paying Agent and Registrar</u>. Initially, Wilmington Trust Company (the "*Trustee*") will act as Paying Agent and Registrar. The Company may change any Paying Agent, Registrar or co-Registrar without notice.

    (4)    <u>Indenture</u>. The Company issued the Notes under an Indenture dated as of [_____, 2008] (as amended from time to time, the "*Indenture*") among the Company, the Guarantors and the Trustee. This Note is one of an issue of Notes of the Company issued under the Indenture. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S. Code §§ 77aaa-77bbbb) as amended from time to time. The Notes are subject to all such terms, and Securityholders are referred to the Indenture and such Act for a statement of them. Capitalized terms used herein and not otherwise defined have the meanings set forth in the Indenture. The Notes are secured obligations of the Company, and are unlimited in aggregate principal amount, $350.0 million of which will be issued on the Issue Date and Additional Notes and PIK Notes may be issued after the Issue Date, subject to the limitations set forth in Section 4.9 of the Indenture. The Notes are secured on a second priority basis by security interests in the Collateral pursuant to the Security Documents referred to in the Indenture.

    (5)    <u>Redemption</u>.

    (a)    <u>Optional Redemption</u>. The Notes may be redeemed, at the Company's option, in whole or in part, at any time and from time to time at the redemption prices (expressed as percentages of principal amount of the Notes to be redeemed) set forth below if redeemed during the twelve-month period commencing on the Issue Date and each anniversary thereof of the year set forth below:

| Year | Percentage |
| --- | --- |
| 2008 | 105.000% |
| 2009 | 102.000% |
| 2010 | 101.000% |
| 2011 and thereafter | 100.000% |

In addition, the Company must pay accrued and unpaid interest thereon to the applicable Redemption Date.

    (b)    <u>Notice of Redemption</u>. Notice of redemption will be mailed at least 30 days but not more than 60 days before the redemption date to each holder of Notes to be redeemed at his registered address. On and after the Redemption Date, unless the Company defaults in making the redemption payment, interest ceases to accrue on Notes or portions thereof called for redemption.

Exhibit A-4

(c)     Offers to Purchase. Sections 4.12 and 4.14 of the Indenture provide that after an Asset Sale, or upon the occurrence of a Change of Control, and subject to further limitations contained therein, the Company shall make an offer to purchase certain amounts of Notes in accordance with the procedures set forth in the Indenture.

(6)     Security Documents. In order to secure the due and punctual payment of the Notes and all other Obligations in respect of the Notes and the Indenture, and the other amounts payable to the Trustee, the Company and the Guarantors shall, on the Issue Date, enter into the applicable Security Documents to create the Lien on the Collateral in favor of the Collateral Agent for the benefit of the Notes Secured Creditors and to provide for certain related intercreditor matters. Any Guarantor shall, upon becoming a Guarantor, become a party to each applicable Security Document as shall be necessary or appropriate to grant and create a valid Lien on and security interest in the personal property of such Guarantor of the type described in the definition of "Collateral" in the U.S. Security Agreement and, to the extent required by the Senior Credit Facilities, all real property owned by such Guarantor, in each case, subject to no Liens other than Permitted Liens.

If at any time the Company or any Guarantor acquires in fee simple any real property with a fair market value in excess of $1.0 million or any entity which owns in fee simple any real property with a fair market value in excess of $1.0 million becomes a Guarantor, in either case as determined in good faith by the Company's Board of Directors, the Company or such Guarantor shall grant to the Collateral Agent for the benefit of the Notes Secured Creditors a Mortgage or Amended and Restated Mortgage, as appropriate, on such real property that is not already covered by the Security Documents. All such Mortgages or Amended and Restated Mortgages, as appropriate, shall be reasonably satisfactory in form and substance to the Collateral Agent. In connection therewith, the Company shall deliver a title insurance policy, survey and insurance certificate in form and substance reasonably satisfactory to the Collateral Agent.

The Trustee (in its capacity as a secured creditor on behalf of the Holders pursuant to the Security Documents) and each Holder, by accepting a Note, agrees to all of the terms and provisions of each of the Security Documents, as the same may be amended from time to time pursuant to the provisions of Security Documents and the Indenture, and acknowledge that (i) until such time as all First-Lien Obligations, all commitments and letters of credit under the Senior Credit Facilities and all interest rate protection, currency and other hedging agreements entitled to the benefits of the Security Documents have been paid in full in cash in accordance with the respective terms thereof and/or terminated, the Security Documents may be amended, to the extent set forth therein, without the consent of the Trustee or the Holders and (ii) the Security Documents also may be amended without the consent of the Trustee or the Holders to add new classes of creditors to the extent such Indebtedness and Liens are permitted hereby.

The Trustee (in its capacity as a secured creditor on behalf of the Holders pursuant to the Security Documents) and the Holders expressly acknowledge and agree (i) to all of the terms and agreements contained in Annex I to the U.S. Security Agreement, (ii) that the claims of the Holders and the Trustee against the Assignors (as defined in the U.S. Security Agreement) in respect of the Collateral constitute junior claims separate and apart (and of a different class) from the senior claims of the Lender Creditors and the Other Creditors (as such term is defined in the U.S. Security Agreement) against the Assignors in respect of the Collateral and (iii) the

Exhibit A-5

Obligations under the Senior Credit Facilities and all Primary Obligations and Secondary Obligations (as each such term is defined in the U.S. Security Agreement) include all interest that accrues after the commencement of any case, proceeding or other action relating to the bankruptcy, insolvency, reorganization or similar proceeding of any Assignor at the rate provided for in the respective Secured Debt Agreements (as defined in the U.S. Security Agreement) governing the same, whether or not a claim for post-petition interest is allowed in any such case, proceeding or other action.

In the event that any provisions of the Indenture are deemed to conflict with any Security Document, the provisions of such Security Document shall govern.

The Trustee and each Holder acknowledge that a release of any of the Collateral or any Lien strictly in accordance with the terms and provisions of any of the Security Documents and the terms and provisions of the Indenture will not be deemed for any purpose to be an impairment of the security under the Indenture.

(7) _Denominations, Transfer, Exchange._ The Notes are in registered form without coupons in denominations of $1,000 and integral multiples of $1,000; _provided, however_, that payments of PIK Interest (whether such interest is paid by increasing the principal amount of the outstanding notes or through the issuance of PIK Notes) shall be made in denominations of $1.00 and integral multiples of $1.00 rounded up to the nearest whole dollar. A Holder may transfer or exchange Notes in accordance with the Indenture. The Registrar may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and to pay to it any taxes and fees required by law or permitted by the Indenture. The Registrar need not transfer or exchange any Note or portion of a Note selected for redemption, or transfer or exchange any Notes for a period of 15 days before a selection of Notes to be redeemed.

(8) _Persons Deemed Owners._ The registered holder of a Note may be treated as the owner of it for all purposes.

(9) _Unclaimed Money._ If money for the payment of principal or interest remains unclaimed for two years, the Trustee or Paying Agent will pay the money back to the Company at its request. After that, Holders entitled to the money must look to the Company for payment as general creditors unless an "abandoned property" law designates another Person.

(10) _Amendment, Supplement, Waiver._ The Company, the Guarantors and the Trustee may, without the consent of the Holders of any outstanding Notes, amend, waive or supplement the Indenture or the Notes for certain specified purposes, including, among other things, curing ambiguities, defects or inconsistencies, maintaining the qualification of the Indenture under the Trust Indenture Act of 1939 or making any other change that does not adversely affect the rights of any Holder. Other amendments and modifications of the Indenture or the Notes may be made by the Company, the Guarantors and the Trustee with the consent of the Holders of not less than a majority in aggregate principal amount of the outstanding Notes, subject to certain exceptions requiring the consent of the Holders of the particular Notes to be affected.

(11) _Successor Corporation._ When a successor corporation assumes all the obligations of its predecessor under the Notes and the Indenture and the transaction complies with the terms

Exhibit A-6

of Article V of the Indenture, the predecessor corporation will, subject to certain exceptions, be released from those obligations.

(12)    <u>Defaults and Remedies</u>.  Events of Default include:  defaults of payment of principal of or premium on the Notes at maturity, or upon acceleration, redemption or otherwise; default in payment of interest on any Note for 30 days; certain defaults under other Indebtedness; failure by the Company or its Subsidiaries for 30 days after written notice to it from the Trustee or Holders of at least 25% in principal amount of the then outstanding Notes, to comply with any of the other agreements or covenants in or provisions of the Indenture or the Notes; certain events of bankruptcy or insolvency with respect to the Company and its Significant Subsidiaries; certain final judgments that remain undischarged for 60 days after being entered; any Guarantee of a Significant Subsidiary ceases to be in full force and effect; and any Guarantor that is a Significant Subsidiary shall deny its obligations under its Guarantee. If an Event of Default occurs and is continuing (and has not been waived in accordance with the provisions of the Indenture), the Trustee or the Holders of at least 25% in aggregate principal amount of the then outstanding Notes may declare all the Notes to be immediately due and payable for an amount equal to 100% of the principal amount of the Notes plus accrued interest to the date of payment, except that in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Notes become due and payable immediately without further action or notice. Holders may not enforce the Indenture or the Notes except as provided in the Indenture. The Trustee may require indemnity satisfactory to it before it enforces the Indenture or the Notes. Subject to certain limitations, Holders of a majority in principal amount of the then outstanding Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders notice of any continuing Default or Event of Default (except a Default or an Event of Default in payment of principal, premium, if any, or interest) if and so long as a committee of its Responsible Officers determines in good faith that withholding notice is in their interests. The Company must furnish an annual compliance certificate to the Trustee.

(13)    <u>Restrictive Covenants</u>. The Indenture imposes certain limitations on the ability of the Company and its Subsidiaries to, among other things, pay dividends and make distributions with respect to or repurchase or otherwise acquire or retire for value any of their Equity Interests, make certain Investments, incur additional Indebtedness, enter into transactions with Affiliates, incur Liens, sell assets, merge or consolidate with any other Person and sell, lease, transfer or otherwise dispose of substantially all of their properties or assets. The limitations are subject to a number of important qualifications and exceptions. The Company must annually report to the Trustee on compliance with such limitations.

(14)    <u>Trustee Dealings with Company</u>.  The Trustee, in its individual or any other capacity, may make loans to, accept deposits from, and perform services for the Company or its Affiliates, and may otherwise deal with the Company or its Affiliates, as if it were not Trustee.

(15)    <u>No Recourse Against Others</u>. No past, present or future director, officer, employee, incorporator or stockholder of the Company, as such, shall have any liability for any obligations of the Company under the Notes or the Indenture or for any claim based on, in respect of or by reason of such obligations or their creation. Each Holder by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for the issuance of the Notes.

Exhibit A-7

(16)    <u>Discharge of Indenture; Defeasance</u>. The Indenture contains provisions for defeasance at any time, upon compliance with certain conditions set forth therein, of (i) the entire indebtedness of this Note or (ii) certain restrictive covenants and Events of Default with respect to this Note.

(17)    <u>Authentication</u>. This Note shall not be valid until the Trustee signs the certificate of authentication on the other side of this Note.

(18)    <u>Abbreviations</u>. Customary abbreviations may be used in the name of a Securityholder or an assignee, such as: TEN COM (= tenants in common), TENANT (= tenants by the entireties), JT TEN (= joint tenants with right of survivorship and not as tenants in common), CUST (= Custodian), and U/G/M/A (= Uniform Gifts to Minors Act).

(19)    <u>GOVERNING LAW</u>. THE INDENTURE AND THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

The provisions of this Note are expressly made subject to the more detailed provisions set forth in the Indenture, which shall for all purposes be controlling. The Company will furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to:

> VERTIS, INC.
> 250 W. Pratt Street
> 18th Floor
> Baltimore, MD 21201
> Attention: Chief Financial Officer

Exhibit A-8

## ASSIGNMENT FORM

If you want to assign this Note, fill in the form below and have your signature guaranteed:

I or we assign and transfer this Note to

(Insert assignee's social security or tax ID number)

(Print or type assignee's name, address and zip code) and irrevocably appoint _____ agent to transfer this Note on the books of the Company. The agent may substitute another to act for him.

Date:            Your signature:_____

_____
(Sign exactly as your name appears on the other side of this Note)

Signature Guarantee:

## OPTION OF HOLDER TO ELECT PURCHASE

If you wish to have this Note purchased by the Company pursuant to Section 4.12 or 4.14 of the Indenture, check the Box: ☐

If you wish to have a portion of this Note purchased by the Company pursuant to Section 4.12 or 4.14 of the Indenture, state the amount:

$

Date:                          Your signature:_____

_____
(Sign exactly as your name appears on the other side of this Note)


Signature Guarantee:

Exhibit A-10

SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL SECURITY*

      The following exchanges of a part of this Global Security for an interest in another Global Security or for a Physical Security, or exchanges of a part of another Global Security or Physical Security for an interest in this Global Security or increases for a payment of PIK Interest, have been made:

| Date of Exchange or Payment of PIK Interest | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Security | Principal Amount of this Global Security following such decrease or increase | Signature of authorized officer of Trustee or Custodian |
| --- | --- | --- | --- | --- |
| | | | | |

_____

*This schedule should be included only if the Note is issued in global form.

Exhibit A-11

## EXHIBIT B
## FORM OF LEGEND FOR BOOK-ENTRY SECURITIES

Any Global Security authenticated and delivered hereunder shall bear a legend (which would be in addition to any other legends required in the case of a Restricted Security) in substantially the following form:

THIS SECURITY IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITORY OR A NOMINEE OF A DEPOSITORY OR A SUCCESSOR DEPOSITORY. THIS SECURITY IS NOT EXCHANGEABLE FOR SECURITIES REGISTERED IN THE NAME OF A PERSON OTHER THAN THE DEPOSITORY OR ITS NOMINEE EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS SECURITY (OTHER THAN A TRANSFER OF THIS SECURITY AS A WHOLE BY THE DEPOSITORY TO A NOMINEE OF THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY OR ANOTHER NOMINEE OF THE DEPOSITORY) MAY BE REGISTERED EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

NY 71506945v7
08/08/08 05:21PM

EXHIBIT C

[FORM OF NOTATION ON NOTE
RELATING TO GUARANTEES]

## GUARANTEES

The Guarantors (as defined in the Indenture (the "*Indenture*") referred to in the Note upon which this notation is endorsed and each hereinafter referred to as a "*Guarantor*") have unconditionally guaranteed on a senior secured basis (such guarantee by each Guarantor being referred to herein as the "*Guarantee*") (i) the due and punctual payment of the principal of and interest on the Notes in full when due, subject to any applicable grace period, whether at maturity, by acceleration or otherwise and interest on the overdue principal, if any, and interest on any interest, if any, to the extent lawful, of the Notes and all other obligations of the Company to the Holders all in accordance with the terms set forth in of the Indenture and (ii) in case of any extension of time of payment or renewal of any Notes or of any of such other obligations, that the same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, subject to any applicable grace period, whether at stated maturity, by acceleration or otherwise.

Each Guaranty will be limited to an amount not to exceed the maximum amount that can be guaranteed by such Guarantor after giving effect to all of its other contingent and fixed liabilities without rendering such Guaranty, as it relates to such Guarantor, voidable under applicable law relating to fraudulent conveyance or fraudulent transfer or similar laws affecting the rights of creditors generally.

The obligations of the undersigned to the Holders of the Notes and to the Trustee pursuant to the Guarantee and the Indenture are expressly set forth in Article X of the Indenture and reference is hereby made to the Indenture for the precise terms of the Guarantee and all other of the provisions of the Indenture to which this Guarantee relates.

No past, present or future stockholder, director, officer, employee or incorporator, as such, of any of the Guarantors shall have any liability for any obligation of the Guarantors under the Guarantee or the Indenture or for any claim based on, in respect of or by reason of, such obligations or their creation. Each Holder of a Note by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for the issuance of the Guarantees.

[INSERT SUBSIDIARY GUARANTOR
SIGNATURE BLOCKS AS APPROPRIATE]

Exhibit C-1