(viii)    that Holders whose Notes are purchased only in part will be issued new Notes equal in principal amount to the unpurchased portion of the Notes surrendered; and

(ix)    the instructions that Holders must follow in order to tender their Notes.

On or before the Net Proceeds Offer Payment Date, the Company shall (i) accept for payment, on a *pro rata* basis among the Notes, Notes or portions thereof tendered pursuant to the Net Proceeds Offer, (ii) deposit with the Paying Agent money, in immediately available funds, in an amount sufficient to pay the purchase price of all Notes or portions thereof so tendered and accepted and (iii) deliver to the Paying Agent the Notes so accepted together with an Officer's Certificate setting forth the Notes or portions thereof tendered to and accepted for payment by the Company. The Paying Agent shall promptly mail or deliver to Holders of Notes so accepted payment in an amount equal to the purchase price, and the Trustee shall promptly authenticate and mail or deliver to such Holders a new Note equal in principal amount to any unpurchased portion of the Note surrendered. Any Notes not so accepted shall be promptly mailed or delivered by the Company to the Holder thereof. The Paying Agent shall promptly deliver to the Company the balance of any moneys held by the Paying Agent after payment to the Holders of Notes as aforesaid.

(e)    To the extent that the aggregate amount of Notes tendered pursuant to a Net Proceeds Offer is less than the Net Proceeds Offer Amount, the Company may use any remaining Net Proceeds Offer Amount for general corporate purposes. Upon completion of any such Net Proceeds Offer, the Net Proceeds Offer Amount shall be reset at zero.

(f)    The Company shall comply, to the extent applicable, with the requirements of Section 14(e) of the Exchange Act and any other securities laws or regulations (including Rule 14e-1 under the Exchange Act) in connection with the repurchase of Notes pursuant to a Net Proceeds Offer. To the extent that the provisions of any securities laws or regulations conflict with the provisions of this Section 4.12, the Company shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Section 4.12 by virtue thereof.

Section 4.13    Limitations on Transactions with Affiliates.

(a)    The Company shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, enter into or permit to exist any transaction or series of related transactions (including, without limitation, the purchase, sale, lease or exchange of any property or the rendering of any service) with, or for the benefit of, any of its Affiliates (an "*Affiliate Transaction*"), other than (x) Affiliate Transactions permitted under paragraph (b) below and (y) Affiliate Transactions entered into on terms that are fair and reasonable to, and in the best interests of, the Company or such Restricted Subsidiary, as the case may be, as determined in good faith by the Company's Board of Directors; *provided, however*, that for a transaction or series of related transactions with an aggregate value of $5.0 million or more, at the Company's option (i) such determination shall be made in good faith by a majority of the disinterested members of the Board of the Directors of the Company or (ii) the Board of Directors of the Company or any such Restricted Subsidiary party to such Affiliate Transaction

shall have received a favorable opinion from a nationally recognized investment banking firm that such Affiliate Transaction is fair from a financial point of view to the Company or such Restricted Subsidiary; *provided, further*, that for a transaction or series of related transactions with an aggregate value of $20.0 million or more, the Board of Directors of the Company shall have received a favorable opinion from a nationally recognized investment banking firm that such Affiliate Transaction is fair from a financial point of view to the Company or such Restricted Subsidiary.

(b)     The foregoing restrictions shall not apply to:

(1)     transactions exclusively between or among the Company and any of its Restricted Subsidiaries or exclusively between or among such Restricted Subsidiaries, provided such transactions are not otherwise prohibited by this Indenture;

(2)     transactions effected as part of a Qualified Receivables Transaction;

(3)     any agreement as in effect as of the Issue Date or any amendment thereto or any transaction contemplated thereby (including pursuant to any amendment thereto) or in any replacement agreement thereto so long as any such amendment or replacement agreement is not more disadvantageous to the Holders in any material respect than the original agreement as in effect on the Issue Date;

(4)     Restricted Payments permitted by this Indenture;

(5)     loans or advances to officers, directors or employees of the Company or its Restricted Subsidiaries not in excess of $15.0 million at any one time outstanding;

(6)     Permitted Investments or Permitted Liens;

(7)     transactions with Persons solely in their capacity as holders of Indebtedness or Capital Stock of the Company or any of its Restricted Subsidiaries, where such Persons are treated no more favorably than holders of Indebtedness or Capital Stock of the Company or such Restricted Subsidiary generally;

(8)     (i) reasonable and customary fees and compensation paid to, indemnity (including payment thereof) provided on behalf of, and reimbursement of reasonable out-of-pocket expenses incurred in connection with services provided by, officers, directors, consultants or employees of Holdings or any of its Restricted Subsidiaries (other than with respect to fees and compensation paid to the Advisors, which are set forth in clauses (9) and (10) below), as determined by the Board of Directors of the Company or any such Restricted Subsidiary or the senior management thereof in good faith, including, without limitation, issuances of stock, payment of bonuses and other transactions pursuant to employment or compensation agreements, stock option agreements, indemnification agreements (including payment thereunder) and other arrangements in effect on the Issue Date or substantially similar thereto and (ii) reimbursement of reasonable out-of-pocket expenses incurred by any

representative of stockholders of the Company permitted to be present at any meeting of the Board of Directors of Holdings in connection with attending any such meeting;

(9)     the payment or accrual, on a quarterly basis, of advisory or management fees to (A) Avenue and its Affiliates in an amount not to exceed $187,500 in any fiscal quarter and (B) Affiliates of Goldman Sachs and Trust Company of the West in an aggregate amount not to exceed $62,500 in any fiscal quarter, in each case in clauses (A) and (B) in accordance with the management or advisory services agreement between such Persons (collectively, the "*Advisors*") and Holdings or any of its Subsidiaries and the provision of indemnities (including payment thereof) to the Advisors in connection with such agreements;

(10)     the reimbursement of the Advisors for the reasonable out-of-pocket expenses incurred by them in connection with performing advisory or management services to Holdings and its Restricted Subsidiaries;

(11)     the payment of one-time fees to the Advisors in connection with acquisition transactions not prohibited by this Indenture, such fees to be payable at the time of each such acquisition and not to exceed (for all fees paid pursuant to this clause 11) 2.5% of the aggregate consideration paid by Holdings and its Restricted Subsidiaries for any such acquisition or such lesser amount as is then permitted pursuant to the Senior Credit Facilities; and

(12)     fees paid to Advisors in connection with issuances and incurrences of Indebtedness by the Company or any Restricted Subsidiary to such Advisors (or in connection with amendments, waivers or forbearances of any such Indebtedness) and original issue discount in respect of any such Indebtedness.

Section 4.14        Change of Control.

(a)     Upon the occurrence of a Change of Control (the date of such occurrence, the "*Change of Control Date*"), each Holder shall have the right to require that the Company purchase all or a portion of such Holder's Notes pursuant to an offer to purchase (the "*Change of Control Offer*") at a purchase price equal to 101% of the aggregate principal amount thereof plus accrued interest thereon to the date of repurchase. Prior to the mailing of the notice to the Holders provided for in paragraph (b) below but in any event within 30 days following the date upon which the Company obtains actual knowledge of any Change of Control, the Company hereby covenants to (i) repay in full and terminate all commitments under Indebtedness under the Senior Credit Facilities and any other Indebtedness under interest rate protection and other hedging agreements that are secured equally and ratably therewith or offer to repay in full and terminate all commitments under such Indebtedness and to repay the Indebtedness of each lender which has accepted such offer or (ii) obtain the requisite consents under the Senior Credit Facilities to permit the repurchase of the Notes as provided for in paragraph (c) below. The Company shall first comply with the covenant in the immediately preceding sentence before it shall be required to repurchase the Notes pursuant to this Section 4.14. The Company's failure to comply with the covenant described in the second preceding sentence (and any failure to send the notice referred to in clause (b) below as a result of the prohibition in the second preceding sentence) may (with notice and lapse of time) constitute an Event of Default described in Section 6.1(c) but shall not constitute an Event of Default described in Section 6.1(b).

(b) Notice of a Change of Control Offer shall be mailed by the Company within 30 days following the date upon which the Company obtains actual knowledge that a Change of Control occurred to the Holders of Notes at their last registered addresses with a copy to the Trustee and the Paying Agent. The date on which Notes are purchased pursuant to the Change of Control Offer shall be a business day that is no earlier than 30 days nor later than 60 days from the date such notice is mailed (the "***Change of Control Payment Date***"). The Change of Control Offer shall remain open from the time of mailing for at least 20 Business Days and until 3:00 p.m., New York City time, on the third Business Day prior to the Change of Control Payment Date. The notice, which shall govern the terms of the Change of Control Offer, shall include such disclosures as are required by law and shall state:

(i) that the Change of Control Offer is being made pursuant to this Section 4.14 and that all Notes will be accepted for payment;

(ii) the purchase price (including the amount of accrued and unpaid interest, if any) for each Note and the Change of Control Payment Date;

(iii) that any Note not tendered for payment will continue to accrue interest in accordance with the terms thereof;

(iv) that any Note accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest after the Change of Control Payment Date unless the Company shall fail to make payment therefor;

(v) that Holders electing to have Notes purchased pursuant to a Change of Control Offer will be required to surrender their Notes to the Paying Agent at the address specified in the notice prior to 3:00 p.m., New York City time, on the Change of Control Payment Date and must complete any form letter of transmittal proposed by the Company and acceptable to the Trustee and the Paying Agent;

(vi) that Holders of Notes will be entitled to withdraw their election if the Paying Agent receives, not later than 3:00 p.m., New York City time, on the Business Day prior to the Change of Control Payment Date, a telex or facsimile transmission (confirmed by overnight delivery of the original thereof) or letter setting forth the name of the Holder, the principal amount of Notes the Holder delivered for purchase, the Note certificate number (if any) and a statement that such Holder is withdrawing his election to have such Notes purchased;

(vii) that Holders whose Notes are purchased only in part will be issued Notes equal in principal amount to the unpurchased portion of the Notes surrendered; and

(viii) the instructions that Holders must follow in order to tender their Notes.

(c) On the Change of Control Payment Date, the Company shall (i) accept for payment Notes or portions thereof tendered pursuant to the Change of Control Offer, (ii) deposit with the Paying Agent money sufficient to pay the purchase price of all Notes or portions thereof so tendered and accepted and (iii) deliver to the Trustee the Notes so accepted together with an Officer's Certificate setting forth the Notes or portions thereof tendered to and accepted for

payment by the Company. The Paying Agent shall promptly mail or deliver to the Holders of Notes so accepted payment in an amount equal to the purchase price, and the Trustee shall promptly authenticate and mail or deliver to such Holders a new Note equal in principal amount to any unpurchased portion of the Note surrendered. Any Notes not so accepted shall be promptly mailed or delivered by the Company to the Holder thereof. The Company will publicly announce the results of the Change of Control Offer not later than the first Business Day following the Change of Control Payment Date.

(d)     The Company shall comply, to the extent applicable, with the requirements of Section 14(e) of the Exchange Act, and any other securities laws or regulations (including Rule 14e-1 under the Exchange Act) in connection with the purchase of Notes pursuant to a Change of Control Offer. To the extent that the provisions of any securities laws or regulations conflict with provisions of this Section 4.14, the Company shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Section 4.14 by virtue thereof.

Section 4.15     Waiver of Stay; Extension of Usury Laws.

The Company covenants (to the extent that it may lawfully do so) that it shall not, nor shall it cause or permit any of the Guarantors to, at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive the Company or any Guarantor from paying all or any portion of the principal of or interest on the Notes or the Guarantees, as applicable, as contemplated herein or in the Notes and the Guarantees, wherever enacted, now or at any time hereafter in force, or that may affect the covenants or the performance of this Indenture; and (to the extent that it may lawfully do so) each of the Company and the Guarantors hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

Section 4.16     Limitation on Guarantees by Restricted Subsidiaries.

The Company shall not permit any of its Domestic Restricted Subsidiaries that is not a Guarantor (whether formed or acquired before or after the Issue Date), directly or indirectly, by way of the pledge of any intercompany note or otherwise, to assume, guarantee or in any other manner become liable with respect to any Indebtedness of the Company (other than: (1) Indebtedness under Currency Agreements in reliance on clause (5) of the definition of Permitted Indebtedness; or (2) Interest Swap Obligations incurred in reliance on clause (4) of the definition of Permitted Indebtedness), unless, in any such case:

(1)     such Restricted Subsidiary executes and delivers a supplemental indenture to this Indenture providing a guarantee of payment of the Notes by such Restricted Subsidiary, and

(2)     if any such assumption, guarantee or other liability of such Restricted Subsidiary is provided in respect of Indebtedness that is expressly subordinated to the

Notes, the guarantee or other instrument provided by such Restricted Subsidiary in respect of such Subordinated Obligation shall be subordinated to such Guarantor's Guarantee of the Notes.

Notwithstanding the foregoing, any such Guarantee by a Restricted Subsidiary of the Notes shall provide by its terms that it shall be automatically and unconditionally released and discharged, without any further action required on the part of the Trustee or any Holder, upon:

(1)     the unconditional release of such Restricted Subsidiary from its liability in respect of the Indebtedness in connection with which such Guarantee was executed and delivered pursuant to the preceding paragraph and all other Indebtedness which would require that a Guarantee be executed and delivered pursuant to the preceding paragraph;

(2)     any sale or other disposition (by merger or otherwise) to any Person which is not a Restricted Subsidiary of the Company of all of the Company's Capital Stock in, or all or substantially all of the assets of, such Restricted Subsidiary; *provided* that (a) such sale or disposition of such Capital Stock or assets is otherwise in compliance with the terms of this Indenture and (b) such assumption, guarantee or other liability of such Restricted Subsidiary has been released by the holders of the other Indebtedness of the Company so guaranteed;

(3)     the Legal Defeasance or Covenant Defeasance of the Notes as described under Section 8.2 (subject to reinstatement pursuant to Section 8.6); or

(4)     such Restricted Subsidiary being designated as an Unrestricted Subsidiary in compliance with this Indenture.

Section 4.17     Limitation on Preferred Stock of Subsidiaries.

The Company shall not permit any of its Restricted Subsidiaries that is not a Guarantor to issue any Preferred Stock (other than to the Company or to a Restricted Subsidiary of the Company) or permit any Person (other than the Company or a Restricted Subsidiary of the Company) to own any Preferred Stock of any Restricted Subsidiary of the Company that is not a Guarantor.

Section 4.18     Conduct of Business.

The Company and its Restricted Subsidiaries shall not engage in any businesses which are not the same, similar, related or ancillary to the businesses in which the Company and its Restricted Subsidiaries are engaged on the Issue Date.

ARTICLE V

SUCCESSOR CORPORATION

Section 5.1     Limitation on Mergers, Consolidations or Sales of Assets.

The Company shall not, in a single transaction or a series of related transactions, consolidate with or merge with or into, or sell, assign, transfer, lease, convey or otherwise

dispose of (or cause or permit any Restricted Subsidiary of the Company to sell, assign, transfer, lease, convey or otherwise dispose of) all or substantially all of the Company's assets to, another Person or Persons unless:

(1)    either:

(a)    the Company shall be the surviving or continuing corporation of such merger or consolidation; or

(b)    the surviving Person is a corporation existing under the laws of the United States, any state thereof or the District of Columbia and such surviving Person shall expressly assume all the obligations of the Company under the Notes and this Indenture;

(2)    immediately after giving effect to such transaction (on a *pro forma* basis, including any Indebtedness incurred or anticipated to be incurred in connection with such transaction and the other adjustments that are referred to in the definition of "***Consolidated Fixed Charge Coverage Ratio***"), the Company or the surviving Person is able to incur at least $1.00 of additional Indebtedness (other than Permitted Indebtedness) in compliance with Section 4.9;

(3)    immediately before and immediately after giving effect to such transaction (including any Indebtedness incurred or anticipated to be incurred in connection with the transaction), no Default or Event of Default shall have occurred and be continuing; and

(4)    the Company or the surviving entity, as the case may be, has delivered to the Trustee an Officer's Certificate and Opinion of Counsel, each stating that such consolidation, merger or transfer complies with this Indenture, that the surviving Person agrees to be bound thereby and by the Notes and any applicable Registration Rights Agreements, and that all conditions precedent in this Indenture relating to such transaction have been satisfied.

For purposes of the foregoing, the transfer (by lease, assignment, sale or otherwise, in a single transaction or series of transactions) of all or substantially all of the properties and assets of one or more Subsidiaries of the Company, the Capital Stock of which constitutes all or substantially all of the properties and assets of the Company, shall be deemed to be the transfer of all or substantially all of the properties and assets of the Company.

Notwithstanding the foregoing clauses (1), (2) and (3):

(a)    any Restricted Subsidiary of the Company may consolidate with, merge into or transfer all or part of its properties and assets to the Company; and

(b)    the Company may merge with an Affiliate that is (x) a corporation that has no material assets or liabilities and which was incorporated solely for the purpose of reincorporating the Company in another jurisdiction or (y) a Restricted Subsidiary of the Company that is a Guarantor so long as all assets of the Company and the Restricted Subsidiaries immediately prior to such transaction are owned by such Restricted Subsidiary and its Restricted Subsidiaries immediately after the consummation thereof.

Each Guarantor (other than any Guarantor whose Guarantee is to be released in accordance with the terms of this Indenture) shall not, and the Company shall not cause or permit any Guarantor to, consolidate with or merge with or into any Person other than the Company or any other Guarantor unless:

(1)     the entity formed by or surviving any such consolidation or merger (if other than the Guarantor) or to which such sale, lease, conveyance or other disposition shall have been made is a corporation organized and existing under the laws of the United States or any State thereof or the District of Columbia;

(2)     such entity assumes by supplemental indenture all of the obligations of the Guarantor on the Guarantee;

(3)     immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing; and

(4)     immediately after giving effect to such transaction and the use of any net proceeds therefrom on a *pro forma* basis, the Company could satisfy the provisions of clause (2) of the first paragraph of this Section 5.1.

Any merger or consolidation of a Restricted Subsidiary with and into the Company (with the Company being the surviving entity) or another Guarantor that is a Wholly Owned Subsidiary of the Company need only comply with clause (4) of the first paragraph of this Section 5.1.

Section 5.2          Successor Entity Substituted.

Upon any consolidation or merger, or any sale, lease, conveyance or other disposition of all or substantially all of the assets of the Company or any assignment of its obligations under this Indenture in accordance with Section 5.1 hereof, upon assumption by the successor corporation, by supplemental indenture, executed and delivered to the Trustee and satisfactory in form to the Trustee, of the due and punctual payment of the principal of, premium, if any, and interest on all of the Notes and the due and punctual performance and observance of all the covenants and conditions of this Indenture to be performed or observed by the Company, the surviving entity formed by such consolidation or into or with which the Company is merged or to which such sale, lease, conveyance or other disposition is made will succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such surviving entity has been named as the Company herein and such surviving entity may cause to be signed and may issue in its own name or in the name of the Company, any or all Notes issuable hereunder and the predecessor Company in the case of a sale, lease, conveyance or other disposition or assignment, will be released from all obligations under the Notes.

# ARTICLE VI

## DEFAULT AND REMEDIES

Section 6.1        Events of Default.

"***Event of Default***", whenever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a)        the failure to pay interest on any Notes when the same becomes due and payable and the default continues for a period of 30 days;

(b)        the failure to pay the principal of any Notes when such principal becomes due and payable, at maturity, upon redemption or otherwise (including the failure to make a payment to purchase Notes tendered pursuant to a Change of Control Offer or a Net Proceeds Offer);

(c)        a default in the observance or performance of any other covenant or agreement contained in this Indenture which default continues for a period of 30 days after the Company receives written notice specifying the default (and demanding that such default be remedied) from the Trustee or the Holders of at least 25% of the outstanding principal amount of the Notes;

(d)        the failure to pay at final stated maturity (giving effect to any applicable grace periods and any extensions thereof) the principal amount of any Indebtedness of the Company or any Restricted Subsidiary (other than a Receivables Entity) of the Company, or the acceleration of the final stated maturity of any such Indebtedness (which acceleration is not rescinded, annulled or otherwise cured within 30 days of receipt by the Company or such Restricted Subsidiary of notice of any such acceleration) if the aggregate principal amount of such Indebtedness, together with the principal amount of any other such Indebtedness in default for failure to pay principal at final stated maturity or which has been accelerated (in each case with respect to which the 30-day period described above has elapsed), aggregates $30.0 million or more at any time;

(e)        one or more judgments in an aggregate amount in excess of $30.0 million shall have been rendered against the Company or any of its Significant Subsidiaries and such judgments remain undischarged, unpaid or unstayed for a period of 60 days after such judgment or judgments become final and non-appealable;

(f)        a court of competent jurisdiction enters a Bankruptcy Order under any Bankruptcy Law that:

(1)        is for relief against the Company or any of its Significant Subsidiaries in an involuntary case or proceeding, or

(2) appoints a Custodian of the Company or any of its Significant Subsidiaries for all or substantially all of its respective properties, or

(3) orders the liquidation of the Company or any of its Significant Subsidiaries,

and in each case the order or decree remains unstayed and in effect for 60 consecutive days;

(g) the Company or any Significant Subsidiary pursuant to or within the meaning of any Bankruptcy Law:

(1) commences a voluntary case or proceeding, or

(2) consents to the entry of a Bankruptcy Order for relief against it in an involuntary case or proceeding, or

(3) consents to the appointment of a Custodian of it or for all or substantially all of its property, or

(4) makes a general assignment for the benefit of its creditors or files a proposal or scheme of arrangement involving the rescheduling or composition of its indebtedness, or

(5) consents to the filing of a petition in bankruptcy against it; or

(h) any Guarantee of a Significant Subsidiary ceases to be in full force and effect or any Guarantee of a Significant Subsidiary is declared to be null and void and unenforceable or any Guarantee of a Significant Subsidiary is found to be invalid or any Guarantor that is a Significant Subsidiary denies its liability under its Guarantee (other than by reason of release of a Guarantor in accordance with the terms of this Indenture).

Section 6.2        Acceleration.

(a) If an Event of Default (other than an Event of Default specified in Section 6.1(f) or 6.1(g) above with respect to the Company) shall occur and be continuing, then, and in every such case, unless the principal of all the Notes shall have already become due and payable, either the Trustee or the Holders of not less than 25% in aggregate principal amount of the then outstanding Notes, by notice in writing to the Company, the agent or other representative under the Senior Credit Facilities and to the Trustee (the "*Acceleration Notice*"), may declare all of the unpaid principal of, and premium, if any, and accrued interest thereon to be, and the same (x) shall become immediately due and payable, or (y) if there are any amounts outstanding under the Senior Credit Facilities, shall become immediately due and payable upon the first to occur of an acceleration under the Senior Credit Facilities or five business days after receipt by the Company and the agent or other representative under the Senior Credit Facilities of such Acceleration Notice but only if such Event of Default is then continuing. If an Event of Default specified in Section 6.1(f) or 6.1(g) with respect to the Company occurs and is continuing, all unpaid principal of, and premium, if any, and accrued interest due and payable on

all the outstanding Notes shall *ipso facto* become and be immediately due and payable without any declaration, notice or other act on the part of the Trustee or any Holder.

(b)     At any time after a declaration of acceleration with respect to the Notes as described in the preceding paragraph, the Holders of a majority in aggregate principal amount of the Notes, by written notice to the Company and the Trustee, may rescind and cancel, on behalf of all Holders, such declaration and its consequences:

(1)     if the rescission would not conflict with any judgment or decree;

(2)     if all existing Events of Default have been cured or waived except nonpayment of principal or interest that has become due solely because of the acceleration;

(3)     to the extent the payment of such interest is lawful, interest on overdue installments of interest and overdue principal, which has become due otherwise than by such declaration of acceleration, has been paid;

(4)     if the Company has paid the Trustee its reasonable compensation and reimbursed the Trustee for its expenses, disbursements and advances; and

(5)     in the event of the cure or waiver of an Event of Default of the type described in Section 6.1(f) or (g), the Trustee shall have received an Officer's Certificate to the effect that such Event of Default has been cured or waived.

No such rescission shall affect any subsequent Default or impair any right consequent thereto.

In the event that the maturity of the Notes is accelerated pursuant to this Section 6.2, 100% of the principal amount thereof plus accrued interest to the date of payment shall become due and payable.

Section 6.3          Other Remedies.

If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy by proceeding at law or in equity to collect the payment of principal of or interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Holders of the Notes in respect of which such judgment has been recovered.

Section 6.4          Waiver of Past Default.

Subject to Sections 6.7 and 9.2, prior to the declaration of acceleration of the maturity of the Notes, the Holder or Holders of not less than a majority in aggregate principal amount of the

Notes at the time outstanding by written notice to the Company and the Trustee may waive on behalf of all the Holders any past default or Event of Default under this Indenture and its consequence, except a default in the payment of principal of or interest on any Note or a default with respect to any covenant or provision which cannot be modified or amended without the consent of the Holder of each outstanding Note affected pursuant to Section 9.2.

Section 6.5      Control by Majority.

The Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on it, including, without limitation, any remedies provided for in Section 6.3. However, the Trustee may refuse to follow any direction that conflicts with law, the Notes or this Indenture, or that the Trustee determines may be unduly prejudicial to the rights of another Securityholder or that may involve the Trustee in personal liability.

Section 6.6      Limitation on Suits.

A Securityholder may not pursue any remedy with respect to this Indenture or the Notes unless:

(a)      the Holder gives to the Trustee written notice of a continuing Event of Default;

(b)      the Holders of at least 25% in principal amount of the then outstanding Notes make a written request to the Trustee to pursue a remedy;

(c)      such Holder or Holders offer and, if requested, provide to the Trustee indemnity satisfactory to the Trustee against any loss, liability or expense;

(d)      the Trustee does not comply with the request within 30 days after receipt of the request and the offer of indemnity; and

(e)      during such 30-day period the Holders of at least a majority in principal amount of the then outstanding Notes do not give the Trustee a direction which is inconsistent with the request.

A Securityholder may not use this Indenture to prejudice the rights of another Securityholder or to obtain a preference or priority over such other Securityholder.

Section 6.7      Rights of Holders to Receive Payment.

Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of principal of and interest on a Note, on or after the respective due dates expressed in the Note, or to bring suit for the enforcement of any such payment on or after such respective dates, is absolute and unconditional and shall not be impaired or affected without the consent of such Holder.

Section 6.8          Collection Suit by Trustee.

If an Event of Default specified in Section 6.1(a) or (b) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Company or any other obligor on the Notes for the whole amount of principal and accrued interest remaining unpaid, together with interest overdue on principal and, to the extent that payment of such interest is lawful, interest on overdue installments of interest, in each case at the interest rate and such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the

Section 6.9          Trustee May File Proofs of Claim.

The Trustee shall be entitled and empowered to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and the Securityholders allowed in any judicial proceedings relative to the Company or any of its Subsidiaries (or any other obligor upon the Notes), its creditors or its property and shall be entitled and empowered to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same, and any Custodian in any such judicial proceedings is hereby authorized by each Securityholder to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Securityholders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agent and counsel, and any other amounts due the Trustee under Section 7.7. Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Securityholder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Securityholder in any such proceeding.

Section 6.10          Priorities.

If the Trustee collects any money pursuant to this Article VI, it shall pay out such money in the following order:

First: to the Trustee for amounts due under Section 7.7;

Second: to Holders for amounts due and unpaid on the Notes for principal and interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Notes for principal and interest, respectively; and

Third: to the Company.

The Trustee, upon prior written notice to the Company, may fix a record date and payment date for any payment to Securityholders pursuant to this Article VI.

Section 6.11     Undertaking for Costs.

In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. This Section 6.11 does not apply to a suit by the Trustee, a suit by a Holder pursuant to Section 6.7, or a suit by any Holder, or group of Holders, holding in the aggregate more than 10% in principal amount of the outstanding Notes.

Section 6.12     Rights and Remedies Cumulative.

No right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Section 6.13     Delay or Omission Not Waiver.

No delay or omission of the Trustee or of any Holder of any Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article VI or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

ARTICLE VII

TRUSTEE

Section 7.1     Duties of Trustee.

(a)     If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of his own affairs.

(b)     Except during the continuance of an Event of Default:

(i)     The Trustee need perform only those duties as are specifically set forth in this Indenture or the TIA and no others and no implied covenants or obligations shall be read into this Indenture against the Trustee.

(ii)     In the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements

of this Indenture. However, in the case of any such certificate or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall examine such certificates and opinions to determine whether or not they conform to the requirements of this Indenture.

(c)     Notwithstanding anything to the contrary herein contained, the Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

(i)     This paragraph does not limit the effect of paragraph (b) of this Section 7.1.

(ii)     The Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts.

(iii)     The Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Sections 6.4 and 6.5.

(d)     No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(e)     Every provision of this Indenture that in any way relates to the Trustee is subject to paragraphs (a), (b), (c) and (d) of this Section 7.1.

(f)     The Trustee shall not be liable for interest on any money received by it except as the Trustee may agree in writing with the Company. Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

Section 7.2          Rights of Trustee.

Subject to Section 7.1:

(a)     The Trustee may rely and shall be protected in acting or refraining from acting upon any document reasonably believed by it to be genuine and to have been signed or presented by the proper Person. The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document.

(b)     Before the Trustee acts or refrains from acting with respect to any matter contemplated by this Indenture, it may require an Officer's Certificate or an Opinion of Counsel, which shall conform to the provisions of Section 11.5. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on such certificate or opinion.

(c)     The Trustee may act through its attorneys and agents and shall not be responsible for the misconduct or negligence of any agent (other than the negligence or willful misconduct of an agent who is an employee of the Trustee) appointed with due care.

(d)     The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request, order or direction of any of the Holders, pursuant to the provisions of this Indenture, unless such Holders shall have offered to the Trustee security or indemnity acceptable to the Trustee against the costs, expenses and liabilities which may be incurred therein or thereby.

(e)     The Trustee may consult with counsel of its selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

(f)     The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other Person employed to act hereunder.

(g)     The Trustee may request that the Company deliver an Officer's Certificate setting forth the names of individuals and or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Officer's Certificate may be signed by any person authorized to sign an Officer's Certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

Section 7.3         Individual Rights of Trustee.

The Trustee in its individual capacity or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Company, or its Subsidiaries and Affiliates with the same rights it would have if it were not Trustee. Any Agent may do the same with like rights. However, the Trustee is subject to Sections 7.10 and 7.11.

Section 7.4         Trustee's Disclaimer.

The Trustee makes no representation as to the validity or adequacy of this Indenture, the Notes or the Guarantees, and it shall not be accountable for the Company's use of the proceeds from the Notes, and it shall not be responsible for any statement of the Company in this Indenture, or any statement in the Notes other than the Trustee's certificate of authentication.

Section 7.5         Notice of Defaults.

If a Default or an Event of Default with respect to the Notes occurs and is continuing and is actually known to a Responsible Officer, the Trustee shall mail to each Holder a notice of the Default or Event of Default within 60 days after it occurs or, if later, within 10 days after such Default or Event of Default becomes known to the Trustee, unless such Default or Event of Default has been cured. Except in the case of a Default or Event of Default in the payment of principal of or interest on any Note, including an acceleration, and the failure to make payment

when required by Sections 4.12 and 4.14, the Trustee may withhold the notice to the Holders if and so long as a committee of its Responsible Officers determines in good faith that withholding the notice is in the interest of the Holders.

Section 7.6        Reports by Trustee to Holders.

Within 60 days after each November 15 beginning with November 15, 2008, the Trustee shall transmit to each Securityholder a report dated as of May 15 of the relevant year that complies with the requirements of TIA Section 313(a). The Trustee also shall comply with TIA Section 313(b) and TIA Section 313(c) and (d). A copy of such report at the time of its transmission to Securityholders shall be filed with the SEC, if required, with each stock

The Company shall promptly notify the Trustee if the Notes become listed on any stock exchange and the Trustee shall comply with TIA Section 313(d).

Section 7.7        Compensation and Indemnity.

The Company shall pay to the Trustee, the Paying Agent and the Registrar from time to time such compensation for their respective services rendered hereunder as agreed in writing. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust. The Company shall reimburse the Trustee upon request for all reasonable out-of-pocket disbursements, expenses and advances (including reasonable fees and expenses of counsel) incurred or made by each of them in connection with the performance of its duties under this Indenture. Such expenses shall include the reasonable compensation, reasonable out-of-pocket disbursements and reasonable expenses of the Trustee's agents and counsel.

The Company shall indemnify and hold harmless the Trustee and their agents, employees, officers, directors and shareholders against any and all claims, expenses, loss or liability incurred by it arising out of or in connection with the administration of its duties under this Indenture. The Trustee shall notify the Company promptly of any claim asserted against it for which it may seek indemnity. The Company shall defend the claim with counsel designated by the Company, who may be outside counsel to the Company, but shall in all events be reasonably satisfactory to the Trustee, and the Trustee shall cooperate in the defense. The Trustee may have separate counsel and the Company shall pay the reasonable fees and expenses of such counsel; *provided* that the Company will not be required to pay such fees and expenses if it assumes the Trustee's defense and there is no conflict of interest between the Company and the Trustee in connection with such defense. The Company need not pay for any settlement made without its written consent, which consent may not be unreasonably withheld. The Company need not reimburse any expense or indemnify against any loss or liability incurred by the Trustee through the Trustee's own willful misconduct, negligence or bad faith.

To secure the Company's payment obligations in this Section 7.7, the Trustee shall have a lien prior to the Notes and the Guarantees on all money or property held or collected by it in its capacity as Trustee, except money or property held in trust to pay principal of or interest on particular Notes.

When the Trustee incurs expenses or renders services after an Event of Default specified in Section 6.1(f) or 6.1(g) occurs, the expenses and the compensation for the services are intended to constitute expenses of administration under any Bankruptcy Law.

The rights of the Trustee (in all its capacities) under this section shall survive its resignation or removal.

Section 7.8        Replacement of Trustee.

The Trustee may resign at any time by so notifying the Company in writing, such resignation to be effective upon the appointment of a successor Trustee. The Holders of a majority in principal amount of the outstanding Notes may remove the Trustee by so notifying the Trustee in writing and may appoint a successor Trustee with the Company's consent which consent shall not be unreasonably withheld. The Company may remove the Trustee if:

(a)     the Trustee fails to comply with Section 7.10;

(b)     the Trustee is adjudged a bankrupt or an insolvent;

(c)     a receiver or other public officer takes charge of the Trustee or its property; or

(d)     the Trustee becomes incapable of acting.

If the Trustee resigns or is removed or if a vacancy exists in the office of Trustee for any reason (the Trustee in such event being referred to herein as the retiring Trustee), the Company shall promptly appoint a successor Trustee. Within one year after the successor Trustee takes office, the Holders of a majority in principal amount of the Notes may appoint a successor Trustee to replace the successor Trustee appointed by the Company.

A successor Trustee shall deliver a written acceptance of its appointment to the retiring Trustee and to the Company. Immediately after that, the retiring Trustee shall, upon payment of its charges, transfer all property held by it as Trustee to the successor Trustee (subject to the lien provided in Section 7.7), the resignation or removal of the retiring Trustee shall become effective, and the successor Trustee shall have all the rights, powers and duties of the Trustee under this Indenture. A successor Trustee shall mail notice of its succession to each Securityholder.

If a successor Trustee does not take office within 60 days after the retiring Trustee resigns or is removed, the retiring Trustee, the Company or the Holders of at least 25% in principal amount of then outstanding Notes may petition any court of competent jurisdiction at the expense of the Company for the appointment of a successor Trustee.

If the Trustee fails to comply with Section 7.10, any Securityholder may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

Notwithstanding replacement of the Trustee pursuant to this Section 7.8, the Company's obligations under Section 7.7 shall continue for the benefit of the retiring Trustee.

Section 7.9    Successor Trustee by Merger, Etc.

If the Trustee consolidates with, merges or converts into, or transfers all or substantially all of its corporate trust business to, another corporation or national banking association, the resulting, surviving or transferee corporation or national banking association without any further act shall be the successor Trustee; *provided* such corporation shall be otherwise qualified and eligible under this Article VII.

Section 7.10    Eligibility; Disqualification.

This Indenture shall always have a Trustee who satisfies the requirements of TIA Section 310(a)(1) and (2). The Trustee shall have a combined capital and surplus of at least $50,000,000 as set forth in its most recent published annual report of condition. The Trustee shall comply with TIA Section 310(b); *provided* that there shall be excluded from the operation of TIA Section 310(b)(1) any indenture or indentures under which other securities, or certificates of interest or participation in other securities, of the Company are outstanding if the requirements for such exclusion set forth in TIA Section 310(b)(1) are met. The provisions of TIA Section 310 shall apply to the Company, as obligor of the Notes.

Section 7.11    Preferential Collection of Claims Against Company.

The Trustee shall comply with TIA Section 311(a), excluding any creditor relationship listed in TIA Section 311(b). A Trustee who has resigned or been removed shall be subject to TIA Section 311(a) to the extent indicated therein.

ARTICLE VIII

DISCHARGE OF INDENTURE; DEFEASANCE

Section 8.1    Termination of the Company's Obligations.

This Indenture will be discharged and will cease to be of further effect (except as set forth below) and the Trustee at the expense of the Company, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture when:

(1)    either:

(a)    all the Notes theretofore authenticated and delivered (except lost, stolen or destroyed notes which have been replaced or paid as provided in Section 2.7 and Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Company and thereafter repaid to the Company or discharged from such trust) have been delivered to the Trustee for cancellation; or

(b)    all Notes not theretofore delivered to the Trustee for cancellation have become due and payable and the Company has irrevocably deposited or caused to be

deposited with the Trustee funds in an amount sufficient to pay and discharge the entire Indebtedness on the Notes not theretofore delivered to the Trustee for cancellation, for principal of, premium, if any, and interest on the Notes to the date of deposit together with irrevocable instructions from the Company directing the Trustee to apply such funds to the payment thereof at maturity or redemption, as the case may be;

(2)     the Company has paid all other sums payable under this Indenture by the Company; and

(3)     the Company has delivered to the Trustee an Officer's Certificate and an Opinion of Counsel stating that all conditions precedent under this Indenture relating to the satisfaction and discharge of this Indenture have been complied with.

Notwithstanding the foregoing paragraph, the Company's obligations in Sections 2.5, 2.6, 2.7, 2.10, 7.7, 8.5 and 8.6 shall survive until the Notes are no longer outstanding pursuant to the last paragraph of Section 2.8. After the Notes are no longer outstanding, the Company's obligations in Sections 7.7, 8.5 and 8.6 shall survive.

After such delivery or irrevocable deposit, the Trustee upon request shall acknowledge in writing the discharge of the Company's and the Guarantors' obligations under the Notes and the Guarantees, as the case may be, and this Indenture except for those surviving obligations specified above.

Section 8.2          Legal Defeasance and Covenant Defeasance.

(a)     The Company may, at its option by Board Resolution of the Board of Directors, at any time, elect to have either paragraph (b) or (c) below be applied to all outstanding Notes upon compliance with the conditions set forth in Section 8.3.

(b)     Upon the Company's exercise under paragraph (a) hereof of the option applicable to this paragraph (b), each of the Company and the Guarantors shall, subject to the satisfaction of the conditions set forth in Section 8.3, be deemed to have been discharged from its obligations with respect to all outstanding Notes on the date the conditions set forth below are satisfied (hereinafter, "*Legal Defeasance*"). For this purpose, Legal Defeasance means that the Company shall be deemed to have paid and discharged the entire Indebtedness represented by the outstanding Notes, which shall thereafter be deemed to be "outstanding" only for the purposes of Section 8.4 hereof and the other Sections of this Indenture referred to in (i) and (ii) below, and to have satisfied all its other obligations under such Notes and this Indenture (and the Trustee, on demand of and at the expense of the Company, shall execute proper instruments acknowledging the same), except for the following provisions, which shall survive until otherwise terminated or discharged hereunder: (i) the rights of Holders of outstanding Notes to receive solely from the trust fund described in Section 8.4 hereof, and as more fully set forth in such Section, payments in respect of the principal of and interest on such Notes when and to the extent such payments are due, (ii) the Company's obligations with respect to such Notes under Article II and Section 4.2 hereof, (iii) the rights, powers, trusts, duties and immunities of the Trustee hereunder and the Company's obligations in connection therewith, including Section 7.7 hereof and (iv) this Article VIII. Subject to compliance with this Article VIII, the Company may

exercise its option under this paragraph (b) notwithstanding the prior exercise of its option under paragraph (c) hereof.

(c)     Upon the Company's exercise under paragraph (a) hereof of the option applicable to this paragraph (c), each of Holdings, the Company and the Guarantors shall, subject to the satisfaction of the conditions set forth in Section 8.3 hereof, be released from its obligations under the covenants contained in Sections 4.8 through 4.14 and Sections 4.16 through 4.18 and Articles V and X hereof with respect to the outstanding Notes on and after the date the conditions set forth below are satisfied (hereinafter, "***Covenant Defeasance***"), and the Notes shall thereafter be deemed not "outstanding" for the purposes of any direction, waiver, consent or declaration or act of Holders (and the consequences of any thereof) in connection with such covenants, but shall continue to be deemed "outstanding" for all other purposes hereunder (it being understood that such Notes shall not be deemed outstanding for accounting purposes). For this purpose, such Covenant Defeasance means that, with respect to the outstanding Notes, the Company and its Subsidiaries may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such covenant, whether directly or indirectly, by reason of any reference elsewhere herein to any such covenant or by reason of any reference in any such covenant to any other provision herein or in any other document and such omission to comply shall not constitute a Default or an Event or Default under Section 6.1(c) hereof, but, except as specified above, the remainder of this Indenture and such Notes shall be unaffected thereby. In addition, upon the Company's exercise under paragraph (a) hereof of the option applicable to this paragraph (c), subject to the satisfaction of the conditions set forth in Section 8.3 hereof, Sections 6.1(c) and 6.1(e) shall not constitute Events of Default.

Section 8.3          Conditions to Legal Defeasance or Covenant Defeasance.

The following shall be the conditions to the application of either Section 8.2(b) or 8.2(c) hereof to the outstanding Notes:

In order to exercise either Legal Defeasance or Covenant Defeasance:

(a)     the Company must irrevocably deposit with the Trustee, in trust, for the benefit of the Holders, U.S. Legal Tender, U.S. Government Obligations which through the scheduled payment of principal and interest in respect thereof in accordance with their terms, will provide, not later than one day before the due date of any payment on the Notes, U.S. Legal Tender, or a combination thereof, in such amounts as will be sufficient, in the opinion of a nationally recognized firm of independent public accountants, to pay the principal of, premium, if any, and interest on the Notes on the stated date for payment thereof or on the applicable redemption date, as the case may be, of such principal or installment of principal of or interest on the Notes; *provided* that the Trustee shall have received an irrevocable written order from the Company instructing the Trustee to apply such U.S. Legal Tender or the proceeds of such U.S. Government Obligations to said payments with respect to the Notes;

(b)     in the case of an election under Section 8.2(b) hereof, the Company shall have delivered to the Trustee an Opinion of Counsel in the United States reasonably acceptable to the Trustee confirming that (A) the Company has received from, or there has been published by, the Internal Revenue Service a ruling or (B) since the date of this Indenture, there has been a

change in the applicable federal income tax law, in either case to the effect that, and based thereon such Opinion of Counsel shall confirm that, the Holders of the Notes will not recognize income, gain or loss for federal income tax purposes as a result of such Legal Defeasance and will be subject to federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such Legal Defeasance had not occurred;

(c)     in the case of an election under Section 8.2(c) hereof, the Company shall have delivered to the Trustee an Opinion of Counsel in the United States reasonably acceptable to the Trustee confirming that the Holders of the Notes will not recognize income, gain or loss for federal income tax purposes as a result of such Covenant Defeasance and will be subject to federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such Covenant Defeasance had not occurred;

(d)     no Default or Event of Default or event which with notice or lapse of time or both would become a Default or an Event of Default with respect to the Notes shall have occurred and be continuing on the date of such deposit (other than a Default or Event of Default resulting from the incurrence of Indebtedness all or a portion of the proceeds of which will be used to defease the Notes pursuant to this Article VIII concurrently with such incurrence) or insofar as Sections 6.1(f) and 6.1(g) hereof are concerned, at any time in the period ending on the 91st day after the date of such deposit;

(e)     such Legal Defeasance or Covenant Defeasance shall not result in a breach or violation of or constitute a default under this Indenture, the Senior Credit Facilities or any other material agreement or instrument to which the Company or any of its Subsidiaries is a party or by which the Company or any of its Subsidiaries is bound;

(f)     the Company shall have delivered to the Trustee an Officer's Certificate stating that the deposit was not made by the Company with the intent of preferring the Holders over any other creditors of the Company or with the intent of defeating, hindering, delaying or defrauding any other creditors of the Company or others;

(g)     the Company shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent provided for or relating to the Legal Defeasance or the Covenant Defeasance have been complied with; and

(h)     the Company shall have delivered to the Trustee an Opinion of Counsel to the effect that assuming no intervening bankruptcy or insolvency of the Company between the date of deposit and the 91st day following the date of deposit and that no Holder is an insider of the Company, after the 91st day following the date of deposit, the trust funds will not be subject to the effect of any applicable Bankruptcy Laws affecting creditors' rights generally.

Notwithstanding the foregoing, the Opinion of Counsel required by clause (b) above of this Section 8.3 need not be delivered if all Notes not theretofore delivered to the Trustee for cancellation (i) have become due and payable, or (ii) will become due and payable on the Maturity Date within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name and at the expense of the Company.

Section 8.4          Application of Trust Money.

The Trustee or Paying Agent shall hold in trust U.S. Legal Tender or U.S. Government Obligations deposited with it pursuant to this Article VIII, and shall apply the deposited U.S. Legal Tender and the money from U.S. Government Obligations in accordance with this Indenture to the payment of principal of and interest on the Notes. The Trustee shall be under no obligation to invest said U.S. Legal Tender or U.S. Government Obligations except as it may agree with the Company.

The Company shall pay and indemnify the Trustee against any tax, fee or other charge imposed on or assessed against the U.S. Legal Tender or U.S. Government Obligations deposited pursuant to Section 8.3 hereof or the principal and interest received in respect thereof other than any such tax, fee or other charge which by law is for the account of the Holders of the outstanding Notes.

Anything in this Article VIII to the contrary notwithstanding, the Trustee shall deliver or pay to the Company from time to time upon the Company's request any U.S. Legal Tender or U.S. Government Obligations held by it as provided in Section 8.3 hereof which, in the opinion of a nationally recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, are in excess of the amount thereof that would then be required to be deposited to effect an equivalent Legal Defeasance or Covenant Defeasance.

Section 8.5          Repayment to the Company.

Subject to this Article VIII, the Trustee and the Paying Agent shall promptly pay to the Company upon request any excess U.S. Legal Tender or U.S. Government Obligations held by them at any time and thereupon shall be relieved from all liability with respect to such money. The Trustee and the Paying Agent shall pay to the Company upon request any money held by them for the payment of principal or interest that remains unclaimed for two years; *provided* that the Trustee or such Paying Agent, before being required to make any payment, may at the expense of the Company cause to be published once in a newspaper of general circulation in the City of New York or mail to each Holder entitled to such money notice that such money remains unclaimed and that after a date specified therein which shall be at least 30 days from the date of such publication or mailing any unclaimed balance of such money then remaining will be repaid to the Company. After payment to the Company, Holders entitled to such money must look to the Company for payment as general creditors unless an applicable law designates another Person.

Section 8.6          Reinstatement.

If the Trustee or Paying Agent is unable to apply any U.S. Legal Tender or U.S. Government Obligations in accordance with this Article VIII by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the Company's and each Guarantor's obligations under this Indenture and the Notes and any Guarantee shall be revived and reinstated as though no deposit had occurred pursuant to this Article VIII until such time as the Trustee or Paying Agent is permitted to apply all such U.S. Legal Tender or U.S. Government Obligations

in accordance with this Article VIII; *provided* that if the Company has made any payment of interest on or principal of any Notes because of the reinstatement of its obligations, the Company shall be subrogated to the rights of the Holders of such Notes to receive such payment from the U.S. Legal Tender or U.S. Government Obligations held by the Trustee or Paying Agent.

## ARTICLE IX

## AMENDMENTS, SUPPLEMENTS AND WAIVERS

Section 9.1    Without Consent of Holders.

Without the consent of any Holders, the Company and the Guarantors, when authorized by resolutions of their respective Boards of Directors (copies of which shall be delivered to the Trustee), and the Trustee may amend or supplement this Indenture, the Notes or the Guarantees without notice to any Holder for any of the following purposes:

(a)    to cure any ambiguity, defect or inconsistency herein;

(b)    to add to the covenants of the Company for the benefit of the Holders, or surrender any right or power herein conferred upon the Company;

(c)    to provide for collateral for the Notes;

(d)    to provide for uncertificated Notes in addition to or in place of certificated Notes;

(e)    to effect or maintain the qualification of this Indenture under the TIA;

(f)    to evidence the succession in accordance with Article V hereof of another Person to the Company and the assumption by any such successor of the covenants of the Company herein and in the Notes;

(g)    to add a Guarantor under this Indenture; or

(h)    to make any other change that does not adversely affect the rights of any Holder in any material respect; *provided* that in making such change, the Trustee may rely upon an Opinion of Counsel stating that such change does not adversely affect the rights of any Holder in any material respect.

Section 9.2    With Consent of Holders.

Subject to Section 6.7 and the provisions of this Section 9.2, the Company and the Guarantors, when authorized by resolutions of their respective Boards of Directors (copies of which shall be delivered to the Trustee), and the Trustee may amend or supplement this Indenture with the written consent of the Holders of at least a majority in aggregate principal amount of the Notes then outstanding. Subject to Section 6.7 and the provisions of this Section 9.2, the Holders of, in the aggregate, at least a majority in principal amount of the then outstanding Notes affected may waive compliance by the Company with any provision of this Indenture without notice to

any other Securityholder. However, without the consent of each Securityholder affected, an amendment, supplement or waiver, including a waiver pursuant to Section 6.4 may not:

(a)     reduce the percentage of principal amount of Notes whose Holders must consent to an amendment, supplement or waiver of any provision of this Indenture or the Notes;

(b)     reduce the rate of or change or have the effect of changing the time for payment of interest, including defaulted interest, on any Note;

(c)     reduce the principal of or change or have the effect of changing the fixed maturity of any Notes, or change the date on which any Notes may be subject to redemption or reduce the redemption price therefor;

(d)     make the principal of, or any interest on, any Note payable in money other than that stated in the Note;

(e)     make any change in provisions of this Indenture protecting the right of each Holder to receive payment of principal of and interest on such Note on or after the due date thereof or to bring suit to enforce such payment, or permitting Holders of a majority in principal amount of Notes to waive Defaults or Events of Default;

(f)     after the Company's obligation to purchase Notes arises thereunder, amend, change or modify any provisions of this Indenture or the related definitions affecting the Company's obligation to make a Change of Control Offer in a manner which adversely affects the Holders;

(g)     after the Company's obligation to purchase Notes arises thereunder, amend, change or modify in any material respect the obligation of the Company to make and consummate a Net Proceeds Offer with respect to any Asset Sale that has been consummated or, after such Asset Sale has been consummated, modify any of the provisions or definitions with respect thereto; or

(h)     release any Guarantor that is a Significant Subsidiary from any of its obligations under its Guarantee or this Indenture otherwise than in accordance with the terms of this Indenture.

It shall not be necessary for the consent of the Holders under this Section 9.2 to approve the particular form of any proposed amendment, supplement or waiver, but it shall be sufficient if such consent approves the substance thereof.

After an amendment, supplement or waiver under this Section 9.2 becomes effective, the Company shall mail to the Holders affected thereby a notice briefly describing the amendment, supplement or waiver. Any failure of the Company to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

In connection with any amendment, supplement or waiver under this Article IX, the Company may, but shall not be obligated to, offer to any Holder who consents to such

amendment, supplement or waiver, or to all Holders, consideration for such Holder's consent to such amendment, supplement or waiver.

Section 9.3    Compliance with Trust Indenture Act.

Every amendment to or supplement of this Indenture, the Notes or the Guarantees shall be set forth in a supplemental indenture that complies with the TIA as then in effect.

Section 9.4    Revocation and Effect of Consents.

Until an amendment, supplement or waiver becomes effective, a consent to it by a Holder is a continuing consent by the Holder and every subsequent Holder of that Note or portion of that Note that evidences the same debt as the consenting Holder's Note, even if notation of the consent is not made on any Note. However, any such Holder or subsequent Holder may revoke the consent as to his Note or portion of a Note. Such revocation shall be effective only if the Trustee receives the notice of revocation before the date the amendment, supplement or waiver becomes effective. Notwithstanding the above, nothing in this paragraph shall impair the right of any Securityholder under Section 316(b) of the TIA.

The Company may, but shall not be obligated to, fix a record date for the purpose of determining the Holders entitled to consent to any amendment, supplement or waiver which record date shall be at least 10 days prior to the first solicitation of such consent. If a record date is fixed, then notwithstanding the second and third sentences of the immediately preceding paragraph, those Persons who were Holders at such record date (or their duly designated proxies), and only those Persons, shall be entitled to consent to such amendment, supplement or waiver or to revoke any consent previously given, whether or not such Persons continue to be Holders after such record date. Such consent shall be effective only for actions taken within 90 days after such record date.

After an amendment, supplement or waiver becomes effective, it shall bind every Securityholder unless it makes a change described in any of clauses (a) through (l) of Section 9.2. In that case the amendment, supplement or waiver shall bind each Holder of a Note who has consented to it.

Section 9.5    Notation on or Exchange of Notes.

If an amendment, supplement or waiver changes the terms of a Note, the Trustee may (in accordance with the specific direction of the Company) request the Holder of the Note to deliver it to the Trustee. The Trustee may (in accordance with the specific direction of the Company) place an appropriate notation on the Note about the changed terms and return it to the Holder. Alternatively, if the Company or the Trustee so determines, the Company in exchange for the Note shall issue and the Trustee shall authenticate a new Note (together with related Guarantees of the Guarantors) that reflects the changed terms. Failure to make the appropriate notation or issue a new Note shall not affect the validity and effect of such amendment, supplement or waiver.

Section 9.6            Trustee to Sign Amendments, Etc.

The Trustee shall sign any amendment, supplement or waiver authorized pursuant to this Article IX if the amendment, supplement or waiver does not adversely affect the rights, duties or immunities of the Trustee. If it does, the Trustee may, but need not, sign it. In signing any amendment, supplement or waiver, the Trustee shall be entitled to receive, if requested, an indemnity reasonably satisfactory to it and to receive, and shall be fully protected in relying upon, an Officer's Certificate and an Opinion of Counsel stating that the execution of any amendment, supplement or waiver authorized pursuant to this Article IX is authorized or permitted by this Indenture. Neither the Company nor any Guarantor may sign an amendment until its Board of Directors approves it. Notwithstanding the foregoing, an Opinion of Counsel shall not be required in connection with the addition of a Guarantor under this Indenture upon execution and delivery by such Guarantor and the Trustee of a supplemental indenture to this Indenture and

ARTICLE X

GUARANTEE

Section 10.1            Unconditional Guarantee.

Each Guarantor hereby unconditionally, jointly and severally, guarantees (each such guarantee to be referred to herein as a "*Guarantee*"), to each of the Holders and to the Trustee and their respective successors and assigns that (i) the principal of and interest on the Notes will be promptly paid in full when due, subject to any applicable grace period, whether at maturity, by acceleration or otherwise, and interest on the overdue principal, if any, and interest on any interest, if any, to the extent lawful, of the Notes and all other obligations of the Company to the Holders or the Trustee hereunder or thereunder will be promptly paid in full or performed, all in accordance with the terms hereof and thereof; and (ii) in case of any extension of time of payment or renewal of any of the Notes or of any such other obligations, the same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, subject to any applicable grace period, whether at stated maturity, by acceleration or otherwise, subject, however, in the case of clauses (i) and (ii) above, to the limitations set forth in Section 10.4. Each Guarantor hereby agrees that its obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or this Indenture, the absence of any action to enforce the same, any waiver or consent by any of the Holders with respect to any provisions hereof or thereof, the recovery of any judgment against the Company, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor. Each Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Company, any right to require a proceeding first against the Company, protest, notice and all demands whatsoever and covenants that this Guarantee will not be discharged except by complete performance of the obligations contained in the Notes, this Indenture and in this Guarantee. If any Holder or the Trustee is required by any court or otherwise to return to the Company, any Guarantor, or any custodian, trustee, liquidator or other similar official acting in relation to the Company or any Guarantor, any amount paid by the Company or any Guarantor to the Trustee or such Holder, this Guarantee, to the extent

theretofore discharged, shall be reinstated in full force and effect. Each Guarantor further agrees that, as between each Guarantor, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the obligations guaranteed hereby may be accelerated as provided in Article VI for the purposes of this Guarantee, and (y) in the event of any acceleration of such obligations as provided in Article VI, such obligations (whether or not due and payable) shall forthwith become due and payable by each Guarantor for the purpose of this Guarantee.

Section 10.2    Severability.

In case any provision of this Guarantee shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 10.3    Release of a Guarantor.

Upon (i) the unconditional release of a Guarantor from its liability in respect of the Indebtedness in connection with which such Guarantee was executed and delivered in accordance with the first paragraph of Section 4.16, (ii) any sale or other disposition (by merger or otherwise) to any Person which is not a Restricted Subsidiary of the Company of all of the Company's Capital Stock in, or all or substantially all of the assets of, a Guarantor; *provided* that (a) such sale or disposition of such Capital Stock or assets is otherwise in compliance with the terms of this Indenture and (b) such assumption, guarantee or other liability of such Guarantor has been released by the holders of the other Indebtedness of the Company so guaranteed, (iii) the Legal Defeasance or Covenant Defeasance of the Notes as described under Section 8.2 (subject to reinstatement pursuant to Section 8.6), or (iv) a Guarantor being designated as an Unrestricted Subsidiary as described under the definition of "Unrestricted Subsidiary," such Guarantor shall be deemed released from all obligations under this Article X without any further action required on the part of the Trustee or any Holder; *provided* that any such termination shall occur only to the extent that all obligations of such Guarantor under all of its guarantees of, and under all of its pledges of assets or other security interests which secure, such Indebtedness of the Company shall also terminate upon such release, sale or transfer.

At the Company's expense, Trustee shall promptly execute an instrument evidencing such release upon request by the Company accompanied by an Officer's Certificate certifying as to the compliance with this Section 10.3. Any Guarantor not so released remains liable for the full amount of principal of and interest on the Notes as provided in this Article X.

Section 10.4    Limitation of Guarantor's Liability.

Each Guarantor and by its acceptance hereof each of the Holders hereby confirm that it is the intention of all such parties that the guarantee by such Guarantor pursuant to its Guarantee not constitute a fraudulent transfer or conveyance for purposes of any Bankruptcy Law, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act or any similar Federal or state law. To effectuate the foregoing intention, the Holders and such Guarantor hereby irrevocably agree that the obligations of such Guarantor under the Guarantee shall be limited to the maximum amount as will, after giving effect to all other contingent and fixed liabilities of such Guarantor (including, but not limited to, the Guarantor Senior Debt of such

Guarantor) and after giving effect to any collections from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under its Guarantee or pursuant to Section 10.6, result in the obligations of such Guarantor under the Guarantee not constituting such fraudulent transfer or conveyance.

Section 10.5      Consolidation, Merger and Sale of Assets.

Upon any consolidation, merger, sale or conveyance of a Guarantor as permitted by Article V, the Guarantee of such Guarantor set forth in this Article X, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by such Guarantor, shall be expressly assumed (in the event that the Company, the Guarantor or another Guarantor is not the surviving corporation in the merger), by an agreement or supplemental indenture reasonably satisfactory in form to the Trustee, executed and delivered to the Trustee, by the corporation formed by such consolidation, or into which the Guarantor shall have merged, or by the corporation that shall have acquired such property. In the case of any such consolidation, merger, sale or conveyance and upon the assumption by the successor corporation, by an agreement or supplemental indenture executed and delivered to the Trustee and satisfactory in form to the Trustee of the due and punctual performance of all of the covenants and conditions of this Indenture to be performed by the Guarantor, such successor corporation shall succeed to and be substituted for the Guarantor with the same effect as if it had been named herein as a Guarantor.

Section 10.6      Contribution.

In order to provide for just and equitable contribution among the Guarantors, the Guarantors agree, *inter se*, that in the event any payment or distribution is made by any Guarantor (a "***Funding Guarantor***") under its Guarantee, such Funding Guarantor shall be entitled to a contribution from all other Guarantors in a pro rata amount based on the Adjusted Net Assets of each Guarantor (including the Funding Guarantor) for all payments, damages and expenses incurred by that Funding Guarantor in discharging the Company's obligations with respect to the Obligations. "Adjusted Net Assets" of such Guarantor at any date shall mean the lesser of (x) the amount by which the fair value of the property of such Guarantor exceeds the total amount of liabilities, including, without limitation, contingent liabilities (after giving effect to all other fixed and contingent liabilities incurred or assumed on such date (other than liabilities of such Guarantor under Subordinated Obligation)), but excluding liabilities under the Guarantee, of such Guarantor at such date and (y) the amount by which the present fair salable value of the assets of such Guarantor at such date exceeds the amount that will be required to pay the probable liabilities of such Guarantor on its debts (after giving effect to all other fixed and contingent liabilities incurred or assumed on such date and after giving effect to any collection from any Subsidiary of such Guarantor in respect of the obligations of such Subsidiary under the Guarantee), excluding debt in respect of the Guarantee of such Guarantor, as they become absolute and matured.

Section 10.7      Waiver of Subrogation.

Each Guarantor hereby irrevocably waives any claim or other rights which it may now or hereafter acquire against the Company that arise from the existence, payment, performance or

enforcement of such Guarantor's obligations under its Guarantee and this Indenture, including, without limitation, any right of subrogation, reimbursement, exoneration, indemnification, and any right to participate in any claim or remedy of any Holder against the Company, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law, including, without limitation, the right to take or receive from the Company, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim or other rights. If any amount shall be paid to any Guarantor in violation of the preceding sentence and the Notes shall not have been paid in full, such amount shall be deemed to have been paid to such Guarantor for the benefit of, and held in trust for the benefit of, the Holders, and shall, subject to the provisions of Section 10.2, forthwith be paid to the Trustee for the benefit of such Holders to be credited and applied upon the Notes, whether matured or unmatured, in accordance with the terms of this Indenture. Each Guarantor acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by this Indenture and that the waiver set forth in this Section 10.7 is knowingly made in contemplation of such benefits.

Section 10.8    Evidence of Guarantee.

Each Person that becomes a Guarantor after the Issue Date shall execute and deliver a supplemental indenture evidencing its Guarantee. In addition, each of the Guarantors hereby agrees to execute the notation of Guarantee in substantially the form included in Exhibit E. Each such notation of Guarantee shall be signed on behalf of each Guarantor by an Officer or an assistant Secretary.

Section 10.9    Waiver of Stay, Extension or Usury Laws.

Each Guarantor covenants that it will not at any time insist upon, plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law or any usury law or other law that would prohibit or forgive such Guarantor from performing its Guarantee as contemplated herein, wherever enacted, now or at any time hereafter in force, or which may affect the covenants or the performance of this Indenture; and each Guarantor hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

ARTICLE XI

MISCELLANEOUS

Section 11.1    Trust Indenture Act Controls.

Except as specified in Section 2.9, the provisions of TIA Sections 310 through 317 that impose duties on any Person (including the provisions automatically deemed included unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

Except as specified in Section 2.9, if any provision of this Indenture limits, qualifies or conflicts with the duties imposed by the above paragraph, the imposed duties shall control.

Section 11.2          Notices.

Any notice or communication shall be sufficiently given if in writing and delivered in Person or mailed by first-class mail or by telecopier, followed by first-class mail, or by overnight service guaranteeing next-day delivery, addressed as follows:

(a)     if to the Company or any Guarantor:

c/o Vertis, Inc.
250 W. Pratt Street
18th Floor
Baltimore, MD  21201
Attention:  Chief Financial Officer
Telecopier Number:  (410) 528-9287

(b)     if to the Trustee:

HSBC Bank USA, National Association
10 East 40th Street, 14th Floor
New York, NY 10016
Attention:  Vivian Ly
Telecopier Number:  (212) 525-1300

The Company or the Trustee by notice to the other may designate additional or different addresses for subsequent notices or communications.

Any notice or communication mailed to a Securityholder, including any notice delivered in connection with TIA Section 310(b), TIA Section 313(c), TIA Section 314(a) and TIA Section 315(b), shall be mailed to such Holder, first-class postage prepaid, at his address as it appears on the registration books of the Registrar and shall be sufficiently given to such Holder if so mailed within the time prescribed.

Failure to mail a notice or communication to a Securityholder or any defect in it shall not affect its sufficiency with respect to other Securityholders.  Except for a notice to the Trustee, which is deemed given only when received, if a notice or communication is mailed in the manner provided above, it is duly given, whether or not the addressee receives it.

Section 11.3          Communications by Holders with Other Holders.

Securityholders may communicate pursuant to TIA Section 312(b) with other Securityholders with respect to their rights under this Indenture, the Notes or the Guarantees. The Company, the Guarantors, the Trustee, the Registrar and any other Person shall have the protection of TIA Section 312(c).

Section 11.4          Certificate and Opinion of Counsel as to Conditions Precedent.

Upon any request or application by the Company to the Trustee to take any action under this Indenture, the Company shall furnish to the Trustee at the request of the Trustee (a) an

Officer's Certificate in form reasonably satisfactory to the Trustee stating that, in the opinion of the signers, all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with (which officer signing such certificate may rely, as to matters of law, on an Opinion of Counsel), (b) an Opinion of Counsel in form reasonably satisfactory to the Trustee stating that, in the opinion of counsel, all such conditions have been complied with (which counsel, as to factual matters, may rely on an Officer's Certificate and certificates of public officials) and (c) where applicable, a certificate or opinion by an independent certified public accountant satisfactory to the Trustee that complies with TIA Section 314(c).

Section 11.5    <u>Statements Required in Certificate and Opinion of Counsel</u>.

Each certificate and Opinion of Counsel with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(a)    a statement that the Person making such certificate or rendering such Opinion of Counsel has read such covenant or condition;

(b)    a brief statement as to the nature and scope of the examination or investigation upon which the statements contained in such certificate or Opinion of Counsel are based;

(c)    a statement that, in the opinion of such Person, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)    a statement as to whether or not, in the opinion of such Person, such condition or covenant has been complied with.

Section 11.6    <u>Rules by Trustee, Paying Agent, Registrar</u>.

The Trustee may make reasonable rules in accordance with the Trustee's customary practices for action by or at a meeting of Securityholders. The Paying Agent or Registrar may make reasonable rules for its functions.

Section 11.7    <u>Legal Holidays</u>.

If a payment date is a Legal Holiday at a place of payment, payment may be made at that place on the next succeeding day that is not a Legal Holiday, and no interest shall accrue for the intervening period.

Section 11.8    <u>Governing Law</u>.

THE LAWS OF THE STATE OF NEW YORK SHALL GOVERN THIS INDENTURE AND THE NOTES WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE COMPANY AGREES TO SUBMIT TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS INDENTURE OR THE NOTES.

Section 11.9    No Recourse Against Others.

No past, present or future director, officer, employee, incorporator or stockholder of the Company or any Guarantor, as such, shall have any liability for any obligations of the Company or any Guarantor under the Notes, the Guarantees or this Indenture or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Notes and the Guarantees.

Section 11.10    Successors.

All agreements of the Company and the Guarantors in this Indenture, the Notes and the Guarantees shall bind their respective successors. All agreements of the Trustee in this Indenture shall bind its successor.

Section 11.11    Counterparts.

The parties may sign any number of counterparts of this Indenture. Each such counterpart shall be an original, but all of them together represent the same agreement.

Section 11.12    Severability.

In case any provision in this Indenture, the Notes or the Guarantees shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby, and a Holder shall have no claim therefor against any party hereto.

Section 11.13    Table of Contents, Headings, Etc.

The table of contents, cross-reference sheet and headings of the Articles and Sections of this Indenture have been inserted for convenience of reference only, and are not to be considered a part hereof, and shall in no way modify or restrict any of the terms or provisions hereof.

Section 11.14    No Adverse Interpretation of Other Agreements.

This Indenture may not be used to interpret another indenture, loan or debt agreement of the Company or any of its Subsidiaries. Any such indenture, loan or debt agreement may not be used to interpret this Indenture.

Section 11.15    Benefits of Indenture.

Nothing in this Indenture, the Notes or the Guarantees, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture, the Notes or the Guarantees.

Section 11.16    Independence of Covenants.

All covenants and agreements in this Indenture shall be given independent effect so that if any particular action or condition is not permitted by any of such covenants, the fact that it would be permitted by an exception to, or otherwise be within the limitations of, another covenant shall not avoid the occurrence of a Default or an Event of Default if such action is taken or condition exists.

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of the date first written above.

VERTIS, INC.,
    as the Company

By: _____
    Name:
    Title:

HSBC BANK USA, NATIONAL ASSOCIATION,
    as Trustee

By: _____
    Name:
    Title:

SUBSIDIARY GUARANTORS:

WEBCRAFT, LLC

By: _____
      Name:
      Title:

WEBCRAFT CHEMICALS, LLC

By: _____
      Name:
      Title:

ENTERON GROUP, LLC

By: _____
      Name:
      Title:

USA DIRECT, LLC

By: _____
      Name:
      Title:

VERTIS MAILING, LLC

By: _____
      Name:
      Title:


ACG HOLDINGS, INC.

By: _____
      Name:
      Title:


AMERICAN COLOR GRAPHICS, INC.

By: _____
      Name:
      Title:


SULLIVAN MARKETING, INC.

By: _____
      Name:
      Title:


AMERICAN IMAGES OF NORTH AMERICA, INC.

By: _____
      Name:
      Title:

SULLIVAN MEDIA CORPORATION

By: _____
     Name:
     Title:

[FORM OF SERIES A NOTE]

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "*SECURITIES ACT*"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR SOLD WITHIN THE UNITED STATES OR TO OR FOR THE ACCOUNT OR BENEFIT OF U.S. PERSONS EXCEPT AS SET FORTH BELOW. BY ITS ACQUISITION HEREOF, THE HOLDER (1) REPRESENTS THAT (A) IT IS A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT), (B) IT IS NOT A U.S. PERSON AND IS ACQUIRING THIS SECURITY IN AN OFFSHORE TRANSACTION IN COMPLIANCE WITH RULE 904 UNDER THE SECURITIES ACT OR (C) IT IS AN ACCREDITED INVESTOR (AS DEFINED IN RULE 501(a)(1), (2), (3) OR (7) UNDER THE SECURITIES ACT) (AN "*ACCREDITED INVESTOR*"), (2) AGREES THAT IT WILL NOT WITHIN ONE YEAR AFTER THE ORIGINAL ISSUANCE OF THIS SECURITY RESELL OR OTHERWISE TRANSFER THIS SECURITY EXCEPT (A) TO THE COMPANY OR ANY SUBSIDIARY THEREOF, (B) INSIDE THE UNITED STATES TO A QUALIFIED INSTITUTIONAL BUYER IN COMPLIANCE WITH RULE 144A UNDER THE SECURITIES ACT, (C) INSIDE THE UNITED STATES TO AN ACCREDITED INVESTOR THAT, PRIOR TO SUCH TRANSFER, FURNISHES (OR HAS FURNISHED ON ITS BEHALF BY A U.S. BROKER-DEALER) TO THE TRUSTEE A SIGNED LETTER CONTAINING CERTAIN REPRESENTATIONS AND AGREEMENTS RELATING TO THE RESTRICTIONS ON TRANSFER OF THIS SECURITY (THE FORM OF WHICH LETTER CAN BE OBTAINED FROM THE TRUSTEE FOR THIS SECURITY), (D) OUTSIDE THE UNITED STATES IN AN OFFSHORE TRANSACTION IN COMPLIANCE WITH RULE 904 UNDER THE SECURITIES ACT (IF AVAILABLE), (E) PURSUANT TO THE EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE) (F) IN ACCORDANCE WITH ANOTHER EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT (AND BASED UPON AN OPINION OF COUNSEL IF THE COMPANY SO REQUESTS), OR (G) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT AND (3) AGREES THAT IT WILL GIVE TO EACH PERSON TO WHOM THIS SECURITY IS TRANSFERRED A NOTICE SUBSTANTIALLY TO THE EFFECT OF THIS LEGEND. IN CONNECTION WITH ANY TRANSFER OF THIS SECURITY WITHIN ONE YEAR AFTER THE ORIGINAL ISSUANCE OF THIS SECURITY, IF THE PROPOSED TRANSFEREE IS AN ACCREDITED INVESTOR, THE HOLDER MUST, PRIOR TO SUCH TRANSFER, FURNISH TO THE TRUSTEE AND THE COMPANY SUCH CERTIFICATIONS, LEGAL OPINIONS OR OTHER INFORMATION AS EITHER OF THEM MAY REASONABLY REQUIRE TO CONFIRM THAT SUCH TRANSFER IS BEING MADE PURSUANT TO AN EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT. AS USED HEREIN, THE TERMS "OFFSHORE TRANSACTION," "UNITED STATES" AND "U.S. PERSON" HAVE THE MEANING GIVEN TO THEM BY REGULATION S UNDER THE SECURITIES ACT.

No. [          ]                                        $ [          ]

THESE NOTES HAVE BEEN ISSUED WITH ORIGINAL ISSUE DISCOUNT ("*OID*") FOR UNITED STATES FEDERAL INCOME TAX PURPOSES. THE ISSUE PRICE, AMOUNT OF OID, ISSUE DATE AND YIELD TO MATURITY OF THESE NOTES MAY BE OBTAINED BY WRITING TO VERTIS, INC. AT 250 W. PRATT STREET, 18TH FLOOR, BALTIMORE, MD 21201.

VERTIS, INC.

13.5% SENIOR PIK NOTE DUE 2014

VERTIS, INC. promises to pay to [              ] or registered assigns the principal sum of [              ] Dollars on [_____], 2014 [not later than Issue Date plus 5-1/2 years minus one day].

Interest Payment Dates: [_____ and _____]

Record Dates: [_____ and _____]

By: _____
Authorized Signature

By: _____
Authorized Signature

Dated: [                    ]

CERTIFICATE OF AUTHENTICATION

This is one of the 13.5% Senior PIK Notes due 2014 referred to in the within-mentioned Indenture.

HSBC BANK USA, NATIONAL ASSOCIATION,
as Trustee

_____
By:                Authorized Signatory

Dated:

## 13.5% SENIOR PIK NOTE DUE 2014

1.     INTEREST. VERTIS, INC., a Delaware corporation (the "**Company**", which term shall include any successor thereto in accordance with the Indenture), promises to pay, until the principal hereof is paid or made available for payment, interest (including any Accrued Bankruptcy Interest) on the principal amount set forth on the reverse side hereof at a rate of 13.5% per annum. Interest on the Notes will accrue from and including the most recent date to which interest has been paid or, if no interest has been paid, from and including the date of issuance of such Notes through but excluding the date on which interest is paid. Interest shall be payable in arrears on [_____ and _____] (each an "**_Interest Payment Date_**"). Interest will be computed on the basis of a 360-day year of twelve full 30-day months. Prior to the Maturity Date, interest shall be paid in-kind through the issuance of Additional Notes. On and after the Maturity Date, the Company shall pay all accrued and unpaid interest on the Notes in cash.

2.     METHOD OF PAYMENT. The Company will pay interest on the Notes (except defaulted interest) to the Persons who are registered Holders of Notes at the close of business on the [_____ and _____] immediately preceding the Interest Payment Date. Holders must surrender Notes to a Paying Agent to collect principal payments. The Company will pay principal, premium, if any, and interest (other than interest paid in-kind through the issuance of Additional Notes) in money of the United States that at the time of payment is legal tender for payment of public and private debts.

3.     PAYING AGENT AND REGISTRAR. Initially, HSBC Bank USA, National Association (the "**_Trustee_**") will act as Paying Agent and Registrar. The Company may change any Paying Agent, Registrar or co-Registrar without notice.

4.     INDENTURE. The Company issued the Notes under an Indenture dated as of [ ], 2008 (as such may be amended from time to time, the "**_Indenture_**") among the Company, the Guarantors and the Trustee. This Note is one of an issue of Notes of the Company issued under the Indenture. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S. Code Sections 77aaa-77bbbb) as amended from time to time. The Notes are subject to all such terms, and Securityholders are referred to the Indenture and such Act for a statement of them. Capitalized terms used herein and not otherwise defined have the meanings set forth in the Indenture. The Notes are general unsecured obligations of the Company and are unlimited in aggregate principal amount, $200.0 million of which will be issued on the Issue Date. Prior to the Maturity Date, interest on the Notes shall be paid in-kind through the issuance of Additional Notes. Other Additional Notes may be issued from time to time after the Issue Date, subject to the limitations set forth in Section 4.9 of the Indenture.

5.     OPTIONAL REDEMPTION.

The Company may redeem the Notes at its option, in whole or in part, upon not less than 30 nor more than 60 days' notice, at the following redemption prices (expressed as percentages

of the principal amount thereof) if redeemed during the twelve-month period commencing on the Issue Date and each anniversary thereof at the redemption prices set forth below:

| Year | Percentage |
| --- | --- |
| 2008 | 105.000% |
| 2009 | 102.000% |
| 2010 | 101.000% |
| 2011 and thereafter | 100.000% |

In addition, the Company must pay accrued and unpaid interest on the Notes redeemed.

6    NOTICE OF REDEMPTION.  Notice of redemption will be mailed at least 30 days but not more than 60 days before the redemption date to each holder of Notes to be redeemed at his registered address.  On and after the Redemption Date, unless the Company defaults in making the redemption payment, interest ceases to accrue on Notes or portions thereof called for redemption.

7.    OFFERS TO PURCHASE.  Sections 4.12 and 4.14 of the Indenture provide that after an Asset Sale, or upon the occurrence of a Change of Control, and subject to further limitations contained therein, the Company shall make an offer to purchase certain amounts of Notes in accordance with the procedures set forth in the Indenture.

8.    DENOMINATIONS, TRANSFER, EXCHANGE.  The Notes are in registered form without coupons in denominations of $1,000 and integral multiples of $1,000 subject to the payment of PIK Interest, in which case the aggregate principal amount of the Notes may be increased by, or PIK Notes may be issued in, an aggregate principal amount equal to the amount of PIK Interest paid by the Company for this applicable period, rounded up to the nearest whole dollar.  A Holder may transfer or exchange Notes in accordance with the Indenture.  The Registrar may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and to pay to it any taxes and fees required by law or permitted by the Indenture.  The Registrar need not transfer or exchange any Note or portion of a Note selected for redemption, or transfer or exchange any Notes for a period of 15 days before a selection of Notes to be redeemed.

9.    PERSONS DEEMED OWNERS.  The registered holder of a Note may be treated as the owner of it for all purposes.

10.    UNCLAIMED MONEY.  If money for the payment of principal or interest remains unclaimed for two years, the Trustee or Paying Agent will pay the money back to the Company at its request.  After that, Holders entitled to the money must look to the Company for payment as general creditors unless an "abandoned property" law designates another Person.

11.    AMENDMENT, SUPPLEMENT, WAIVER.  The Company, the Guarantors and the Trustee may, without the consent of the holders of any outstanding Notes, amend, waive or supplement the Indenture or the Notes for certain specified purposes, including, among other things, curing ambiguities, defects or inconsistencies, maintaining the qualification of the Indenture under the Trust Indenture Act of 1939 or making any other change that does not adversely affect the rights of any Holder.  Other amendments and modifications of the Indenture or the Notes may be made by the Company, the Guarantors and the Trustee with the consent of the Holders of not less than a majority in aggregate principal amount of the outstanding Notes, subject to certain exceptions requiring the consent of the Holders of the particular Notes to be affected.

12.    SUCCESSOR CORPORATION.  When a successor corporation assumes all the obligations of its predecessor under the Notes and the Indenture and the transaction complies with the terms of Article V of the Indenture, the predecessor corporation will, subject to certain exceptions, be released from those obligations.

13.    DEFAULTS AND REMEDIES.  Events of Default include:  default in payment of principal of or premium on the Notes at maturity, or upon acceleration, redemption or otherwise; default in payment of interest on any Note for 30 days; certain defaults under other Indebtedness; failure by the Company for 30 days after written notice to it from the Trustee or Holders of at least 25% in principal amount of the then outstanding Notes, to comply with any of the other agreements or covenants in or provisions of the Indenture or the Notes; certain events of bankruptcy or insolvency with respect to the Company and its Significant Subsidiaries; certain final judgments that remain undischarged for 60 days after being entered; any Guarantee of a Significant Subsidiary ceases to be in full force and effect; and any Guarantor that is a Significant Subsidiary shall deny its obligations under its Guarantee.  If an Event of Default occurs and is continuing (and has not been waived in accordance with the provisions of the Indenture), the Trustee or the Holders of at least 25% in aggregate principal amount of the then outstanding Notes may declare all the Notes to be immediately due and payable for an amount equal to 100% of the principal amount of the Notes plus accrued interest to the date of payment, except that in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Notes become due and payable immediately without further action or notice.  Holders may not enforce the Indenture or the Notes except as provided in the Indenture.  The Trustee may require indemnity satisfactory to it before it enforces the Indenture or the Notes.  Subject to certain limitations, Holders of a majority in principal amount of the then outstanding Notes may direct the Trustee in its exercise of any trust or power.  The Trustee may withhold from Holders notice of any continuing Default or Event of Default (except a Default or an Event of Default in payment of principal, premium, if any, or interest) if and so long as a committee of its Responsible Officers determines in good faith that withholding notice is in their interests.  The Company must furnish an annual compliance certificate to the Trustee.

14.    RESTRICTIVE COVENANTS.  The Indenture imposes certain limitations on the ability of the Company and its Subsidiaries to, among other things, pay dividends and make distributions with respect to or repurchase or otherwise acquire or retire for value any of their equity interests, make certain Investments, incur additional Indebtedness, enter into transactions with Affiliates, incur Liens, sell assets, merge or consolidate with any other Person and sell, lease, transfer or otherwise dispose of substantially all of their properties or assets.  The

limitations are subject to a number of important qualifications and exceptions. The Company must annually report to the Trustee on compliance with such limitations.

15. TRUSTEE DEALINGS WITH COMPANY. The Trustee, in its individual or any other capacity, may make loans to, accept deposits from, and perform services for the Company or its Affiliates, and may otherwise deal with the Company or its Affiliates, as if it were not Trustee.

16. NO RECOURSE AGAINST OTHERS. No past, present or future director, officer, employee, incorporator or stockholder of the Company, as such, shall have any liability for any obligations of the Company under the Notes or the Indenture or for any claim based on, in respect of or by reason of such obligations or their creation. Each Holder by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for the issuance of the Notes.

17. DISCHARGE OF INDENTURE; DEFEASANCE. The Indenture contains provisions for defeasance at any time, upon compliance with certain conditions set forth therein, of (i) the entire indebtedness of this Note or (ii) certain restrictive covenants and Events of Default with respect to this Note.

18. AUTHENTICATION. This Note shall not be valid until the Trustee signs the certificate of authentication on the other side of this Note.

19. ABBREVIATIONS. Customary abbreviations may be used in the name of a Securityholder or an assignee, such as: TEN COM (= tenants in common), TENANT (= tenants by the entireties), JT TEN (= joint tenants with right of survivorship and not as tenants in common), CUST (= Custodian), and U/G/M/A (= Uniform Gifts to Minors Act).

20. REGISTRATION RIGHTS. Pursuant to the Registration Rights Agreement, dated _____, the Company will be obligated to consummate an exchange offer pursuant to which the Holder of this Note shall have the right to exchange this Note for Notes of a separate series issued under the Indenture (or a trust indenture substantially identical to the Indenture in accordance with the terms of the Registration Rights Agreement) which have been registered under the Securities Act, in like principal amount and having identical terms as this Note. The Holders of the Notes shall be entitled to receive certain additional interest payments in the event such exchange offer is not consummated and upon certain other conditions, all pursuant to and in accordance with the terms of the Registration Rights Agreement.

21. GOVERNING LAW. THE INDENTURE AND THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

The provisions of this Note are expressly made subject to the more detailed provisions set forth in the Indenture and the Registration Rights Agreement, which shall for all purposes be controlling. The Company will furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to:

VERTIS, INC.
250 W. Pratt Street
18th Floor
Baltimore, MD  21201
Attention:  Chief Financial Officer

## ASSIGNMENT FORM

If you the holder want to assign this Note, fill in the form below and have your signature guaranteed:

I or we assign and transfer this Note to

_____

(Insert assignee's social security or tax ID number)

_____

_____

_____

(Print or type assignee's name, address and zip code) and irrevocably appoint agent to transfer this Note on the books of the Company.  The agent may substitute another to act for him.

_____

Date: _____     Your signature: _____

(Sign exactly as your name appears on the other side of this Note)

Signature Guarantee: _____

## OPTION OF HOLDER TO ELECT PURCHASE

If you wish to have this Note purchased by the Company pursuant to Section 4.12 or 4.14 of the Indenture, check the Box: ☐

If you wish to have a portion of this Note purchased by the Company pursuant to Section 4.12 or 4.14 of the Indenture, state the amount:

$

Date: _____    Your signature: _____

(Sign exactly as your name appears on the other side of this Note)

Signature
Guarantee:    _____

# SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL SECURITY[*]

The following exchanges of a part of this Global Security for an interest in another Global Security or for a Physical Security, or exchanges of a part of another Global Security or Physical Security for an interest in this Global Security, or increases for a payment of interest, have been made:

| Date of Exchange or Payment of PIK Interest | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Security | Principal Amount of this Global Security following such decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|
| | | | | |

_____

[*] This schedule should be included only if the Note is issued in global form.

## [FORM OF SERIES B NOTES]

No.                                                  $

THESE NOTES HAVE BEEN ISSUED WITH ORIGINAL ISSUE DISCOUNT ("*OID*") FOR UNITED STATES FEDERAL INCOME TAX PURPOSES. THE ISSUE PRICE, AMOUNT OF OID, ISSUE DATE AND YIELD TO MATURITY OF THESE NOTES MAY BE OBTAINED BY WRITING TO VERTIS, INC. AT 250 W. PRATT STREET, 18TH FLOOR, BALTIMORE, MD 21201.

### VERTIS, INC.

### 13.5% SENIOR PIK NOTE DUE 2014

VERTIS, INC. promises to pay to [       ] or registered assigns the principal sum of [      ] Dollars on [\_\_\_\_\_], 2014 [not later than Issue Date plus 5-1/2 years minus one day].

Interest Payment Dates: [_____ and _____]

Record Dates: [_____ and _____]

By: _____
                    Authorized Signature

By: _____
                    Authorized Signature

Dated: [          ]

CERTIFICATE OF AUTHENTICATION

This is one of the 13.5% Senior PIK Notes due 2014 referred to in the within-mentioned Indenture.

HSBC BANK USA, NATIONAL ASSOCIATION,
as Trustee

_____
By:          Authorized Signatory

Dated:

## SERIES B 13.5% SENIOR PIK NOTE DUE 2014

1.     INTEREST. VERTIS, INC., a Delaware corporation (the "***Company***", which term shall include any successor thereto in accordance with the Indenture), promises to pay, until the principal hereof is paid or made available for payment, interest (including any Accrued Bankruptcy Interest) on the principal amount set forth on the reverse side hereof at a rate of 13.5% per annum. Interest on the Notes will accrue from and including the most recent date to which interest has been paid or, if no interest has been paid, from and including the date of issuance of such Notes through but excluding the date on which interest is paid. Interest shall be payable in arrears on [_____ and _____] (each an "***Interest Payment Date***"). Prior to the Maturity Date, interest will be computed on the basis of a 360-day year of twelve full 30-day months. Interest shall be paid in-kind through the issuance of Additional Notes. On and after the Maturity Date, the Company shall pay all accrued and unpaid interest on the Notes in cash.

2.     METHOD OF PAYMENT. The Company will pay interest on the Notes (except defaulted interest) to the Persons who are registered Holders of Notes at the close of business on the [_____ and _____] immediately preceding the Interest Payment Date. Holders must surrender Notes to a Paying Agent to collect principal payments. The Company will pay principal, premium, if any, and interest (other than interest paid in-kind through the issuance of Additional Notes) in money of the United States that at the time of payment is legal tender for payment of public and private debts.

3.     PAYING AGENT AND REGISTRAR. Initially, HSBC Bank USA, National Association (the "***Trustee***") will act as Paying Agent and Registrar. The Company may change any Paying Agent, Registrar or co-Registrar without notice.

4.     INDENTURE. The Company issued the Notes under an Indenture dated as of [_____], 2008 (as such may be amended from time to time, the "***Indenture***") among the Company, the Guarantors and the Trustee. This Note is one of an issue of Notes of the Company issued under the Indenture. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939 (15 U.S. Code Sections 77aaa-77bbbb) as amended from time to time. The Notes are subject to all such terms, and Securityholders are referred to the Indenture and such Act for a statement of them. Capitalized terms used herein and not otherwise defined have the meanings set forth in the Indenture. The Notes are general unsecured obligations of the Company and are unlimited in aggregate principal amount, $200.0 million of which will be issued on the Issue Date. Prior to the Maturity Date, interest on the Notes shall be paid in-kind through the issuance of Additional Notes. Other Additional Notes may be issued from time to time after the Issue Date, subject to the limitations set forth in Section 4.9 of the Indenture.

5.     OPTIONAL REDEMPTION. The Company may redeem the Notes at its option, in whole or in part, upon not less than 30 nor more than 60 days' notice, at the following redemption prices (expressed as percentages of the principal amount thereof) if redeemed during

the twelve-month period commencing on the Issue Date and each anniversary thereof at the redemption prices set forth below:

| Year | Percentage |
|---|---|
| 2008 | 105.000% |
| 2009 | 102.000% |
| 2010 | 101.000% |
| 2011 and thereafter | 100.000% |

In addition, the Company must pay accrued and unpaid interest on the Notes redeemed.

6. NOTICE OF REDEMPTION. Notice of redemption will be mailed at least 30 days but not more than 60 days before the redemption date to each holder of Notes to be redeemed at his registered address. On and after the Redemption Date, unless the Company defaults in making the redemption payment, interest ceases to accrue on Notes or portions thereof called for redemption.

7. OFFERS TO PURCHASE. Sections 4.12 and 4.14 of the Indenture provide that after an Asset Sale, or upon the occurrence of a Change of Control, and subject to further limitations contained therein, the Company shall make an offer to purchase certain amounts of Notes in accordance with the procedures set forth in the Indenture.

8. DENOMINATIONS, TRANSFER, EXCHANGE. The Notes are in registered form without coupons in denominations of $1,000 and integral multiples of $1,000, subject to the payment of PIK Interest, in which case the aggregate principal amount of the Notes may be increased by, or PIK Notes may be issued in, an aggregate principal amount equal to the amount of PIK Interest paid by the Company for this applicable period, rounded up to the nearest whole dollar. A Holder may transfer or exchange Notes in accordance with the Indenture. The Registrar may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and to pay to it any taxes and fees required by law or permitted by the Indenture. The Registrar need not transfer or exchange any Note or portion of a Note selected for redemption, or transfer or exchange any Notes for a period of 15 days before a selection of Notes to be redeemed.

9. PERSONS DEEMED OWNERS. The registered holder of a Note may be treated as the owner of it for all purposes.

10. UNCLAIMED MONEY. If money for the payment of principal or interest remains unclaimed for two years, the Trustee or Paying Agent will pay the money back to the Company at its request. After that, Holders entitled to the money must look to the Company for payment as general creditors unless an "abandoned property" law designates another Person.

11. AMENDMENT, SUPPLEMENT, WAIVER. The Company, the Guarantors and the Trustee may, without the consent of the holders of any outstanding Notes, amend, waive or

supplement the Indenture or the Notes for certain specified purposes, including, among other things, curing ambiguities, defects or inconsistencies, maintaining the qualification of the Indenture under the Trust Indenture Act of 1939 or making any other change that does not adversely affect the rights of any Holder. Other amendments and modifications of the Indenture or the Notes may be made by the Company, the Guarantors and the Trustee with the consent of the Holders of not less than a majority in aggregate principal amount of the outstanding Notes, subject to certain exceptions requiring the consent of the Holders of the particular Notes to be affected.

12.    SUCCESSOR CORPORATION. When a successor corporation assumes all the obligations of its predecessor under the Notes and the Indenture and the transaction complies with the terms of Article V of the Indenture, the predecessor corporation will, subject to certain exceptions, be released from those obligations.

13.    DEFAULTS AND REMEDIES. Events of Default include: default in payment of principal of or premium on the Notes at maturity, or upon acceleration, redemption or otherwise; default in payment of interest on any Note for 30 days; certain defaults under other Indebtedness; failure by the Company or its Subsidiaries for 30 days after written notice to it from the Trustee or Holders of at least 25% in principal amount of the then outstanding Notes, to comply with any of the other agreements or covenants in or provisions of the Indenture or the Notes; certain events of bankruptcy or insolvency with respect to the Company and its Significant Subsidiaries; certain final judgments that remain undischarged for 60 days after being entered; any Guarantee of a Significant Subsidiary ceases to be in full force and effect; and any Guarantor that is a Significant Subsidiary shall deny its obligations under its Guarantee. If an Event of Default occurs and is continuing (and has not been waived in accordance with the provisions of the Indenture), the Trustee or the Holders of at least 25% in aggregate principal amount of the then outstanding Notes may declare all the Notes to be immediately due and payable for an amount equal to 100% of the principal amount of the Notes plus accrued interest to the date of payment, except that in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Notes become due and payable immediately without further action or notice. Holders may not enforce the Indenture or the Notes except as provided in the Indenture. The Trustee may require indemnity satisfactory to it before it enforces the Indenture or the Notes. Subject to certain limitations, Holders of a majority in principal amount of the then outstanding Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders notice of any continuing Default or Event of Default (except a Default or an Event of Default in payment of principal, premium, if any, or interest) if and so long as a committee of its Responsible Officers determines in good faith that withholding notice is in their interests. The Company must furnish an annual compliance certificate to the Trustee.

14.    RESTRICTIVE COVENANTS. The Indenture imposes certain limitations on the ability of the Company and its Subsidiaries to, among other things, pay dividends and make distributions with respect to or repurchase or otherwise acquire or retire for value any of their Equity Interests, make certain Investments, incur additional Indebtedness, enter into transactions with Affiliates, incur Liens, sell assets, merge or consolidate with any other Person and sell, lease, transfer or otherwise dispose of substantially all of their properties or assets. The limitations are subject to a number of important qualifications and exceptions. The Company must annually report to the Trustee on compliance with such limitations.

15.    TRUSTEE DEALINGS WITH COMPANY.  The Trustee, in its individual or any other capacity, may make loans to, accept deposits from, and perform services for the Company or its Affiliates, and may otherwise deal with the Company or its Affiliates, as if it were not Trustee.

16.    NO RECOURSE AGAINST OTHERS.  No past, present or future director, officer, employee, incorporator or stockholder of the Company, as such, shall have any liability for any obligations of the Company under the Notes or the Indenture or for any claim based on, in respect of or by reason of such obligations or their creation.  Each Holder by accepting a Note waives and releases all such liability.  The waiver and release are part of the consideration for the issuance of the Notes.

17.    DISCHARGE OF INDENTURE; DEFEASANCE.  The Indenture contains provisions for defeasance at any time, upon compliance with certain conditions set forth therein, of (i) the entire indebtedness of this Note or (ii) certain restrictive covenants and Events of Default with respect to this Note.

18.    AUTHENTICATION.  This Note shall not be valid until the Trustee signs the certificate of authentication on the other side of this Note.

19.    ABBREVIATIONS.  Customary abbreviations may be used in the name of a Securityholder or an assignee, such as:  TEN COM (= tenants in common), TENANT (= tenants by the entireties), JT TEN (= joint tenants with right of survivorship and not as tenants in common), CUST (= Custodian), and U/G/M/A (= Uniform Gifts to Minors Act).

20.    GOVERNING LAW.  THE INDENTURE AND THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

The provisions of this Note are expressly made subject to the more detailed provisions set forth in the Indenture, which shall for all purposes be controlling.  The Company will furnish to any Holder upon written request and without charge a copy of the Indenture.  Requests may be made to:

>VERTIS, INC.
>250 W. Pratt Street
>18th Floor
>Baltimore, MD  21201
>Attention:  Chief Financial Officer

## ASSIGNMENT FORM

If you the holder want to assign this Note, fill in the form below and have your signature guaranteed:

I or we assign and transfer this Note to

_____

(Insert assignee's social security or tax ID number)

_____

_____

_____

(Print or type assignee's name, address and zip code) and irrevocably appoint agent to transfer this Note on the books of the Company.  The agent may substitute another to act for him.

_____

Date: _____     Your signature: _____

(Sign exactly as your name appears on the other side of this Note)

Signature Guarantee: _____

## OPTION OF HOLDER TO ELECT PURCHASE

If you wish to have this Note purchased by the Company pursuant to Section 4.12 or 4.14 of the Indenture, check the Box: ☐

If you wish to have a portion of this Note purchased by the Company pursuant to Section 4.12 or 4.14 of the Indenture, state the amount:

$

Date: _____     Your signature: _____

(Sign exactly as your name appears on the other side of this Note)

Signature
Guarantee:      _____

# SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL SECURITY*

The following exchanges of a part of this Global Security for an interest in another Global Security or for a Physical Security, or exchanges of a part of another Global Security or Physical Security for an interest in this Global Security, or increases for a payment of interest, have been made:

| Date of Exchange or Payment of PIK Interest | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Security | Principal Amount of this Global Security following such decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|

---

\* This schedule should be included only if the Note is issued in global form.

## FORM OF LEGEND FOR BOOK-ENTRY SECURITIES

Any Global Security authenticated and delivered hereunder shall bear a legend (which would be in addition to any other legends required in the case of a Restricted Security) in substantially the following form:

THIS SECURITY IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITORY OR A NOMINEE OF A DEPOSITORY OR A SUCCESSOR DEPOSITORY. THIS SECURITY IS NOT EXCHANGEABLE FOR SECURITIES REGISTERED IN THE NAME OF A PERSON OTHER THAN THE DEPOSITORY OR ITS NOMINEE EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE, AND NO TRANSFER OF THIS SECURITY (OTHER THAN A TRANSFER OF THIS SECURITY AS A WHOLE BY THE DEPOSITORY TO A NOMINEE OF THE DEPOSITORY OR BY A NOMINEE OF THE DEPOSITORY TO THE DEPOSITORY OR ANOTHER NOMINEE OF THE DEPOSITORY) MAY BE REGISTERED EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE.

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION (“*DTC*”), TO ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE, OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

EXHIBIT C

# FORM OF CERTIFICATE TO BE
## DELIVERED IN CONNECTION WITH
## TRANSFERS TO NON-QIB ACCREDITED INVESTORS

[          ]

HSBC Bank USA, National Association
10 East 40th Street, 14th Floor
New York, NY 10016

Attention:  Corporate Trust Administration

Re:     VERTIS, INC. (the "*Company*") 13.5% Senior PIK Notes due 2014 (the "*Notes*")

Ladies and Gentlemen:

In connection with our proposed purchase of $[          ] aggregate principal amount of the Notes, we confirm that:

1.     We have received such information as we deem necessary in order to make our investment decision.

2.     We understand that any subsequent transfer of the Notes is subject to certain restrictions and conditions set forth in the Indenture and the undersigned agrees to be bound by, and not to resell, pledge or otherwise transfer the Notes except in compliance with, such restrictions and conditions and the Securities Act of 1933, as amended (the "*Securities Act*").

3.     We understand that the offer and sale of the Notes have not been registered under the Securities Act, and that the Notes may not be offered or sold except as permitted in the following sentence.  We agree, on our own behalf and on behalf of any accounts for which we are acting as hereinafter stated, that if we should sell or otherwise transfer any Notes prior to the date which is one year after the original issuance of the Notes, we will do so only (i) to the Company or any subsidiary thereof, (ii) inside the United States in accordance with Rule 144A under the Securities Act to a person whom we reasonably believe is a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act), (iii) inside the United States to an accredited investor (as defined below) that, prior to such transfer, furnishes (or has furnished on its behalf by a U.S. broker-dealer) to you a signed letter containing certain representations and agreements relating to the restrictions on transfer of the Notes, (iv) outside the United States in an offshore transaction in accordance with Rule 904 of Regulation S under the Securities Act, (v) pursuant to the exemption from registration provided by Rule 144 under the Securities Act (if available), or (vi) pursuant to an effective registration statement under the Securities Act, and we further agree to provide to any Person purchasing any of the Notes from us a notice advising such purchaser that resales of the Notes are restricted as stated herein.

4.     We understand that, on any proposed resale of any Notes , we will be required to furnish to you and the Company such certification, legal opinions and other information as the Company may reasonably require to confirm that the proposed sale complies with the foregoing restrictions.  We further understand that the Notes purchased by us will bear a legend to the foregoing effect.

5.     We are an institutional "accredited investor" (as defined in Rule 501(a)(1), (2), (3) or (7) of Regulation D under the Securities Act)(an "*accredited investor*") and have such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of our investment in the Notes , and we and any accounts for which we are acting are each able to bear the economic risk of our or their investment, as the case may be.

6.     We are acquiring the Notes  purchased by us for our account or for one or more accounts (each of which is an accredited investor) as to each of which we exercise sole investment discretion.

You and the Company are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby.

Very truly yours,


[Name of Transferee]


By:_____
          Authorized Signature

FORM OF CERTIFICATE TO BE DELIVERED
IN CONNECTION WITH TRANSFERS
PURSUANT TO REGULATION S

[          ]

[          ]
[          ]
[          ]

Attention:  Corporate Trust Administration

Re:     VERTIS, INC. (the "*Company*") 13.5% Senior PIK Notes due 2014 (the "*Notes*")

Dear Sirs:

In connection with our proposed sale of $ [        ] aggregate principal amount of the Notes , we confirm that such sale has been effected pursuant to and in accordance with Regulation S under the U.S. Securities Act of 1933, as amended (the "*Securities Act*"), and, accordingly, we represent that:

(1)     the offer of the Notes  was not made to a Person in the United States;

(2)     either (a) at the time the buy offer was originated, the transferee was outside the United States or we and any Person acting on our behalf reasonably believed that the transferee was outside the United States, or (b) the transaction was executed in, on or through the facilities of a designated off-shore securities market and neither we nor any Person acting on our behalf knows that the transaction has been pre-arranged with a buyer in the United States;

(3)     no directed selling efforts have been made in the United States in contravention of the requirements of Rule 903(b) or Rule 904(b) of Regulation S, as applicable;

(4)     the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act; and

(5)     we have advised the transferee of the transfer restrictions applicable to the Notes.

You and the Company are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby.  Terms used in this certificate have the meanings set forth in Regulation S.

Very truly yours,

[Name of Transferor]

By:_____
Authorized Signature

[FORM OF NOTATION ON NOTE
RELATING TO GUARANTEES]

GUARANTEES

The Guarantors (as defined in the Indenture (the "*Indenture*") referred to in the Note upon which this notation is endorsed and each hereinafter referred to as a "*Guarantor*") have unconditionally guaranteed on a senior unsecured basis (such guarantee by each Guarantor being referred to herein as the "*Guarantee*") (i) the due and punctual payment of the principal of and interest on the Notes in full when due, subject to any applicable grace period, whether at maturity, by acceleration or otherwise and interest on the overdue principal, if any, and interest on any interest, if any, to the extent lawful, of the Notes and all other obligations of the Company to the Holders all in accordance with the terms set forth in of the Indenture and (ii) in case of any extension of time of payment or renewal of any Notes or of any of such other obligations, that the same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, subject to any applicable grace period, whether at stated maturity, by acceleration or otherwise.

Each Guaranty will be limited to an amount not to exceed the maximum amount that can be guaranteed by such Guarantor after giving effect to all of its other contingent and fixed liabilities without rendering such Guaranty, as it relates to such Guarantor, voidable under applicable law relating to fraudulent conveyance or fraudulent transfer or similar laws affecting the rights of creditors generally.

The obligations of the undersigned to the Holders of the Notes and to the Trustee pursuant to the Guarantee and the Indenture are expressly set forth in Article X of the Indenture and reference is hereby made to the Indenture for the precise terms of the Guarantee and all other of the provisions of the Indenture to which this Guarantee relates.

No past, present or future stockholder, director, officer, employee or incorporator, as such, of any of the Guarantors shall have any liability for any obligation of the Guarantors under the Guarantee or the Indenture or for any claim based on, in respect of or by reason of, such obligations or their creation. Each Holder of a Note by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for the issuance of the Guarantees.

[INSERT SUBSIDIARY GUARANTOR
SIGNATURE BLOCKS AS APPROPRIATE]

## RESTRICTED CONTROL SECURITY LEGEND

Each Restricted Security shall bear a legend in substantially the following form:

THIS SECURITY (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), AND THIS SECURITY MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED OF IN THE ABSENCE OF SUCH REGISTRATION OR AN APPLICABLE EXEMPTION THEREFROM.

THE HOLDER OF THIS SECURITY AGREES FOR THE BENEFIT OF THE COMPANY THAT (A) THIS NOTE MAY BE OFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED, ONLY (I) TO THE COMPANY, (II) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, OR (III) PURSUANT TO AN EXEMPTION FROM SUCH REGISTRATION, SUBJECT TO THE COMPANY'S AND THE TRUSTEE'S RIGHT, EXERCISABLE BY EITHER, PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (III) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION TO THE COMPANY, THE TRUSTEE AND THE REGISTRAR REASONABLY SATISFACTORY TO THE COMPANY, IN EACH OF CASES (I) THROUGH (III) IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES, AND (B) THE HOLDER WILL, AND EACH SUBSEQUENT HOLDER IS REQUIRED TO, NOTIFY ANY PURCHASER OF THIS NOTE FROM IT OF THE RESALE RESTRICTIONS REFERRED TO IN (A) ABOVE.