## EXHIBIT F

## New Warrant Agreement

WARRANT AGREEMENT

between

VERTIS HOLDINGS, INC.

AS ISSUER

and

HSBC BANK USA, NATIONAL ASSOCIATION,

AS WARRANT AGENT

_____, 2008

# TABLE OF CONTENTS

Page

SECTION 1.      Certain Defined Terms ................................................................ 1

SECTION 2.      Appointment of Warrant Agent ................................................. 4

SECTION 3.      Issuance of Warrants; Form, Execution and Delivery ................ 4

    (a)      Issuance of Warrants ................................................................ 4

    (b)      Form of Warrant ...................................................................... 4

    (c)      Execution of Warrants ............................................................. 4

    (d)      Countersignature of Warrant Certificates ................................. 5

SECTION 4.      Warrant Registration ................................................................ 5

    (a)      Registration ............................................................................. 5

    (b)      Transfer or Exchange .............................................................. 5

    (c)      Valid and Enforceable ............................................................. 5

    (d)      Endorsement ........................................................................... 5

    (e)      No Service Charge ................................................................... 5

    (f)      Cancellation ............................................................................ 6

    (g)      Treatment of Holders of Warrant Certificates .......................... 6

SECTION 5.      Duration and Exercise of Warrants. .......................................... 6

    (a)      Expiration Date ....................................................................... 6

    (b)      Exercise Price ......................................................................... 6

    (c)      Valuation Event and Trigger Value .......................................... 6

    (d)      Manner of Exercise ................................................................. 7

    (e)      Cashless Exercise .................................................................... 8

    (f)      When Exercise Effective .......................................................... 8

    (g)      Delivery of Certificates, Etc .................................................... 8

    (h)      Fractional Shares .................................................................... 9

SECTION 6.      Adjustment of Exercise Price and Number of Shares Purchasable or Number of Warrants. ............................................................... 9

    (a)      Stock Dividends, Split-ups and Combinations of Shares ......... 9

    (b)      Distributions .......................................................................... 10

    (c)      Exercise Price Adjustment ...................................................... 10

    (d)      Adjustments for Mergers and Consolidations .......................... 10

(e)     Equity Incentive Plan ....................................................................... 11

(f)     Notice of Adjustment in Exercise Price or Warrant Shares ................................ 11

(g)     Other Notices ....................................................................................... 11

(h)     No Change in Warrant Terms on Adjustment .................................................. 11

(i)     Treasury Shares .................................................................................... 11

SECTION 7.     Cancellation of Warrants ............................................................ 12

SECTION 8.     Mutilated or Missing Warrant Certificates .................................... 12

SECTION 9.     Merger, Consolidation, Etc ......................................................... 12

SECTION 10.     Reservation of Shares. .............................................................. 12

(a)     Reservation of Shares ............................................................................. 12

(b)     Certain Actions ..................................................................................... 13

SECTION 11.     Notification of Certain Events; Annual Valuation ........................... 13

(a)     Corporate Action .................................................................................. 13

(b)     Annual Valuation .................................................................................. 13

SECTION 12.     Warrant Agent ......................................................................... 14

(a)     Limitation on Liability ............................................................................ 14

(b)     Instructions .......................................................................................... 14

(c)     Agents ................................................................................................ 14

(d)     Cooperation ......................................................................................... 15

(e)     Agent Only .......................................................................................... 15

(f)     Right to Counsel ................................................................................... 15

(g)     Compensation ...................................................................................... 15

(h)     Accounting .......................................................................................... 15

(i)     No Conflict .......................................................................................... 15

(j)     Resignation; Termination ........................................................................ 16

(k)     Merger, Consolidation or Change of Name of Warrant Agent ........................... 16

SECTION 13.     Warrantholder Not Deemed a Stockholder .................................... 17

SECTION 14.     Notices to Company and Warrant Agent ....................................... 17

SECTION 15.     Supplements and Amendments .................................................... 18

**TABLE OF CONTENTS**
**(continued)**

SECTION 16.    Successors ................................................................................................ 18

SECTION 17.    Termination ............................................................................................... 18

SECTION 18.    Governing Law and Consent to Forum ...................................................... 18

SECTION 19.    Waiver of Jury Trial ................................................................................... 19

SECTION 20.    Benefits of this Agreement ....................................................................... 19

SECTION 21.    Counterparts ............................................................................................. 19

SECTION 22.    Headings ................................................................................................... 19

EXHIBITS
EXHIBIT A - FORM OF WARRANT CERTIFICATE ....................................................... A-1

This WARRANT AGREEMENT (this "Agreement") is dated as of [ _____ ], 2008, between Vertis Holdings, Inc., a Delaware corporation, as issuer (the "Company"), Vertis, Inc., a Delaware corporation ("Vertis") and HSBC Bank USA, National Association, a national association, as warrant agent (the "Warrant Agent").

## W I T N E S S E T H

WHEREAS, in connection with the financial restructuring of the Company and certain of its wholly-owned subsidiaries (collectively, the "Debtors") pursuant to the Debtors' Joint Plan of Reorganization, dated July 15, 2008 (the "Plan") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101, *et seq.*, the Company has agreed to issue warrants, which, in the aggregate, are exercisable to purchase up to 1,299,435 shares ("Shares") of the Company's common stock, par value $0.001 per share (the "Common Stock"), subject to adjustment as provided herein (the "Warrants");

WHEREAS, pursuant to the Plan, the Company has agreed to contribute the Warrants to Vertis as a contribution of capital immediately prior to or on the Effective Date;

WHEREAS, pursuant to the Plan, Vertis has agreed to exchange the Warrants in partial satisfaction and discharge of Allowed Vertis Senior Subordinated Notes Claims (as defined in the Plan);

WHEREAS, the Warrant Agent, at the request of the Company, has agreed to act as the agent of the Company in connection with the issuance, transfer, exchange, replacement and exercise of the Warrants as provided herein; and

WHEREAS, the Company desires to enter into this Agreement to set forth the terms and conditions of the Warrants and the rights of the holders thereof.

NOW, THEREFORE, in consideration of the premises and mutual agreements herein set forth, the parties hereto agree as follows:

SECTION 1.   Certain Defined Terms.  Whenever used in this Agreement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Section.

"Affiliate" has the meaning set forth in the Stockholders' Agreement.

"Aggregate Exercise Price" has the meaning specified in Section 5(d) hereof.

"Agreement" has the meaning specified in the preamble hereof.

"Appraisal" has the meaning specified in Section 5(c) hereof.

"Avenue" means Avenue Capital Management II, LP and its Affiliates.

"Business Day" means any date other than a Saturday or a Sunday or a day on which commercial banking institutions in New York City, New York are authorized or required

by law to be closed; provided that, in determining the period within which certificates or Warrants are to be issued and delivered at a time when shares of Common Stock (or Other Securities) are listed or admitted to trading on any national securities exchange or in the over-the-counter market and in determining Fair Value of any securities listed or admitted to trading on any national securities exchange or in the over-the-counter market, "Business Day" shall mean any day when the principal exchange on which such securities are then listed or admitted to trading is open for trading or, if such securities are traded in the over-the counter market in the United States, such market is open for trading.

"Common Stock" has the meaning specified in the recitals hereto.

"Equity Plan" means the Vertis Holdings, Inc. Equity Incentive Plan as in effect of the date hereof.

"Effective Date" has the meaning specified in the Plan.

"Exchange Act" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

"Exercise Price" means the current Exercise Price for the Warrants as set forth in Section 5(b) hereof.

"Expiration Date" has the meaning specified in Section 5(a) hereof.

"Fair Value" means (i) with respect to Common Stock or any Other Security, in each case, if such security is listed on one or more stock exchanges, the average of the closing or last reported sales prices of a share of Common Stock or an Other Security, as the case may be, on the primary national or regional stock exchange on which such security is listed or (ii) if the Common Stock or Other Security, as the case may be, is not so listed or quoted but is traded in the over-the-counter market, the average of the closing bid and asked prices of a share of such Common Stock or Other Security, in each case for the 20 Business Days (or such lesser number of Business Days as such Common Stock (or Other Security) shall have been so listed, quoted or traded) next preceding the date of measurement; provided, however, that if no such sales price or bid and asked prices have been quoted during the preceding 20-day period or there is otherwise no established trading market for such security, then "Fair Value" means the value of such Common Stock or Other Security as determined reasonably and in good faith by the Board of Directors of the Company.

"Fully Diluted Outstanding" shall mean, when used with reference to Common Stock, at any date as of which the number of shares thereof is to be determined, all shares of Common Stock outstanding at such date and all shares of Common Stock issuable in respect of the Warrants outstanding on such date, and other options or warrants to purchase, or securities convertible into, shares of Common Stock outstanding on such date.

"Holder" means the Person in whose name a Warrant is registered as set forth in the Warrant Register maintained by the Warrant Agent.

"Indenture Trustee" means The Bank of New York, in its capacity as the indenture trustee for the holders of those certain 13.5% Senior Subordinated Notes due 2009 issued by Vertis, Inc. under the Indenture, dated as of February 28, 2003, among Vertis, Inc., the Guarantors named therein and The Bank of New York, as Trustee.

"IPO" has the meaning specified in Section 5(c).

"Joinder Agreement" has the meaning set forth in the Stockholders' Agreement.

"Organic Change" shall mean (A) any direct or indirect sale or other transfer, in one or a series of related transactions, of all or substantially all of the property and assets of the Company and its subsidiaries on a consolidated basis, (B) any merger or consolidation to which the Company is a party and which the holders of the voting securities of the Company immediately prior thereto own less than a majority of the outstanding voting securities of the surviving entity immediately following such transaction, or (C) (i) any Person other than Avenue, shall beneficially own (as defined in Rule 13d-3 under the Exchange Act) securities of the Company representing more than 50.0% of the voting securities of the Company then outstanding and (ii) Avenue shall beneficially own (as defined in Rule 13d-3 under the Exchange Act) securities of the Company representing less than 19.99% of the voting securities of the Company then outstanding. For purposes of the preceding sentence, "voting securities" shall mean securities, the holders of which are ordinarily, in the absence of contingencies, entitled to elect the corporate directors (or Persons performing similar functions).

"Other Securities" or "Other Security" means any stock (other than Common Stock) and other securities of the Company or any other Person (corporate or otherwise) that the holders of the Warrants at any time shall be entitled to receive or shall have received, upon the exercise of the Warrants, in lieu of or in addition to Common Stock, or that at any time shall be issuable or shall have been issued in exchange for or in replacement of Common Stock or Other Securities.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust or other entity.

"Plan" has the meaning specified in the recitals hereto.

"Securities Act" means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

"Senior Subordinated Note Claims" has the meaning specified in the Plan.

"Shares" has the meaning specified in the recitals hereto.

"Stockholders' Agreement" means the Stockholders' Agreement dated as of the date hereof among the Company and certain of its stockholders signatory thereto, as amended, modified, supplemented or restated from time to time.

"Trigger Value" has the meaning specified in Section 5(c) hereof.

"Valuation Event" has the meaning specified in Section 5(c) hereof.

"Warrant Agent" has the meaning specified in the preamble hereof and shall include any successor Warrant Agent hereunder.

"Warrant Agent's Principal Office" shall mean the office of the Warrant Agent set forth in Section 14 hereof (or such other office of the Warrant Agent or any successor thereto hereunder acceptable to the Company as set forth in a written notice provided to the Company and the Holders).

"Warrant Certificates" has the meaning set forth in Section 3(b) hereof.

"Warrant Register" has the meaning set forth in section 4(a) hereof.

"Warrant Shares" means the shares of Common Stock issuable upon exercise of the Warrants.

"Warrants" means the Company's warrants to purchase up to an aggregate of 1,299,435 shares of Common Stock at the Exercise Price, subject to adjustment as provided herein.

SECTION 2.  Appointment of Warrant Agent.  The Company hereby appoints the Warrant Agent to act as agent for the Company in accordance with the instructions hereinafter in this Agreement set forth; and the Warrant Agent hereby accepts such appointment, upon the terms and conditions hereinafter set forth.

SECTION 3.  Issuance of Warrants; Form, Execution and Delivery.

(a)  Issuance of Warrants.  On the date hereof, Vertis shall, pursuant to the Plan, deliver to the Company's disbursing agent under the Plan for re-distribution to the holders of Senior Subordinated Note Claims an aggregate of 1,299,435 Warrants.  Each Warrant shall entitle the Holder, subject to the satisfaction of the conditions to exercise set forth in Section 5 hereof, including the achievement of the Trigger Value upon a Valuation Event, to purchase from and after the date of issuance of Warrants to such Holder and until 5:00 p.m., New York City time, on the Expiration Date, one Share at the Exercise Price.  The number of Warrants to be issued pursuant to this Agreement, the number of Shares issuable on exercise of each Warrant and the Exercise Price are all subject to adjustment pursuant to Section 6 hereof.

(b)  Form of Warrant.  The certificates evidencing the Warrants (collectively, the "Warrant Certificates") to be delivered pursuant to this Agreement and the forms of election to exercise and of assignment to be printed on the reverse thereof shall be in substantially the form set forth in Exhibit A hereto, together with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Agreement, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with any law or with any rules made pursuant thereto or with any rules of any securities exchange or as may be determined, consistently herewith, by the officers executing such Warrant Certificates, as evidenced by their execution of the Warrant

Certificates. Each Warrant Certificate shall be dated as of the date on which it is countersigned by the Warrant Agent, as described in Section 3(d) below.

The terms and provisions contained in the Warrants shall constitute, and are hereby expressly made, a part of this Agreement. The Company and the Warrant Agent, by their execution and delivery of this Agreement, expressly agree to such terms and provisions and to be bound thereby. However, to the extent any provision of any Warrant conflicts with the provisions of this Agreement, the provisions of this Agreement shall govern and be controlling.

(c)    Execution of Warrants. Warrant Certificates shall be executed on behalf of the Company by its Chairman of the Board, Vice Chairman of the Board, President, any Vice President, General Counsel, Treasurer or Secretary, either manually or by facsimile signature printed thereon. In case any such officer of the Company whose signature shall have been placed upon any Warrant Certificate shall cease to be such officer of the Company before countersignature by the Warrant Agent or issuance and delivery thereof, such Warrant Certificate nevertheless may be countersigned by the Warrant Agent and issued and delivered with the same force and effect as though such person had not ceased to be such officer of the Company.

(d)    Countersignature of Warrant Certificates. Warrant Certificates shall be manually countersigned by an authorized signatory of the Warrant Agent and shall not be valid for any purpose unless and until so countersigned. Such manual countersignature shall constitute conclusive evidence of such authorization. The Warrant Agent is hereby authorized to countersign, in accordance with the provisions of this Section 3(d), and deliver any new Warrant Certificates, as and when directed by the Company pursuant to Section 3(a) hereof and as and when required pursuant to the provisions of Sections 4 and 8 hereof. Each Warrant Certificate shall, when manually countersigned by an authorized signatory of the Warrant Agent, entitle the registered holder thereof to exercise the rights as the holder of the number of Warrants set forth thereon, subject to the provisions of this Agreement.

(e)    Stockholders' Agreement. As a condition to exercising its rights to purchase Shares from the Company, each Holder shall (unless it is already a signatory to the Stockholders' Agreement) execute and deliver a Joinder Agreement. The Warrant Agent may conclusively rely on the Certificate of the Holder as to execution and delivery of a Joinder Agreement.

SECTION 4.    Warrant Registration.

(a)    Registration. The Warrant Certificates shall be issued in registered form only and shall be registered in the names of the record Holders to whom they are to be delivered (any such delivery to a registered Holder will be at its last address as shown on the register of the Company). The Warrant Agent shall maintain or cause to be maintained a register in which, subject to such reasonable regulations as it may prescribe, the Warrant Agent shall provide for the registration of Warrants and of transfers or exchanges of Warrant Certificates as provided in this Agreement. Such register shall be maintained at the Warrant Agent's Principal Office by the Warrant Agent (the "Warrant Register").

(b)     Transfer or Exchange.  At the option of the Holder, Warrant Certificates may be exchanged or transferred for other Warrant Certificates for a like aggregate number of Warrants, upon surrender of the Warrant Certificates to be exchanged at the Warrant Agent's Principal Office, and upon payment of the taxes and charges herein provided.  Whenever any Warrant Certificates are so surrendered for exchange or transfer, the Company shall execute, and an authorized signatory of the Warrant Agent shall manually countersign and deliver, the Warrant Certificates that the Holder making the exchange is entitled to receive.

(c)     Valid and Enforceable.  All Warrant Certificates issued upon any registration of transfer or exchange of Warrant Certificates in accordance with this Agreement shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Agreement, as the Warrant Certificates surrendered for such registration of transfer or exchange.

(d)     Endorsement.  Every Warrant Certificate surrendered for registration of transfer or exchange shall (if so required by the Company or the Warrant Agent) be duly endorsed, or be accompanied by an instrument of transfer in form reasonably satisfactory to the Company and the Warrant Agent and duly executed by the registered Holder thereof or such Holder's officer or representative duly authorized in writing.

(e)     No Service Charge.  No service charge shall be made to the Warrant Holder for any registration of transfer or exchange of Warrant Certificates.

(f)     Cancellation.  Any Warrant Certificate surrendered for registration of transfer, exchange or the exercise of the Warrants represented thereby shall, if surrendered to the Company, be delivered to the Warrant Agent, and all Warrant Certificates surrendered or so delivered to the Warrant Agent shall be promptly cancelled by the Warrant Agent.  Any such Warrant Certificate shall not be reissued and, except as provided in this Section 4 in case of an exchange or transfer, in Section 8 in case of a mutilated Warrant Certificate and in Section 5 in case of the exercise of less than all the Warrants represented thereby, no Warrant Certificate shall be issued hereunder in lieu thereof.  The Warrant Agent shall deliver to the Company from time to time or otherwise dispose of such cancelled Warrant Certificates in a reasonably prompt manner.

(g)     Treatment of Holders of Warrant Certificates.  The Company and the Warrant Agent may treat the registered Holder of a Warrant Certificate as the absolute owner thereof for any purpose and as the Person entitled to exercise the rights represented by the Warrants evidenced thereby, any notice to the contrary notwithstanding.

SECTION 5.  Duration and Exercise of Warrants.

(a)     Expiration Date.  The Warrants shall expire on the first to occur of (i) _____ 2018, which is the tenth (10th) anniversary of the Effective Date of the Plan, (ii) thirty (30) days after the occurrence of an Organic Change or (iii) thirty (30) days after an IPO (the "Expiration Date").  After the Expiration Date, the Warrants will become void and of no value.

(b)     Exercise Price. The Exercise Price for the Warrants shall be $0.01 per Share (subject to adjustment pursuant to Section 6 hereof).

(c)     Valuation Event and Trigger Value. The Warrants shall only be exercisable if (i) a Valuation Event (as defined below) has occurred, and (ii) at the time of the Valuation Event the Trigger Value (as defined below) equals or exceeds the Trigger Value Target (as defined below).

"Valuation Event" shall mean the first to occur of the following events:

(A)     an Organic Change;

(B)     an underwritten initial public offering of the Common Stock of the Company pursuant to an effective registration statement filed under the Securities Act ("IPO"); and

(C)     an appraisal, to be performed six (6) months prior to the Expiration Date, by a nationally recognized investment bank or a valuation firm selected by the Company (the "Appraisal"). The Appraisal shall calculate the value of one Fully Diluted Outstanding share of Common Stock (assuming the payment of the exercise prices for such shares).

"Trigger Value Target" shall mean $[52.72][1] per one Fully Diluted Outstanding share of Common Stock. If after the date hereof the number of outstanding shares of Common Stock is increased by a dividend or share distribution, in each case payable in shares of Common Stock, or adjusted by a split-up, combination or other reclassification of shares of Common Stock, then, in the case of such events, the Trigger Value Target will be adjusted as follows: on the day following the date fixed for the determination of holders of shares of Common Stock entitled to receive such dividend or share distribution, and in the cases of split-ups, combinations and other reclassifications, on the day following the effective date thereof: the Trigger Value Target in effect immediately prior to such action shall be adjusted to a new Trigger Value Target that bears the same relationship to the Trigger Value Target in effect immediately prior to such event as the total number of shares of Common Stock outstanding immediately prior to such action bears to the total number of shares of Common Stock outstanding immediately after such event.

"Trigger Value" means the price applicable to one Fully Diluted Outstanding share of Common Stock paid in the transaction resulting in the Organic Change, the price per share paid in the IPO or the value per share set forth in the Appraisal, as applicable. If the consideration paid in the Organic Change is other than cash or cash equivalents, the value of such consideration shall be its Fair Value as if it were an Other Security.

Promptly following a Valuation Event, the Company shall send a notice to the Holders and the Warrant Agent advising them of the occurrence of the Valuation Event, whether

---

[1] The Trigger Value Target was calculated based on an assumed Effective Date of August 27, 2008. The actual Trigger Value Target will increase in $0.0204 per day thereafter, and will be calculated based on the actual Effective Date.

the Trigger Value equals or exceeds the Trigger Value Target and the calculation of the price applicable to one Fully Diluted Outstanding share of Common Stock for purposes of making such determination.

(d) <u>Manner of Exercise</u>. Subject to the provisions of this Agreement, each Warrant shall entitle the Holder thereof to purchase from the Company (and the Company shall issue and sell to such Holder) one fully paid and nonassessable Share evidenced by the Warrant Certificate at a price equal to the Exercise Price. All or any of the Warrants represented by a Warrant Certificate may be exercised prior to the Expiration Date by the registered Holder thereof during normal business hours on any Business Day, by (i) surrendering such Warrant Certificate, and (ii) delivering the subscription form set forth therein duly executed by such Holder, and in each case by hand or by mail to the Warrant Agent at the Warrant Agent's Principal Office. Subject to Section 5(e) of this Agreement, such Warrant Certificate and subscription form shall be accompanied by payment in full in respect of each Warrant that is exercised (in the aggregate, the "Aggregate Exercise Price"), which shall be made by certified or official bank or bank cashier's check payable to the order of the Company, or by wire transfer to the Warrant Agent in immediately available funds. The Aggregate Exercise Price shall be in an amount equal to the product of the number of shares of Common Stock (without giving effect to any adjustment therein) designated in such subscription form multiplied by the Exercise Price (plus such additional consideration as may be provided herein). Upon such surrender and payment, such Holder shall thereupon be entitled to receive the number of duly authorized, validly issued, fully paid and nonassessable Shares (or Other Securities) determined as provided in Section 3, and as and if adjusted pursuant to Section 6.

(e) <u>Cashless Exercise</u>. Payment of the Aggregate Exercise Price shall be made at the option of the Holder (i) as described in Section 5(d) above, and/or (ii) by the Holder's surrender to Company of that number of Shares (or the right to receive such number of Shares) or shares of Common Stock having an aggregate Fair Value equal to or greater than the Aggregate Exercise Price, or (iii) any combination thereof, duly endorsed by or accompanied by appropriate instruments of transfer duly executed by Holder or by Holder's attorney duly authorized in writing. If Holder elects to make payments of the Aggregate Exercise Price by surrendering Shares as provided in paragraph 5(e)(ii), Holder shall tender to Company the Warrant for the amount being so exchanged, along with the notice of exercise indicating Holder's election to exchange all or part of the Warrant, and Company shall issue to Holder the number of Shares computed using the following formula:

$$X = \frac{Y(A-B)}{A}$$

Where

X = number of Shares be issued to Holder upon exercise;

Y = total number of Shares purchasable under the Warrant (or, if only a portion, the amount of Shares for which the Warrant is being exchanged);

A = Fair Value; and

B = Exercise Price.

(f)     When Exercise Effective. Each exercise of any Warrant in accordance with Section 5(d) above shall be deemed to have been effected immediately prior to the close of business on the Business Day on which the Warrant Certificate representing such Warrant, duly executed, with accompanying payment shall have been delivered as provided in Section 5(d) or Section 5(e), and at such time the Person or Persons in whose name or names the certificate or certificates for Common Stock (or Other Securities) shall be issuable upon such exercise as provided in Section 5(g) below shall be deemed to have become the holder or holders of record thereof.

(g)     Delivery of Certificates, Etc. (i) As promptly as practicable after the exercise of any Warrant, and in any event within five (5) Business Days thereafter, the Company at its expense (other than as to payment of transfer taxes which will be paid by the Holder) will cause to be issued and delivered to such Holder, or as such Holder may otherwise direct in writing (subject to Section 8 hereof),

(1)     a certificate or certificates for the number of Shares (or Other Securities) to which such Holder is entitled, and

(2)     if less than all the Warrants represented by a Warrant Certificate are exercised, a new Warrant Certificate or Certificates of the same tenor and for the aggregate number of Warrants that were not exercised, executed and countersigned in accordance with Sections 3(c) and 3(d) hereof.

(ii)     The Warrant Agent shall countersign any new Warrant Certificate, register it in such name or names as may be directed in writing by such Holder, and shall deliver it to the Person entitled to receive the same in accordance with this Section 5(g). The Company, whenever required by the Warrant Agent, shall supply the Warrant Agent with Warrant Certificates executed on behalf of the Company for such purpose.

(iii)     Upon any exercise of Warrants, the Warrant Agent shall, as promptly as practicable, advise the Treasurer of the Company or his or her designee of (i) the number of Warrants exercised, (ii) the instruction of each holder of the Warrant Certificates evidencing such Warrants with respect to delivery of the Common Stock to which such holder is entitled upon such exercise, (iii) the timing of delivery of Warrant Certificates evidencing the balance, if any, of the Warrants remaining after such exercise, and (iv) such other information as the Company shall reasonably require.

(iv)     The Company shall not be required to pay any stamp or other tax or other governmental charge required to be paid in connection with any transfer involved in the issuance of the Common Stock to a Person other than a registered holder; and in the event that any such transfer is involved, the Company shall not be required to issue or deliver any Warrant Certificate or share of Common Stock until such tax or other charge shall have been paid or it has been established to the Company's satisfaction that no such tax or other charge is due. The Warrant Agent shall have no duty or obligation under this Section 5 or any other similar

provision of this Agreement unless and until it is satisfied that all such taxes and/or governmental charges have been paid in full.

(h)     Fractional Shares. Notwithstanding any adjustment pursuant to Section 6 in the number of Shares or Other Securities purchasable upon the exercise of a Warrant, the Company shall not be required to issue Warrants to purchase fractions of Shares or Other Securities, or to issue fractions of Shares or Other Securities upon exercise of the Warrants, or to distribute certificates which evidence fractional Shares. In the event of an adjustment that results in a Warrant becoming exercisable for fractional Shares, the number of Shares or other securities subject to such Warrant shall be adjusted upward or downward to the nearest whole number of Shares or Other Securities.

SECTION 6.   Adjustment of Exercise Price and Number of Shares Purchasable or Number of Warrants.

(a)     Stock Dividends, Split-ups and Combinations of Shares. If, after the date hereof, the number of outstanding shares of Common Stock is increased by a dividend or share distribution, in each case payable in shares of Common Stock, or adjusted by a split-up, combination or other reclassification of shares of Common Stock, then, in the case of such events, the amount of Common Stock issuable for each Warrant and the Exercise Price will be adjusted as follows:  on the day following the date fixed for the determination of holders of shares of Common Stock entitled to receive such dividend or share distribution, and in the cases of split-ups, combinations and other reclassifications, on the day following the effective date thereof:  (a) the Exercise Price in effect immediately prior to such action shall be adjusted to a new Exercise Price that bears the same relationship to the Exercise Price in effect immediately prior to such event as the total number of shares of Common Stock outstanding immediately prior to such action bears to the total number of shares of Common Stock outstanding immediately after such event, and (b) the number of shares of Common Stock purchasable upon the exercise of any Warrant after such event shall be the number of shares of Common Stock obtained by multiplying the number of shares of Common Stock purchasable immediately prior to such adjustment upon the exercise of such Warrant by the Exercise Price in effect immediately prior to such adjustment and dividing the product so obtained by the Exercise Price in effect after such adjustment.

(b)     Distributions. If after the date hereof but prior to the Expiration Date the Company shall pay a dividend (other than a dividend for which an adjustment is made pursuant to Section 6(a)) or otherwise distribute to all holders of its shares of Common Stock cash, evidences of its indebtedness or assets, then the Holders shall be entitled to also receive such dividend or distribution on the date it is paid in an amount which it would have received if such Holder had exercised the Warrants held by such Holder immediately prior to the date of such dividend or distribution.

(c)     Exercise Price Adjustment. Except in the case of increases of shares covered by Section 6(a) above (as to which the adjustment provisions of such Section shall apply) or 6(e) below, whenever the number of shares of Common Stock (or Other Securities) into which a Warrant is exercisable is adjusted as provided in this Section 6, then the Exercise Price payable upon exercise of the Warrant shall simultaneously be adjusted by multiplying such

Exercise Price immediately prior to such adjustment by a fraction, the numerator of which shall be the number of shares of Common Stock (or Other Securities) into which such Warrant was exercisable immediately prior to such adjustment, and the denominator of which shall be the number of shares of Common Stock (or Other Securities) into which such Warrant was exercisable immediately thereafter.

(d)    Adjustments for Mergers and Consolidations. In case the Company, after the date hereof, shall merge or consolidate with another Person, then, in the case of any such transaction, proper provision shall be made so that, upon the basis and terms and in the manner provided in this Warrant Agreement, the Holders of the Warrants, upon the exercise thereof at any time after the consummation of such transaction (but prior to the Expiration Date and subject to the satisfaction of the requirements of Section 5(c)) shall be entitled to receive (at the aggregate Exercise Price in effect at the time of the transaction for all Common Stock or Other Securities issuable upon such exercise immediately prior to such consummation), in lieu of the Common Stock or Other Securities issuable upon such exercise prior to such consummation, the greatest amount of securities, cash or other property to which such holder would have been entitled as a holder of Common Stock (or Other Securities) upon such consummation if such Holder had exercised the Warrants held by such Holder immediately prior thereto, subject to adjustments (subsequent to such consummation) as nearly equivalent as possible to the adjustments provided for in Section 6(a).

(e)    Equity Incentive Plan. The number of Warrant Shares issuable upon exercise of each Warrant shall be increased at the time the Warrants become exercisable by an amount equal to (x) 11.5% of the number of shares of unrestricted Common Stock actually issued and not subject to subsequent forfeiture at the time the Warrants become exercisable pursuant to the Equity Incentive Plan, and (y) 11.5% of a fraction, the numerator of which is the amount of cash compensation paid pursuant to the Equity Plan, and the denominator of which shall be equal to the Fair Value of the Common Stock at the time of such payment, in each case of (x) or (y), multiplied by (z) a fraction, the numerator of which is the number of Warrant Shares to which such Warrant relates and the denominator of which is the total number of Warrant Shares to which all of the Warrants relate. The Exercise Price will not be adjusted.

(f)    Notice of Adjustment in Exercise Price or Warrant Shares. Whenever the Exercise Price and/or number of Warrant Shares issuable shall be adjusted as provided in this Section 6, the Company shall forthwith file with the Warrant Agent a statement, signed by the Chairman of the Board, Vice Chairman of the Board, the President, any Vice President, General Counsel, its Treasurer, an Assistant Treasurer, its Secretary or an Assistant Secretary, summarizing the facts requiring such adjustment, the Exercise Price that will be effective after such adjustment and the impact of such adjustment on the number and kind of securities issuable upon exercise of the Warrants. The Company shall also cause a notice setting forth any such adjustments to be sent by mail, first class, postage prepaid, to each registered Holder at its address appearing on the Warrant Register. The Warrant Agent shall have no duty with respect to any statement filed with it except to keep the same on file and available for inspection by registered holders of Warrants during reasonable business hours. The Warrant Agent shall not at any time be under any duty or responsibility to any holder of a Warrant to determine whether any facts exist that may require any adjustment to the Exercise Price or securities issuable, or with

respect to the nature or extent of any adjustment of the Exercise Price or securities issuable when made or with respect to the method employed in making such adjustment.

(g) Other Notices. In case the Company after the date hereof shall propose to take any action of the type described in subsections (a), (b), (c) or (e) of this Section 6, the Company shall give notice to the Warrant Agent and to each registered Holder in the manner set forth in subsection (f) of this Section 6, which notice shall specify, in the case of action of the type specified in subsection (b) or (c), the date on which a record shall be taken with respect to any such action. Such notice shall be given, in the case of any action of the type specified in subsection (b) or (c), at least ten (10) days prior to the record date with respect thereto. Failure to give such notice, or any defect therein, shall not affect the legality or validity of any such action. Where appropriate, such notice may be given in advance and may be included as part of a notice required to be mailed under the provisions of subsection (f) of this Section 6.

(h) No Change in Warrant Terms on Adjustment. Irrespective of any adjustments in the Exercise Price or the number of Shares (or any inclusion of Other Securities) issuable upon exercise, Warrants theretofore or thereafter issued may continue to express the same prices and number of shares as are stated in the similar Warrants issuable initially, or at some subsequent time, pursuant to this Agreement, and the Exercise Price and such number of shares issuable upon exercise specified thereon shall be deemed to have been so adjusted.

(i) Treasury Shares. Shares of Common Stock at any time owned by the Company or its subsidiaries shall not be deemed to be outstanding for the purposes of any computation under this Section 6.

SECTION 7.  Cancellation of Warrants. The Warrant Agent shall cancel all Warrant Certificates surrendered for exchange, substitution, transfer or exercise in whole or in part by such method as it shall deem fair and appropriate. Such cancelled Warrant Certificates shall thereafter be disposed of in a manner satisfactory to the Company.

SECTION 8.  Mutilated or Missing Warrant Certificates. Upon receipt by the Company and the Warrant Agent from any Holder of evidence reasonably satisfactory to them of the ownership of and the loss, theft, destruction or mutilation of such Holder's Warrant Certificate and indemnity reasonably satisfactory to them, together with such additional documentation that the Company and the Warrant Agent may require, and in case of mutilation upon surrender and cancellation thereof, the Company will execute and the Warrant Agent will countersign and deliver in lieu thereof a new Warrant Certificate of like tenor and representing an equal number of Warrants to such Holder; provided in the case of mutilation, no indemnity shall be required if such Warrant Certificate in identifiable form is surrendered to the Company or the Warrant Agent for cancellation. Upon the issuance of any new Warrant Certificate under this Section 8, the Company may require the payment of a sum sufficient to cover any stamp tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the reasonable fees and expenses of the Warrant Agent) in connection therewith. Every new Warrant Certificate executed and delivered pursuant to this Section 8 in lieu of any lost, stolen or destroyed Warrant Certificate shall be entitled to the same benefits of this Agreement equally and proportionately with any and all other Warrant Certificates, whether or not the allegedly lost, stolen or destroyed Warrant Certificate shall be at any time enforceable by

anyone. The provisions of this Section 8 are exclusive and shall preclude (to the extent lawful) all other rights or remedies with respect to the replacement of mutilated, lost, stolen or destroyed Warrant Certificates.

SECTION 9.  Merger, Consolidation, Etc.  Notwithstanding anything contained herein to the contrary, the Company will not effect a merger or consolidation prior to the Expiration Date unless, prior to the consummation of such transaction, each Person (other than the Company) that may be required to deliver any Common Stock, Other Securities, securities, cash or property upon the exercise of any Warrant as provided herein (including the satisfaction of the requirements in Section 5(c)) shall assume, by written instrument delivered to the Warrant Agent, the obligations of the Company under this Agreement and under each of the Warrants, including, without limitation, the obligation to deliver such shares of Common Stock, Other Securities, cash or property as may be required pursuant to Section 6 hereof, and shall provide for adjustments equivalent to the adjustments provided for in Section 6 hereof.

SECTION 10. Reservation of Shares.

(a)  Reservation of Shares.  The Company shall at all times reserve and keep available, free from preemptive rights, out of its authorized but unissued Common Stock (or out of authorized Other Securities), solely for issuance and delivery upon exercise of Warrants, the full number of Shares (and Other Securities) from time to time issuable upon the exercise of all Warrants. All Shares (and Other Securities) shall be duly authorized and, when issued upon such exercise, shall be duly and validly issued, and fully paid and nonassessable, and free from all taxes, liens, charges, security interests, encumbrances and other restrictions created by or through the Company.

(b)  Certain Actions.  Before taking any action that would cause an adjustment pursuant to Section 6 reducing any Exercise Price below the then par value (if any) of the Shares issuable upon exercise of the Warrants, the Company will take any reasonable corporate action that may, in the opinion of its counsel, be necessary in order that the Company may validly and legally issue fully paid and nonassessable Shares at such Exercise Price as so adjusted.

SECTION 11. Notification of Certain Events; Annual Valuation.

(a)  Corporate Action.  In the event of:

(i)  any taking by the Company of a record of the holders of any class of securities for the purpose of determining the holders thereof who are entitled to receive any dividend (excluding cash distributions made as a dividend payable out of earnings or out of surplus legally available for dividends under the laws of the jurisdiction of incorporation of the Company) or other distribution of any kind; or

(ii)  (A) any capital reorganization of the Company, (B) any reclassification of the capital shares of the Company (other than a change in par value or from par value to no par value or from no par value to par value or as a result of a split-up or combination), (C) the consolidation or merger of the Company with or into any other Person (other than a consolidation or merger in which the Company is the continuing corporation and

which does not result in any change in the shares of Common Stock) or (D) the sale or transfer of the properties and assets of the Company as, or substantially as, an entirety to another Person; or

        (iii)     the voluntary or involuntary dissolution, liquidation, or winding up of the Company,

the Company shall cause to be filed with the Warrant Agent and mailed to each Holder a notice specifying (x) the date or expected date on which any such record is to be taken for the purpose of such dividend or distribution, and the amount and character of any such dividend or distribution or if a record is not to be taken, the date as of which the holders of Common Stock of record to be entitled to such dividend or distribution are to be determined, and the amount and character of such dividend or distribution or (y) the date or expected date on which any such reorganization, reclassification, consolidation, merger, sale, transfer, dissolution, liquidation or winding up is expected to become effective, and the time, if any such time is to be fixed, as of which holders of record of Common Stock (or Other Securities) shall be entitled to exchange their shares of Common Stock (or Other Securities) for the securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, sale, transfer, exchange offer, dissolution, liquidation or winding up. Such notice shall be delivered not less than ten (10) days prior to such date therein specified. Failure to give such notice within the time provided or any defect therein shall not affect the legality or validity of any such action.

        (b)     <u>Annual Valuation</u>. The Company shall provide to each Holder that has executed a customary confidentiality agreement with the Company, reasonably acceptable to the Company, an annual valuation prepared by an appraisal or valuation firm selected by the Company, of all the Common Stock on a Fully Diluted Outstanding basis. The valuation shall include and set forth (i) the number of shares of Common Stock on a Fully Diluted Outstanding basis as of the date of the valuation, (ii) a calculation of the Trigger Value as if a Valuation Event occurred on such date of the valuation, and (iii) the positive or negative difference between the Trigger Value and such valuation. The valuation shall be delivered to such Holders annually no later than 40 days after the date the Company completes its annual audit for its fiscal year. The confidentiality agreement shall include a non-reliance acknowledgement and shall provide that the Holder will keep the valuation confidential, except for disclosure required by applicable law and disclosure to the preparer of the Holder's financial statements on a confidential basis; provided, however, nothing in the confidentiality agreement shall require the Holder to keep its financial statements confidential provided that such financial statements do not include the valuation (but such financial statements may include information derived from the valuation). The Warrant Agent shall not be responsible for delivery of the annual valuation.

        SECTION 12. <u>Warrant Agent</u>. The Warrant Agent undertakes the duties and obligations imposed by this Agreement upon the terms and conditions set forth in this Section 12.

        (a)     <u>Limitation on Liability</u>. The Warrant Agent shall not by countersigning Warrant Certificates or by any other act hereunder be accountable with respect to or be deemed to make any representations as to the validity or authorization of the Warrants or the Warrant Certificates (except as to its countersignature thereon), as to the validity, authorization or value (or kind or amount) of any Common Stock or of any Other Securities or other property delivered

or deliverable upon exercise of any Warrant, or as to the purchase price of such Common Stock, securities or other property. The Warrant Agent shall not (i) be liable for any recital or statement of fact contained herein or in the Warrant Certificates or for any action taken, suffered or omitted by the Warrant Agent in good faith in the belief that any Warrant Certificate or any other document or any signature is genuine or properly authorized, (ii) be responsible for determining whether any facts exist that may require any adjustment of the purchase price and the number of Shares purchasable upon exercise of Warrants, or with respect to the nature or extent of any such adjustments when made, or with respect to the method of adjustment employed, (iii) be responsible for any failure on the part of the Company to issue, transfer or deliver any Common Stock or Other Securities or property upon the surrender of any Warrant for the purpose of exercise or to comply with any other of the Company's covenants and obligations contained in this Agreement or in the Warrant Certificates, (iv) be liable for any action taken, suffered or omitted to be taken in connection with this Agreement, except for its own bad faith, gross negligence or willful misconduct, (v) be liable for special, indirect or consequential loss or damage of any kind whatsoever (including, but not limited to, lost profits), even if the Warrant Agent has been advised of the likelihood of such loss or damage and regardless of the form of action, or (vi) be responsible for any failure of the Company to comply with any of the covenants contained in this Agreement or in the Warrant Certificates to be complied with by the Company.

(b)     Instructions. The Warrant Agent is hereby authorized to accept advice or instructions with respect to the performance of its duties hereunder from the President and Chief Executive Officer, Treasurer, Chief Legal Officer, Secretary and Chief Financial Officer of the Company and to apply to any such officer for advice or instructions. The Warrant Agent shall be fully protected and authorized in relying upon the most recent advice or instructions received from any such officer. The Warrant Agent shall not be liable for any action taken, suffered or omitted by it in accordance with the advice or instructions of any such officer, except to the extent that such action or omission resulted directly from the Warrant Agent's gross negligence, bad faith or willful misconduct.

(c)     Agents. The Warrant Agent may execute and exercise any of the rights and powers hereby vested in it or perform any duty hereunder either itself or by or through its attorneys, agents or employees, provided reasonable care has been exercised in the selection and in the continued employment of such attorney, agent or employee. The Warrant Agent shall not be under any obligation or duty to institute, appear in, or defend any action, suit or legal proceeding in respect hereof, but this provision shall not affect the power of the Warrant Agent to take such action as the Warrant Agent may consider necessary. The Warrant Agent shall promptly notify the Company in writing of any claim made or action, suit or proceeding instituted against the Warrant Agent arising out of or in connection with this Agreement.

(d)     Cooperation. The Company will perform, execute, acknowledge and deliver or cause to be performed, executed, acknowledged and delivered all such further acts, instruments and assurances as may reasonably be required by the Warrant Agent in order to enable the Warrant Agent to carry out or perform its duties under this Agreement.

(e)     Agent Only. The Warrant Agent shall act solely as agent for the Company in accordance with the terms and conditions hereof. The Warrant Agent shall not be liable except for the performance of such duties as are specifically set forth herein, and no implied

covenants or obligations shall be read into this Agreement against the Warrant Agent, whose duties and obligations shall be determined solely by the express provisions hereof.

(f) Right to Counsel. The Warrant Agent may at any time consult with legal counsel satisfactory to it (who may be legal counsel for the Company), and the Warrant Agent shall incur no liability or responsibility to the Company or to any Warrant holder for any action taken, suffered or omitted by the Warrant Agent in good faith in reliance on the opinion or advice of such counsel.

(g) Compensation. The Company agrees to pay to the Warrant Agent reasonable compensation for all services rendered by the Warrant Agent in the execution of this Agreement, to reimburse the Warrant Agent for all expenses, taxes and governmental charges and other charges of any kind and nature incurred by the Warrant Agent in the execution of this Agreement. The Company shall indemnify the Warrant Agent against any and all losses, liabilities or expenses incurred (including reasonable counsel's fees) by it arising out of or in connection with the acceptance or administration of its duties under this Warrant Agreement, including the costs and expenses of enforcing this Agreement against the Company and defending itself against any claim (whether asserted by the Company or any holder of the Warrants or any other person) or liability in connection with the exercise or performance of any of its powers or duties hereunder, except to the extent any such loss, liability or expense may be attributable to its gross negligence, willful misconduct or bad faith.

(h) Force Majeure. The Warrant Agent shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including without limitation, acts of God; earthquakes; fires; floods; wars; civil or military disturbances; sabotage; epidemics; riots; interruptions, loss or malfunctions of utilities or computer service; acts of civil or military authority or governmental actions; it being understood that the Warrant Agent shall use its best efforts to resume performance as soon as practicable under the circumstances.

(i) Accounting. The Warrant Agent shall account promptly to the Company with respect to Warrants exercised and concurrently pay to the Company all moneys received by the Warrant Agent on behalf of the Company on the purchase of shares of Common Stock (or Other Securities) through the exercise of Warrants. The Warrant Agent shall advise the Company by telephone at the end of each day on which a payment for the exercise of Warrants is received of the amount so deposited to such account. The Warrant Agent shall as soon as practicable confirm such telephone advice to the Company in writing.

(j) No Conflict. Subject to applicable law, the Warrant Agent and any stockholder, affiliate, director, officer or employee of the Warrant Agent may buy, sell or deal in any of the Warrants or other securities of the Company or become pecuniarily interested in any transaction in which the Company may be interested, or contract with or lend money to the Company or otherwise act as fully and freely as though it were not Warrant Agent under this Agreement. Subject to applicable law, nothing herein shall preclude the Warrant Agent from acting in any other capacity for the Company or for any other Person.

(k)     <u>Resignation; Termination</u>.  The Warrant Agent may resign its duties and be discharged from all further duties and liabilities hereunder (except liabilities arising as a result of the Warrant Agent's bad faith, gross negligence or willful misconduct) after giving thirty (30) days' prior written notice to the Company.  The Company may remove the Warrant Agent upon thirty (30) days' written notice, and the Warrant Agent shall thereupon in like manner be discharged from all further duties and liabilities hereunder, except as have been caused by the Warrant Agent's bad faith, gross negligence or willful misconduct.  The Company shall cause to be mailed promptly (by first class mail, postage prepaid) to each registered holder of a Warrant at such holder's last address as shown on the register of the Company, at the Company's expense, a copy of such notice of resignation or notice of removal, as the case may be.  Upon such resignation or removal the Company shall promptly appoint in writing a new warrant agent.  If the Company shall fail to make such appointment within a period of ninety (90) days after it has been notified in writing of such resignation by the resigning Warrant Agent or after such removal, then the holder of any Warrant may apply to any court of competent jurisdiction for the appointment of a new warrant agent.  Pending appointment of a successor to the Warrant Agent, either by the Company or by such a court, the duties of the Warrant Agent shall be carried out by the Company.  Any successor warrant agent, whether appointed by the Company or by such a court, shall be (i) a Person, organized under the laws of the United States or of any state thereof and authorized under such laws to conduct a shareholder services business, be subject to supervision and examination by Federal or state authority, and have a combined capital and surplus of not less than $100,000,000 as set forth in its most recent published annual report of condition; or (ii) an affiliate of such a Person described above.  After acceptance in writing of such appointment by the new warrant agent it shall be vested with the same powers, rights, duties and responsibilities as if it had been originally named herein as the Warrant Agent, without any further assurance, conveyance, act or deed; but if for any reason it shall be necessary or expedient to execute and deliver any further assurance, conveyance, act or deed, the same shall be done at the expense of the Company and shall be legally and validly executed and delivered by the resigning or removed Warrant Agent.  Not later than the effective date of any such appointment the Company shall file notice thereof with the resigning or removed Warrant Agent and shall forthwith cause a copy of such notice to be mailed (by first class, postage prepaid) to each registered holder of a Warrant at such holder's last address as shown on the register of the Company.  Failure to give any notice provided for in this Section 12(k), or any defect in any such notice, shall not affect the legality or validity of the resignation of the Warrant Agent or the appointment of a new warrant agent, as the case may be.  The rights of the Warrant Agent under this Section 12 shall survive the Warrant Agent's resignation or removal.

(l)     <u>Merger, Consolidation or Change of Name of Warrant Agent</u>.  Any corporation into which the Warrant Agent may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Warrant Agent shall be a party, or any corporation succeeding to the all or substantially all of the agency business of the Warrant Agent or any new warrant agent shall be the successor to the Warrant Agent hereunder without the execution or filing of any document or any further act on the part of any of the parties hereto, provided that such corporation would be eligible for appointment as a successor Warrant Agent under the provisions of Section 12(k) above.  If at the time such successor to the Warrant Agent shall succeed under this Agreement, any of the Warrant Certificates shall have been countersigned but not delivered, any such successor to the Warrant Agent may adopt the countersignature of the original Warrant Agent; and if at that time

any of the Warrant Certificates shall not have been countersigned, any successor to the Warrant Agent may countersign such Warrant Certificates either in the name of the predecessor Warrant Agent or in the name of the successor Warrant Agent; and in all such cases such Warrant Certificates shall have the full force provided in the Warrant Certificates and in this Agreement. If at any time the name of the Warrant Agent shall be changed and at such time any of the Warrants shall have been countersigned but not delivered, the Warrant Agent whose name has changed may adopt the countersignature under its prior name; and if at that time any of the Warrants shall not have been countersigned, the Warrant Agent may countersign such Warrants either in its prior name or in its changed name; and in all such cases such Warrants shall have the full force provided in the Warrants and in this Agreement.

SECTION 13. <u>Warrantholder Not Deemed a Stockholder</u>. Prior to the exercise of the Warrants represented thereby no holder of a Warrant Certificate, as such, shall be entitled to any rights of a stockholder of the Company, including, but not limited to, the right to vote, to receive dividends (except as set forth in Section 6(b)) or other distributions, to exercise any preemptive right or, except as otherwise expressly provided herein, to receive notice as stockholders in respect of the meetings of stockholders or for the election of directors of the Company or any other matter.

SECTION 14. <u>Notices to Company and Warrant Agent</u>. All notices, requests or demands authorized by this Agreement to be given or made by the Warrant Agent or by any registered holder of any Warrant to or on the Company or the Warrant Agent to be effective shall be in writing (including by telecopy), and shall be deemed to have been duly given or made when delivered by hand, or two Business Days after being delivered to a recognized courier (whose stated terms of delivery are two business days or less to the destination of such notice), or five days after being deposited in the mail, or, in the case of telecopy notice, when received, addressed (until another address is filed in writing by the Company with the Warrant Agent) as follows:

> Vertis Holdings, Inc.
> 50 West Pratt Street
> Baltimore, MD 21201
> Attention: Chief Legal Officer
> Facsimile: (410) 949-2256

If the Company shall fail to maintain such office or agency or shall fail to give such notice of any change in the location thereof, presentation may be made and notices and demands may be served at the principal office of the Warrant Agent.

Any notice pursuant to this Agreement to be given by the Company or by any registered holder of any Warrant to the Warrant Agent shall be sufficiently given if sent by first-class mail, postage prepaid, addressed (until another address is filed in writing by the Warrant Agent with the Company), as follows:

> HSBC Bank USA, National Association
> 10 East 40th Street, 14th Floor
> New York, NY 10016

Attention: Vivian Ly
Facsimile: (212) 525-1300

SECTION 15. Supplements and Amendments. The Company and the Warrant Agent may from time to time supplement or amend this Agreement (a) without the approval of any holders of Warrants in order to cure any ambiguity, manifest error or other mistake in this Agreement, or to correct or supplement any provision contained herein that may be defective or inconsistent with any other provision herein, or to make any other provisions in regard to matters or questions arising hereunder that the Company and the Warrant Agent may deem necessary or desirable and that shall not adversely affect, alter or change the interests of the holders of the Warrants or (b) with the prior written consent of holders of the Warrants exercisable for a majority of the Shares then issuable upon exercise of the Warrants then outstanding; provided that each amendment or supplement that decreases the Warrant Agent's rights or increases its duties and responsibilities hereunder shall also require the prior written consent of the Warrant Agent. In executing any such supplement or amendment, the Warrant Agent shall be entitled to receive and shall be fully protected in relying upon an opinion of counsel stating that such supplement or amendment is permitted or authorized by this Agreement. The Warrant Agent may, but shall not be obligated to, enter into any such supplement or amendment which affects the Warrant Agent's own rights, duties or immunities under this Agreement. Notwithstanding the foregoing, the consent of each holder of a Warrant affected shall be required for any amendment pursuant to which the Exercise Price would be increased (other than pursuant to adjustments provided herein), the number of Shares (or Other Securities) purchasable upon exercise of Warrants would be decreased (other than pursuant to adjustments provided herein) or the Expiration Date shall be changed to an earlier date. Upon execution and delivery of any amendment pursuant to this Section 15, such amendment shall be considered a part of this Agreement for all purposes and every holder of a Warrant Certificate theretofore or thereafter countersigned and delivered hereunder shall be bound thereby.

SECTION 16. Successors. Subject to Section 9, all the covenants and provisions of this Agreement by or for the benefit of the Company or the Warrant Agent shall bind and inure to the benefit of their respective successors and assigns hereunder.

SECTION 17. Termination. This Agreement shall terminate on the Expiration Date. Notwithstanding the foregoing, this Agreement will terminate on any earlier date when all Warrants have been exercised. The provisions of Section 12 shall survive such termination.

SECTION 18. Governing Law and Consent to Forum. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED WITHIN THE STATE OF NEW YORK WITHOUT REGARD TO SUCH STATE'S CHOICE OF LAW PROVISIONS WHICH WOULD REQUIRE THE APPLICATION OF THE LAW OF ANY OTHER JURISDICTION. EACH OF THE COMPANY AND THE WARRANT AGENT HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY NEW YORK STATE COURT SITTING IN THE CITY OF NEW YORK OR ANY FEDERAL COURT SITTING IN THE CITY OF NEW YORK IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, AND EACH IRREVOCABLY ACCEPTS FOR ITSELF AND IN RESPECT

OF ITS PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY OBJECTION BASED ON INCONVENIENT FORUM. NOTHING HEREIN SHALL AFFECT THE RIGHT OF ANY PERSON TO SERVE PROCESS IN ANY MANNER PERMITTED BY LAW OR TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST THE COMPANY IN ANY OTHER JURISDICTION.

SECTION 19. Waiver of Jury Trial. The parties hereto waive all right to trial by jury in any action or proceeding to enforce or defend any rights hereunder.

SECTION 20. Benefits of this Agreement. Nothing in this Agreement shall be construed to give to any Person other than the Company, the Warrant Agent and the registered holders of the Warrants any legal or equitable right, remedy or claim under this Agreement, and this Agreement shall be for the sole and exclusive benefit of the Company, the Warrant Agent and the registered holders of the Warrants.

SECTION 21. Counterparts. This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original, and such counterparts shall together constitute but one and the same instrument.

SECTION 22. Headings. The headings of sections of this Agreement have been inserted for convenience of reference only, are not to be considered a part hereof and in no way modify or restrict any of the terms or provisions hereof.

*[signature page follows]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Warrant Agreement to be executed and delivered as of the day and year first above written.

VERTIS HOLDINGS, INC.

By: _____
      Name:
      Title:


VERTIS, INC.

By: _____
      Name:
      Title:


HSBC BANK USA, NATIONAL ASSOCIATION

By: _____
      Name:
      Title:

EXHIBIT A


FORM OF WARRANT CERTIFICATE

## [FORM OF FACE OF WARRANT CERTIFICATE]

Warrant No.                                          Number of Warrants: [            ]

Exercisable During the Period that Commences at 9:00 a.m., New York City time, on [_____], 2008 and Terminates at 5:00 p.m., New York City time, on [_____], 2018 except as provided below.

## WARRANT TO PURCHASE

## COMMON STOCK, PAR VALUE $0.001 PER SHARE,

## OF

## VERTIS HOLDINGS, INC.

This certifies that _____ or registered assigns, is the registered owner of the number of WARRANTS set forth above (the "*Warrants*"), each of which represents the right, subject to the provisions of the Warrant Agreement (as defined below) at any time after [_____], 2008 (the "*Original Issue Date*") and on or before 5:00 p.m., New York City time, on the Expiration Date (as defined in the Warrant Agreement), but subject to the achievement of the Trigger Value upon the occurrence of a Valuation Event (as defined in the Warrant Agreement), to purchase from Vertis Holdings, Inc., a Delaware corporation (the "*Company*"), at the price per share of $0.01 (the "*Exercise Price*"), one share of Common Stock, $0.001 par value, of the Company as such stock was constituted as of the Original Issue Date, subject to adjustment as provided in the Warrant Agreement hereinafter referred to, upon surrender hereof, with the subscription form on the reverse hereof duly executed, by hand or by mail to HSBC Bank USA, National Association, 10 East 40th Street, 14th Floor, New York, NY 10016, or to any successor thereto, as the warrant agent under the Warrant Agreement, at the office of such successor maintained for such purpose (any such warrant agent being herein called the "*Warrant Agent*"), and simultaneous payment in full (by certified or official bank or bank cashier's check payable to the order of the Company, or by wire transfer of immediately available funds to an account designated by the Warrant Agent for the benefit of the Company or, in the case of cashless exercise, by surrendering shares of Common Stock in accordance with the proceedings and calculations prescribed in the Warrant Agreement) of the Exercise Price in respect of each Warrant represented by this Warrant Certificate that is so exercised, all subject to the terms and conditions hereof and of the Warrant Agreement.

Upon any partial exercise of the Warrants represented by this Warrant Certificate, there shall be issued to the holder hereof a new Warrant Certificate representing the Warrants that were not exercised.

No fractional shares may be issued upon the exercise of rights to purchase hereunder, and as to any fraction of a share otherwise issuable, such fraction shall be adjusted upward or downward to the nearest whole number of shares, as provided in the Warrant Agreement.

This Warrant Certificate is issued under and in accordance with a Warrant Agreement, dated as of [_____], 2008 (the "*Warrant Agreement*"), between the Company and the Warrant Agent, and is subject to the terms and provisions contained therein. The Warrant Agreement is hereby incorporated by reference in and made a part of this instrument and is hereby referred to for a description of the rights, limitation of rights, obligations, duties and immunities thereunder of the Warrant Agent, the Company and the registered holders of the Warrants. The holder of this Warrant Certificate consents to all terms and provisions of the Warrant Agreement by acceptance hereof. Copies of the Warrant Agreement are on file at the above-mentioned office of the Warrant Agent and may be obtained by writing to the Warrant Agent.

REFERENCE IS HEREBY MADE TO THE FURTHER PROVISIONS OF THIS WARRANT SET FORTH ON THE REVERSE HEREOF, WHICH FURTHER PROVISIONS SHALL FOR ALL PURPOSES HAVE THE SAME EFFECT AS IF SET FORTH BELOW.

This Warrant Certificate shall not be valid unless countersigned by the Warrant Agent.

Dated: [          ], 2008

VERTIS HOLDINGS, INC.

By: _____
     Name:
     Title:

Countersigned:

HSBC BANK USA, NATIONAL ASSOCIATION

By: _____
     Name:
     Title:

NY2:\1868159\19\141HB19!.DOC\79081.0003

# REVERSE OF WARRANT CERTIFICATE

## VERTIS HOLDINGS, INC.

The transfer of this Warrant Certificate and all rights hereunder is registrable by the registered holder hereof, in whole or in part, on the register of the Company upon surrender of this Warrant Certificate at the office or agency of the Company or the office of the Warrant Agent maintained for such purpose at 10 East 40th Street, 14th Floor, New York, NY 10016, duly endorsed or accompanied by a written instrument of transfer duly executed and in form satisfactory to the Company and the Warrant Agent, by the registered holder hereof or his attorney duly authorized in writing and upon payment of any necessary transfer tax or other governmental charge imposed upon such transfer or registration thereof. Upon any partial transfer the Company will cause to be delivered to such transferring holder a new Warrant Certificate or Certificates with respect to any portion not so transferred.

This Warrant Certificate may be exchanged at the office or agency of the Company or the office of the Warrant Agent maintained for such purpose at 10 East 40th Street, 14th Floor, New York, NY 10016, for Warrant Certificates representing the same aggregate number of Warrants, each new Warrant Certificate to represent such number of Warrants as the holder hereof shall designate at the time of such exchange.

Prior to the exercise of the Warrants represented hereby, the holder of this Warrant Certificate, as such, shall not be entitled to any rights of a stockholder of the Company, including, but not limited to, the right to vote, to receive dividends or other distributions, to exercise any preemptive right or to receive any notice of meetings of stockholders, and shall not be entitled to receive notice of any proceedings of the Company except as expressly provided in the Warrant Agreement. Nothing contained herein shall be construed as imposing any liabilities upon the holder of this Warrant Certificate to purchase any securities or as a stockholder of the Company, whether such liabilities are asserted by the Company or by creditors or stockholders of the Company or otherwise.

This Warrant Certificate shall be void and all rights represented hereby shall cease unless exercised before the close of business on [_____], 2018 or, if earlier, as provided in the Warrant Agreement.

This Warrant Certificate shall not be valid for any purpose until it shall have been manually countersigned by an authorized signatory of the Warrant Agent.

The Company and Warrant Agent may deem and treat the registered holder hereof as the absolute owner of this Warrant Certificate (notwithstanding any notation of ownership or other writing hereon made by anyone) for the purpose of any exercise hereof and for all other purposes, and neither the Company nor the Warrant Agent shall be affected by any notice to the contrary.

In the event of any conflict or inconsistency between this Warrant Certificate and the Warrant Agreement, the Warrant Agreement shall control.

NY2:\1868159\19\141HB19!.DOC\79081.0003

# SUBSCRIPTION FORM

## (To be executed only upon exercise of warrant)

To:   VERTIS HOLDINGS, INC., a Delaware corporation
      HSBC BANK USA, NATIONAL ASSOCIATION, as Warrant Agent

Attention: _____

       The undersigned (i) irrevocably exercises [   ] Warrants represented by the enclosed Warrant Certificate, (ii) purchases one share of common stock, par value $0.001 per share, of Vertis Holdings, Inc. (before giving effect to the adjustments provided in the Warrant Agreement referred to in the enclosed Warrant Certificate) for each Warrant so exercised and herewith makes payment in full of the purchase price of $0.01 per share, in respect of each Warrant so exercised as provided in the Warrant Agreement (such payment being by certified or official bank or bank cashier's check payable to the order of Vertis Holdings, Inc., or by wire transfer of immediately available funds to an account designated by the Warrant Agent for the benefit of Vertis Holdings, Inc., or, if the box below is checked, by a cashless exercise, as provided in the Warrant Agreement referred to in the enclosed Warrant Certificate), all on the terms and conditions specified in the enclosed Warrant Certificate and the Warrant Agreement, (iii) surrenders this Warrant Certificate and all right, title and interest therein to Vertis Holdings, Inc. and (iv) directs that the securities or other property deliverable upon the exercise of such Warrants be registered or placed in the name and at the address specified below and delivered thereto.

Dated: [      ], 20[  ]

 

_____
(Owner)*

_____
(Signature of Authorized Representative)

_____
(Street Address)

_____
(City) (State) (Zip Code)

Check this box [  ] if cashless exercise is being elected for payment of the Exercise Price.

A-4

Securities or property to be
issued and delivered to:

_____
Signature Guaranteed**

Please insert social
security or other
identifying number
_____

Name _____

Street Address _____

City, State and Zip Code _____

 

 

       \*The signature must correspond with the name as written upon the face of the within Warrant Certificate in every particular, without alteration or enlargement or any change whatsoever.

       **\*\*The signature must be guaranteed by a Securities Transfer Association medallion program ("stamp") participant or an institution receiving prior approval from the Warrant Agent.**

A-5

## FORM OF ASSIGNMENT

FOR VALUE RECEIVED, the undersigned registered holder of the within Warrant Certificate hereby sells, assigns and transfers unto the Assignee named below all of the rights of the undersigned under the within Warrant Certificate, with respect to the number of warrants set forth below:

| Name of Assignee | Address | No. of Warrants |
|---|---|---|
|  |  |  |

Please insert social
security or other
identifying number
of Assignee

_____

and does hereby irrevocably constitute and appoint _____ attorney to make such transfer on the books of Vertis Holdings, Inc. maintained for the purpose, with full power of substitution in the premises.

Dated: [          ], 20[   ]

Name _____*

Signature of Authorized
Representative _____

Signature Guaranteed _____**

    * The signature must correspond with the name as written upon the face of the within Warrant Certificate in every particular, without alteration or enlargement or any change whatsoever.

    **The signature must be guaranteed by a Securities Transfer Association medallion program ("stamp") participant or an institution receiving prior approval from the Warrant Agent.**