# EXHIBIT G

**Equity Incentive Plan**

# VERTIS HOLDINGS, INC. EQUITY INCENTIVE PLAN

1. **Establishment, Purpose and Types of Awards**

VERTIS HOLDINGS, INC., a Delaware corporation (the "*Company*"), hereby establishes the VERTIS HOLDINGS, INC. EQUITY INCENTIVE PLAN (the "*Plan*"). The purpose of the Plan is to promote the long-term growth and profitability of the Company by (i) providing key people with incentives to improve stockholder value and to contribute to the growth and financial success of the Company through their future services, and (ii) enabling the Company to attract, retain and reward the best-available persons.

The Plan permits the granting of stock options (including incentive stock options qualifying under Code section 422 and nonstatutory stock options), stock appreciation rights, restricted or unrestricted stock awards, phantom stock, performance awards, other stock-based awards, or any combination of the foregoing.

2. **Definitions**

Under this Plan, except where the context otherwise indicates, the following definitions apply:

(a) "*Administrator*" means the Board or the committee(s) or officer(s) appointed by the Board that have authority to administer the Plan as provided in Section 3 hereof.

(b) "*Affiliate*" means any entity, whether now or hereafter existing, which controls, is controlled by, or is under common control with, the Company (including, but not limited to, joint ventures, limited liability companies, and partnerships). For this purpose, "*control*" shall mean ownership of 50% or more of the total combined voting power or value of all classes of stock or interests of the entity, or the power to direct the management and policies of the entity, by contract or otherwise.

(c) "*Award*" means any stock option, stock appreciation right, stock award, phantom stock award, performance award, or other stock-based award.

(d) "*Board*" means the Board of Directors of the Company immediately following the effective time of the merger between Victory Merger Sub, LLC, a Delaware limited liability company ("*Victory Merger Sub*"), and ACG Holdings, Inc., a Delaware corporation ("*ACG*"), pursuant to the terms of that certain Agreement and Plan of Merger dated May 22, 2008 (the "*Merger Agreement*") by and among the Company, Vertis, Inc., a Delaware corporation, Victory Merger Sub and ACG, and as the Board of Directors of the Company may be constituted from time to time thereafter.

(e) "*Change in Control*" means: a (i) Change in Ownership of the Company, or (ii) Change in the Ownership of Assets of the Company, as described herein.

(i) A *Change in Ownership of the Company* shall occur on the date that (A) any one Person acquires, or Persons Acting as a Group acquire, beneficial ownership (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended) of the stock of the Company that, together with the stock held by such Person or Group, constitutes more than 50% of the total fair market value or total voting power of the stock of such Company; and (B) Avenue Capital Management II, LP and its associated affiliates beneficially own (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended) stock of the Company representing less than 19.99% of the then outstanding voting stock of the Company. However, if any one Person is, or Persons Acting as a Group are, considered to own more than 50% of the total fair market value or total voting power of the stock of the Company, the acquisition of additional stock by the same Person or Persons Acting as a Group is not considered to cause a Change in Ownership of the Company. An increase in the percentage of stock owned by any one Person, or Persons

Acting as a Group, as a result of a transaction in which the Company acquires its stock in exchange for property will be treated as an acquisition of stock. Notwithstanding the foregoing, the acquisition of additional stock by the Avenue Investments, L.P., CDP Global Opportunities Fund, L.P., Avenue International Master, L.P., Avenue Special Situations Fund IV, L.P., Avenue Special Situations Fund V, L.P. or their associated affiliates (other than the "portfolio companies" controlled or managed by them) is not considered to cause a Change in Ownership of the Company. Notwithstanding the foregoing, a Change in Ownership of the Company shall occur on the date of any merger or consolidation to which the Company is a party and which the holders of the Company's voting stock immediately prior thereto own less than a majority of the outstanding voting stock of the surviving entity immediately following such transaction.

(ii) A *Change in the Ownership of Assets of the Company* shall occur on the date that any one Person acquires, or Persons Acting as a Group acquire (or has or have acquired during the 12-month period ending on the date of the most recent acquisition by such Person or Persons), in a sale or other transfer, in one or a series of transactions, of all or substantially all of the assets of the Company and its subsidiaries on a consolidated basis, assets from the Company and its subsidiaries on a consolidated basis that have a total gross fair market value equal to or more than 66-2/3% of the total gross fair market value of all of the assets of the Company and its subsidiaries on a consolidated basis immediately before such acquisition or acquisitions. For this purpose, gross fair market value means the value of the assets of the Company and its subsidiaries on a consolidated basis, or the value of the assets being disposed of, determined without regard to any liabilities associated with such assets.

(iii) A *Person* means any individual, entity or group within the meaning of Section 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended, other than employee benefit plans sponsored or maintained by the Company and by entities controlled by the Company or an underwriter of the Common Stock in a registered public offering.

(iv) Persons will be considered to be *Persons Acting as a Group (or Group)* if they are owners of a corporation or other entity that enters into a merger, consolidation, purchase or acquisition of stock, or similar business transaction with the Company. If a Person owns stock in both corporations that enter into a merger, consolidation, purchase or acquisition of stock, or similar transaction, such shareholder is considered to be acting as a Group with other shareholders only with respect to the ownership in that corporation or other entity before the transaction giving rise to the change and not with respect to the ownership interest in the other corporation. Persons will not be considered to be acting as a Group solely because they purchase assets of the same corporation at the same time or purchase or own stock of the same corporation or other entity at the same time, or as a result of the same public offering.

(v) A Change in Control shall not include a transfer to a related person as described in Section 409A or a public offering of capital stock of the Company.

(vi) Notwithstanding the foregoing, for purposes of any Award or subplan that constitutes a "nonqualified deferred compensation plan," within the meaning of Section 409A, the Administrator, in its sole discretion, may specify a different definition of Change in Control in order to comply with the provisions of Section 409A.

(f) *"Code"* means the Internal Revenue Code of 1986, as amended.

(g) *"Common Stock"* means shares of common stock of the Company, par value $0.001 per share.

(h) *"Fair Market Value"* means, with respect to a share of the Company's Common Stock for any purpose on a particular date, the value determined by the Administrator. However, if the Common Stock is registered under Section 12(b) or 12(g) of the Securities Exchange Act of 1934, as amended, and listed for trading on a national exchange or market, *"Fair Market Value"* means, as applicable, (i) the closing price on the relevant date quoted on the New York Stock

Exchange, the American Stock Exchange, the Nasdaq Global Select Market, or the Nasdaq Global Market; (ii) the last sale price on the relevant date quoted on the Nasdaq Capital Market; (iii) the average of the high bid and low asked prices on the relevant date quoted on the Nasdaq OTC Bulletin Board Service or by the National Quotation Bureau, Inc. or a comparable service as determined in the Administrator's discretion; or (iv) if the Common Stock is not quoted by any of the above, the average of the closing bid and asked prices on the relevant date furnished by a professional market maker for the Common Stock, or by such other source, selected by the Administrator. If no public trading of the Common Stock occurs on the relevant date but the shares are so listed, then Fair Market Value shall be determined as of the next preceding date on which trading of the Common Stock does occur.

(i) *"Grant Agreement"* means a written document memorializing the terms and conditions of an Award granted pursuant to the Plan and which shall incorporate the terms of the Plan.

(j) *"Section 409A"* means Code section 409A and the Treasury Regulations and other applicable guidance thereunder.

3. **Administration**

(a) *Administration of the Plan.* The Plan shall be administered by the Board or by such committee or committees as may be appointed by the Board from time to time. To the extent allowed by applicable state law, the Board by resolution may authorize an officer or officers to grant Awards (other than stock awards) to other officers and employees of the Company and its Affiliates, and, with respect to the grant of an award only, such officer or officers shall be the Administrator.

(b) *Powers of the Administrator.* The Administrator shall have all the powers vested in it by the terms of the Plan, such powers to include authority, in its sole and absolute discretion, to grant Awards under the Plan, prescribe Grant Agreements evidencing such Awards and establish programs for granting Awards.

The Administrator shall have full power and authority in its sole and absolute discretion to take all other actions necessary to carry out the purpose and intent of the Plan, including, but not limited to, the authority to: (i) determine the eligible persons to whom, and the time or times at which Awards shall be granted; (ii) determine the types of Awards to be granted; (iii) determine the number of shares to be covered by or used for reference purposes for each Award; (iv) impose such terms, limitations, restrictions and conditions upon any such Award as the Administrator shall deem appropriate; (v) modify, amend, extend or renew outstanding Awards (to the extent doing so will not result in the imposition of taxes under Section 409A), or accept the surrender of outstanding Awards and substitute new Awards (provided however, that, except as provided in Section 6, 7(c) or 7(j) of the Plan, any modification that would materially adversely affect any outstanding Award shall not be made without the consent of the holder); (vi) accelerate or otherwise change the time in which an option or stock appreciation right may be exercised and to waive or accelerate the lapse, in whole or in part, of any restriction or condition with respect to such Award (to the extent doing so will not result in the imposition of taxes under Section 409A), including, but not limited to, any restriction or condition with respect to the vesting or exercisability of an Award following termination of any grantee's employment or other relationship with the Company; (vii) establish objectives and conditions, if any, for earning Awards and determining whether Awards will be paid with respect to a performance period; and (viii) for any purpose, including but not limited to, qualifying for preferred tax treatment under foreign tax laws or otherwise complying with the regulatory requirements of local or foreign jurisdictions, to establish, amend, modify, administer or terminate sub-plans, and prescribe, amend and rescind rules and regulations relating to such sub-plans.

The Administrator shall have full power and authority, in its sole and absolute discretion, to administer, construe and interpret the Plan, Grant Agreements and all other documents relevant to the Plan and Awards issued thereunder, to establish, amend, rescind and interpret such rules, regulations, agreements, guidelines and instruments for the administration of the Plan and for the conduct of its business as the Administrator deems necessary or advisable, and to correct any defect, supply any omission or reconcile any inconsistency in the Plan or in any Award in the manner and to the extent the Administrator shall deem it desirable to carry it into effect.

(c) *Non-Uniform Determinations.* The Administrator's determinations under the Plan (including without limitation, determinations of the persons to receive Awards, the form, amount and timing of such Awards, the terms and provisions of such Awards and the Grant Agreements evidencing such Awards) need not be uniform and may be made by the Administrator selectively among persons who receive, or are eligible to receive, Awards under the Plan, whether or not such persons are similarly situated.

(d) *Limited Liability.* To the maximum extent permitted by law, no member of the Administrator shall be liable for any action taken or decision made in good faith relating to the Plan or any Award thereunder.

(e) *Indemnification.* To the maximum extent permitted by law and by the Company's charter and by-laws, the members of the Administrator shall be indemnified by the Company in respect of all their activities under the Plan.

(f) *Effect of Administrator's Decision.* All actions taken and decisions and determinations made by the Administrator on all matters relating to the Plan pursuant to the powers vested in it hereunder shall be in the Administrator's sole and absolute discretion and shall be conclusive and binding on all parties concerned, including the Company, its stockholders, any participants in the Plan and any other employee, consultant, or director of the Company, and their respective successors in interest.

## 4. Shares Available for the Plan

Subject to adjustments as provided in Section 7(c) of the Plan, the shares of Common Stock that may be issued with respect to Awards granted under the Plan shall not exceed an aggregate of 1,111,111 shares of the Common Stock, which amount shall be increased by an amount equal to 10% of the number of shares of Common Stock actually issued pursuant to the exercise of the New Warrants (as defined in the Company's Disclosure Statement dated June 11, 2008 filed under Chapter 11 of the Bankruptcy Code). The New Warrants initially provide for the issuance of up to 1,299,435 shares of Common Stock, subject to the adjustments set forth in the New Warrants. The Company shall reserve such number of shares for Awards under the Plan, subject to adjustments as provided in Section 7(c) of the Plan. If any Award, or portion of an Award, under the Plan expires or terminates unexercised, becomes unexercisable, or is forfeited or otherwise terminated, surrendered or canceled as to any shares, the shares subject to such Award and the forfeited shares shall thereafter be available for further Awards under the Plan; provided, however, that any such shares that are surrendered to or repurchased or withheld by the Company in connection with any Award or that are otherwise forfeited after issuance shall not be available for purchase pursuant to incentive stock options intended to qualify under Code section 422. Notwithstanding the foregoing, shares of Common Stock that are exchanged by a participant in the Plan or withheld by the Company as full or partial payment in connection with any Award under the Plan, as well as any shares of Common Stock exchanged by a participant or withheld by the Company to satisfy the tax withholding obligations related to any Award under the Plan, shall not be available for subsequent Award under the Plan.

## 5. Participation

Participation in the Plan shall be open to all employees, officers, and directors of, and other individuals providing bona fide services to or for, the Company, or of any Affiliate of the Company, as may be selected by the Administrator from time to time. The Administrator may also grant Awards to individuals in connection with hiring, retention or otherwise, prior to the date the individual first performs services for the Company or an Affiliate, provided that such Awards shall not become vested or exercisable, and no shares shall be issued to such individual, prior to the date the individual first commences performance of such services.

## 6. Awards

The Administrator, in its sole discretion, establishes the terms of all Awards granted under the Plan. Awards may be granted individually or in tandem with other types of Awards, concurrently with or with respect to outstanding Awards. All Awards are subject to the terms and conditions provided in the Grant Agreement. The Administrator may permit or require in its sole discretion a recipient of an Award to defer such individual's receipt of the payment of cash or the delivery of Common Stock that would otherwise be due to such individual by virtue of the issuance of, exercise of, payment of, or lapse or waiver of restrictions respecting, any Award in accordance with a separate deferred compensation arrangement with terms and conditions established by the Administrator in its sole discretion.

(a) *Stock Options.* The Administrator may from time to time grant to eligible participants Awards of incentive stock options (as that term is defined in Code section 422) or nonstatutory stock options; provided, however, that Awards of incentive stock options shall be limited to employees of the Company or of any current or hereafter existing "*parent corporation*" or "*subsidiary corporation*," (as defined in Code sections 424(e) and (f), respectively) of the Company and any other individuals who are eligible to receive incentive stock options under the provisions of Code section 422. Options must have an exercise price at least equal to Fair Market Value as of the date of grant. No stock option shall be an incentive stock option unless so designated by the Administrator at the time of grant or in the Grant Agreement evidencing such stock option.

(b) *Stock Appreciation Rights.* The Administrator may from time to time grant Stock Appreciation Rights ("*SAR*") to eligible participants. A SAR entitles the grantee to receive, subject to the provisions of the Plan and the Grant Agreement, a payment having an aggregate value equal to the product of (i) the excess of (A) the Fair Market Value on the exercise date of one share of Common Stock over (B) the base price per share specified in the Grant Agreement, times (ii) the number of shares specified by the SAR, or portion thereof, which is exercised. The base price per share specified in the Grant Agreement shall not be less than the Fair Market Value on the grant date. Payment by the Company of the amount receivable upon any exercise of a SAR may be made by the delivery of Common Stock or cash, or any combination of Common Stock and cash, as determined in the sole discretion of the Administrator. If, upon settlement of the exercise of a SAR a grantee is to receive a portion of such payment in shares of Common Stock, the number of shares shall be determined by dividing such portion by the Fair Market Value of a share of Common Stock on the exercise date. No fractional shares shall be used for such payment and the Administrator shall determine whether cash shall be given in lieu of such fractional shares or whether such fractional shares shall be eliminated.

(c) *Stock Awards.* The Administrator may from time to time grant Awards of restricted or unrestricted Common Stock to eligible participants in such amounts, on such terms and conditions, and for such consideration, including no consideration or such minimum consideration as may be required by law, as it shall determine. A stock Award may be paid in Common Stock, in cash, or in a combination of Common Stock and cash, as determined in the sole discretion of the Administrator.

(d) *Phantom Stock.* The Administrator may from time to time grant Awards to eligible participants denominated in stock-equivalent units ("*phantom stock*") in such amounts and on such terms and conditions as it shall determine. Phantom stock units granted to a participant shall be credited to a bookkeeping reserve account solely for accounting purposes and shall not require a segregation of any of the Company's assets. An Award of phantom stock may be settled in Common Stock, in cash, or in a combination of Common Stock and cash, as determined in the sole discretion of the Administrator. Except as otherwise provided in the applicable Grant Agreement, the grantee shall not have the rights of a stockholder with respect to any shares of Common Stock represented by a phantom stock unit solely as a result of the grant of a phantom stock unit to the grantee.

(e) *Performance Awards.* The Administrator may, in its discretion, grant performance awards which become payable on account of attainment of one or more performance goals established by the Administrator. Performance awards may be paid by the delivery of Common Stock or cash, or any combination of Common Stock and cash, as determined in the sole discretion of the Administrator. Performance goals established by the Administrator may be based on such business criteria of the Company or an Affiliate as selected by the Administrator that apply to an individual or group of individuals, a business unit, or the Company or an Affiliate as a whole, over such performance period as the Administrator may designate.

(f) *Other Stock-Based Awards.* The Administrator may from time to time grant other stock-based awards to eligible participants in such amounts, on such terms and conditions, and for such consideration, including no consideration or such minimum consideration as may be required by law, as it shall determine. Other stock-based awards may be denominated in cash, in Common Stock or other securities, in stock-equivalent units, in stock appreciation units, in securities or debentures convertible into Common Stock, or in any combination of the foregoing and may be paid in Common Stock or other securities, in cash, or in a combination of Common Stock or other securities and cash, all as determined in the sole discretion of the Administrator.

7. **Miscellaneous**

(a) *Withholding of Taxes.* Grantees and Award holders shall pay to the Company or its Affiliate, or make provision satisfactory to the Administrator for payment of, any taxes required to be withheld in respect of Awards under the Plan no later than the date of the event creating the tax liability. The Company or its Affiliate may, to the extent permitted by law, deduct any such tax obligations from any payment of any kind otherwise due to the grantee or Award holder. In the event that payment to the Company or its Affiliate of such tax obligations is made in shares of Common Stock, such shares shall be valued at Fair Market Value on the applicable date for such purposes and shall not exceed in amount the minimum statutory tax withholding obligation.

(b) *Transferability.* Except as otherwise determined by the Administrator, and in any event in the case of an incentive stock option intended to qualify under Code Section 422 or a stock appreciation right granted with respect to an incentive stock option, no Award granted under the Plan shall be transferable by a grantee otherwise than by will or the laws of descent and distribution. Unless otherwise determined by the Administrator in accordance with the provisions of the immediately preceding sentence, an Award may be exercised during the lifetime of the grantee, only by the grantee or, during the period the grantee is under a legal disability, by the grantee's guardian or legal representative.

(c) *Adjustments for Corporate Transactions and Other Events.*

(i) *Stock Dividend, Stock Split and Reverse Stock Split.* In the event of a stock dividend of, or stock split or reverse stock split affecting, the Common Stock, (A) the maximum number of shares of such Common Stock as to which Awards may be granted under this Plan, as provided in

Section 4 of the Plan, and (B) the number of shares covered by and the exercise price and other terms of outstanding Awards, shall, without further action of the Board, be adjusted to reflect such event in such manner as equitably determined in the discretion of the Administrator. The Administrator may make adjustments, in its discretion, to address the treatment of fractional shares and fractional cents that arise with respect to outstanding Awards as a result of the stock dividend, stock split or reverse stock split.

(ii) *Non-Change in Control Transactions.* Except with respect to the transactions set forth in Section 7(c)(i), in the event of any change affecting the Common Stock, the Company or its capitalization, by reason of a spin-off, split-up, dividend, recapitalization, merger, consolidation or share exchange, other than any such change that is part of a transaction resulting in a Change in Control of the Company, the Board or any Committee that has been appointed to administer the Plan shall make, in such manner in its discretion and without the consent of the holders of Awards, (A) appropriate adjustments to the maximum number and kind of shares reserved for issuance or with respect to which Awards may be granted under the Plan, as provided in Section 4 of the Plan; and (B) any adjustments in outstanding Awards, including but not limited to modifying the number, kind and price of securities subject to Awards.

(iii) *Change in Control Transactions.* In the event of any transaction resulting in a Change in Control of the Company, outstanding stock options and other Awards that are payable in or convertible into Common Stock under this Plan will terminate upon the effective time of such Change in Control unless provision is made in connection with the transaction for the continuation or assumption of such Awards by, or for the substitution of the equivalent awards, as determined in the sole discretion of the Administrator, of, the surviving or successor entity or a parent thereof. In the event of such termination, the holders of stock options and other Awards under the Plan will be permitted, immediately prior to the effectiveness of such Change in Control, to exercise or convert all portions of any stock options or other Awards under the Plan that are then exercisable or convertible or which become exercisable or convertible upon or prior to the effective time of the Change in Control.

(iv) *Unusual or Nonrecurring Events.* The Administrator is authorized to make, in its sole discretion and without the consent of holders of Awards, adjustments in the terms and conditions of, and the criteria included in, Awards in recognition of unusual or nonrecurring events affecting the Company, or the financial statements of the Company or any Affiliate, or any unusual or nonrecurring cash dividends, or of changes in applicable laws, regulations, or accounting principles, whenever the Administrator determines that such adjustments are appropriate in order to prevent dilution or enlargement of the benefits or potential benefits intended to be made available under the Plan.

Notwithstanding the foregoing, adjustments to incentive stock options qualifying under Code Section 422 shall be made in accordance with the provisions of Code Section 424(h). In addition, no such adjustment shall cause any Award hereunder which is or becomes subject to Section 409A to fail to comply with the requirements of Section 409A.

- 7 -

EAST\40345481.10

(d) *Substitution of Awards in Mergers and Acquisitions.* Awards may be granted under the Plan from time to time in substitution for awards held by employees, officers, consultants or directors of entities who become or are about to become employees, officers, consultants or directors of the Company or an Affiliate as the result of a merger or consolidation of the employing entity with the Company or an Affiliate, or the acquisition by the Company or an Affiliate of the assets or stock of the employing entity. The terms and conditions of any substitute Awards so granted may vary from the terms and conditions set forth herein to the extent that the Administrator deems appropriate at the time of grant to conform the substitute Awards to the provisions of the awards for which they are substituted.

(e) *Other Agreements.* As a condition precedent to the grant of any Award under the Plan, the exercise pursuant to such an Award, or to the delivery of certificates for shares issued pursuant to any Award, the grantee or the grantee's successor or permitted transferee, as the case may be, shall become a party to the Stockholders' Agreement dated as of _____, 2008 among the Company and certain of its stockholders signatory thereto, as amended, modified, supplemented or restated from time to time, unless such agreement has been previously terminated in accordance with its terms.

(f) *Termination, Amendment and Modification of the Plan.* Subject to Section 3(b), the Board may terminate, amend or modify the Plan or any portion thereof at any time. Except as otherwise determined by the Board, termination of the Plan shall not affect the Administrator's ability to exercise the powers granted to it hereunder with respect to Awards granted under the Plan prior to the date of such termination.

(g) *Non-Guarantee of Employment or Service.* Nothing in the Plan or in any Grant Agreement thereunder shall confer any right on an individual to continue in the service of the Company or shall interfere in any way with the right of the Company to terminate such service at any time with or without cause or notice and whether or not such termination results in (i) the failure of any Award to vest; (ii) the forfeiture of any unvested or vested portion of any Award; and/or (iii) any other adverse effect on the individual's interests under the Plan.

(h) *Compliance with Securities Laws; Listing and Registration.* If at any time the Administrator determines that the delivery of Common Stock under the Plan is or may be unlawful under the laws of any applicable jurisdiction, or Federal, state or foreign securities laws, the right to exercise an Award or receive shares of Common Stock pursuant to an Award shall be suspended until the Administrator determines that such delivery is lawful. The Company shall have no obligation to effect any registration or qualification of the Common Stock under Federal, state or foreign laws.

The Company may require that a grantee, as a condition to exercise of an Award, and as a condition to the delivery of any share certificate, make such written representations (including representations to the effect that such person will not dispose of the Common Stock so acquired in violation of Federal, state or foreign securities laws) and furnish such information as may, in the opinion of counsel for the Company, be appropriate to permit the Company to issue the Common Stock in compliance with applicable Federal, state or foreign securities laws. The stock certificates for any shares of Common Stock issued pursuant to this Plan may bear a legend restricting transferability of the shares of Common Stock unless such shares are registered or an exemption from registration is available under the Securities Act of 1933, as amended, and applicable state or foreign securities laws.

(i) *No Trust or Fund Created.* Neither the Plan nor any Award shall create or be construed to create a trust or separate fund of any kind or a fiduciary relationship between the Company and a grantee or any other person. To the extent that any grantee or other person acquires a right to receive payments from the Company pursuant to an Award, such right shall be no greater than the right of any unsecured general creditor of the Company.

- 8 -

(j) *Section 409A.* The Plan and Awards are intended to comply with, or otherwise be exempt from, Section 409A. Should any provision of the Plan or an Award be found not to comply with, or otherwise be exempt from, the provisions of Section 409A, it may be modified and given effect, in the sole discretion of the Administrator and without requiring the consent of the Award holder (notwithstanding the provisions of any Grant Agreement), in such manner as the Administrator determines to be necessary or appropriate to comply with, or to effectuate an exemption from, Section 409A. The foregoing, however, shall not be construed as a guarantee by the Company of any particular tax effect to any Award recipient.

(k) *Governing Law.* The validity, construction and effect of the Plan, of Grant Agreements entered into pursuant to the Plan, and of any rules, regulations, determinations or decisions made by the Administrator relating to the Plan or such Grant Agreements, and the rights of any and all persons having or claiming to have any interest therein or thereunder, shall be determined exclusively in accordance with applicable federal laws and the laws of the State of Delaware, without regard to its conflict of laws principles.

(l) *Effective Date; Termination Date.* The Plan is effective immediately following the effective time of the merger between Victory Merger Sub and ACG pursuant to the terms of the Merger Agreement, subject to approval of the stockholders within twelve months before or after such date. No Award shall be granted under the Plan after the close of business on the day immediately preceding the tenth anniversary of the effective date of the Plan, or if earlier, the tenth anniversary of the date this Plan is approved by the stockholders. Subject to other applicable provisions of the Plan, all Awards made under the Plan prior to such termination of the Plan shall remain in effect until such Awards have been satisfied or terminated in accordance with the Plan and the terms of such Awards.

# APPENDIX A
# PROVISIONS FOR CALIFORNIA RESIDENTS

With respect to Awards granted to California residents prior to a public offering of capital stock of the Company that is effected pursuant to a registration statement filed with, and declared effective by, the Securities and Exchange Commission under the Securities Act of 1933, as amended, and only to the extent required by applicable law, the following provisions shall apply notwithstanding anything in the Plan or a Grant Agreement to the contrary:

1. With respect to any Award granted in the form of a stock option pursuant to Section 6(a) of the Plan:

   (a) The exercise period shall be no more than 120 months from the date the option is granted.

   (b) The options shall be non-transferable other than by will, by the laws of descent and distribution, or, if and to the extent permitted under the Grant Agreement, to a revocable trust or as permitted by Rule 701 of the Securities Act of 1933, as amended (17 C.F.R. 230.701).

   (c) Unless employment is terminated for "cause" as defined by applicable law, the terms of the Plan or Grant Agreement, or a contract of employment, the right to exercise the option in the event of termination of employment, to the extent that the Award recipient is entitled to exercise on the date employment terminates, will continue until the earlier of the option expiration date, or:

   (1) At least 6 months from the date of termination if termination was caused by death or disability.

   (2) At least 30 days from the date of termination if termination was caused by other than death or disability.

2. With respect to an Award, granted pursuant to Section 6(c) of the Plan, that provides the Award recipient the right to purchase stock, the Award shall be non-transferable other than by will, by the laws of descent and distribution, or, if and to the extent permitted under the Grant Agreement, to a revocable trust or as permitted by Rule 701 of the Securities Act of 1933, as amended (17 C.F.R. 230.701).

3. The Plan shall have a termination date of not more than 10 years from the date the Plan is adopted by the Board or the date the Plan is approved by the security holders, whichever is earlier.

4. Security holders representing a majority of the Company's outstanding securities entitled to vote must approve the Plan by the later of (a) 12 months after the date the Plan is adopted or (b) 12 months after the granting of any Award to a resident of California. Any option exercised or any securities purchased before security holder approval is obtained must be rescinded if security holder approval is not obtained within the period described in the preceding sentence. Such securities shall not be counted in determining whether such approval is obtained.

5. At the discretion of the Administrator, the Company may reserve to itself and/or its assignee(s) in the Grant Agreement or any applicable stock restriction agreement a right to repurchase securities held by an Award recipient upon such Award recipient's termination of employment at any time within six months after such Award recipient's termination date (or in the case of securities issued upon exercise of an option after the termination date, within six months after the date of such exercise) for cash or cancellation of purchase money indebtedness, at:

   (A) no less than the Fair Market Value of such securities as of the date of the Award recipient's termination of employment, provided, that such right to repurchase securities terminates when the Company's securities have become publicly traded; or

(B) the Award recipient's original purchase price, <u>provided</u>, that such right to repurchase securities at the original purchase price lapses at the rate of at least 20% of the securities per year over 5 years from the date the option is granted (without respect to the date the option was exercised or became exercisable).

The securities held by an officer, director, manager or consultant of the Company or an affiliate may be subject to additional or greater restrictions.

6.     In the event of a stock split, reverse stock split, stock dividend, recapitalization, combination, reclassification or other distribution of the Company's equity securities without the receipt of consideration by the Company, of or on the Common Stock, the number of shares covered by and the exercise price of such Awards will, without further action of the Board, be proportionally adjusted to reflect such event.

7.     The Company will provide financial statements to each Award recipient annually during the period such individual has Awards outstanding, or as otherwise required under Section 260.140.46 of Title 10 of the California Code of Regulations. Notwithstanding the foregoing, the Company will not be required to provide such financial statements to Award recipients when the Plan complies with all conditions of Rule 701 of the Securities Act of 1933, as amended (17 C.F.R. 230.701); provided that for purposes of determining such compliance, any registered domestic partner shall be considered a "family member" as that term is defined in Rule 701.

8.     The Plan is intended to comply with Section 25102(o) of the California Corporations Code. Any provision of this Plan which is inconsistent with Section 25102(o), including without limitation any provision of this Plan that is more restrictive than would be permitted by Section 25102(o) as amended from time to time, shall, without further act or amendment by the Board, be reformed to comply with the provisions of Section 25102(o). If at any time the Administrator determines that the delivery of Common Stock or the granting of any Award under the Plan is or may be unlawful under the laws of any applicable jurisdiction, or federal or state securities laws, the right to receive or exercise an Award or receive shares of Common Stock pursuant to an Award shall be suspended until the Administrator determines that such delivery is lawful. The Company shall have no obligation to effect any registration or qualification of the Common Stock under federal or state laws.

## PLAN APPROVAL

Date Approved by the Board: _____

Date Approved by the Stockholders: _____