# EXHIBIT J

**Restated Certificate of Incorporation of Vertis Holdings, Inc.**

SECOND AMENDED AND RESTATED

CERTIFICATE OF INCORPORATION

OF

**VERTIS HOLDINGS, INC.**

Vertis Holdings, Inc. (the "Corporation"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware ("DGCL"), hereby certifies as follows:

1.  The date of filing of the original Certificate of Incorporation with the Secretary of State was October 14, 1997, under the name Big Flower Holdings, Inc.

2.  This Second Amended and Restated Certificate of Incorporation further amends the Restated Certificate of Incorporation of the Corporation, as amended.

3.  The Corporation filed a petition for a reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on July 15, 2008.

4.  This Second Amended and Restated Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Joint Prepackaged Plans of Reorganization of Vertis Holdings, Inc., *et al.* dated July 15, 2008 as confirmed on _____, 2008 by the United States Bankruptcy Court for the District of Delaware.

5.  The text of the Amended and Restated Certificate of Incorporation, as amended, is hereby amended and restated to read as follows:

FIRST: The name of the Corporation is Vertis Holdings, Inc.

SECOND: The registered office of the Corporation within the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington 19808, County of New Castle. The registered agent of the Corporation within the State of Delaware is Corporation Service Company, the business office of which is identical to the registered office of the Corporation.

THIRD: The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the Delaware General Corporation Law, as from time to time amended (the "DGCL").

FOURTH: The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is thirty five million (35,000,000) shares of capital stock, consisting of (i) twenty five million (25,000,000) shares of common stock, par value $0.001 per share ("Common Stock"), and (ii) ten million (10,000,000) shares of preferred stock, par value $0.001 per share ("Preferred Stock").

The statement of the relative rights, preferences, privileges and limitations of the shares of each class is as follows:

1. Terms of the Common Stock.

   (a) *Equal Rights.* Each share of Common Stock of the Corporation shall have the same rights, preferences, privileges, interests and attributes, and shall be subject to the same limitation, as every other share of Common Stock of the Corporation.

   (b) *Voting.* At each annual or special meeting of stockholders, each holder of Common Stock shall be entitled to one (1) vote in person or by proxy for each share of Common Stock standing in such Person's name on the stock transfer records of the Corporation in connection with the election of directors and all other actions submitted to a vote of stockholders. Notwithstanding the foregoing, except as otherwise required by law or this Second Amended and Restated Certificate of Incorporation (including a Preferred Stock Designation), holders of Common Stock shall not be entitled to vote on any amendment to this Second Amended and Restated Certificate of Incorporation (including any amendment to any Preferred Stock Designation) that relates solely to the terms of one or more outstanding series of Preferred Stock if the holders of such affected series are entitled, either separately or together with the holders of one or more other such series, to vote thereon pursuant to this Second Amended and Restated Certificate of Incorporation (including any Preferred Stock Designation).

   (c) *Dividends and Other Distributions.* Subject to the rights of the holders of the Preferred Stock, if any, the record holders of the Common Stock shall be entitled to receive such dividends and other distributions in cash, stock, evidences of indebtedness or property of the Corporation as may be declared thereon by the Corporation's Board of Directors (the "Board of Directors") out of funds legally available therefor and shall share equally on a per share basis in such dividends and distributions.

   (d) *Liquidation.* In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, after payment or provision for payment of the debts and other liabilities of the Corporation, and subject to the rights of the holders of the Preferred Stock, if any, the holders of shares of Common Stock shall be entitled to participate pro rata at the same rate per share of Common Stock in all distributions to the holders of Common Stock in any liquidation, dissolution or winding up of the Corporation.

2. *Terms of the Preferred Stock.*

Shares of the Preferred Stock of the Corporation may be issued from time to time in one or more classes or series, each of which class or series shall have such distinctive designation or title as shall be fixed by the Board of Directors prior to the issuance of any shares thereof. Each such class or series of Preferred Stock shall have such voting powers, full or limited, or subject to Article TENTH hereof, no voting powers, and such preferences and relative, participating, optional or other special rights and such qualifications, limitations or restrictions thereof, as shall be stated in such resolution or resolutions providing for the issue of such class or series of Preferred Stock as may be adopted from time to time by the Board of Directors prior to the issuance of any shares thereof pursuant to the authority hereby expressly vested in the Board of

Directors and shall be included in a certificate of designations (a "Preferred Stock Designation"), all in accordance with the DGCL.

3.  *Limitation on Number of Record Holders.*

Notwithstanding anything set forth in this Second Amended and Restated Certificate of Incorporation or the Stockholders' Agreement, or the compliance with any of the terms hereof or thereof, no sale, transfer or other disposition ("Transfer") of Common Stock or Preferred Stock shall be effective, and any such Transfer of Common Stock or Preferred Stock, if any, shall be deemed null and void, if, as a result of any such Transfer, the record number of holders of the Corporation's equity securities would exceed 450.

FIFTH: The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation, and of its directors and stockholders:

1.  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. The election of directors need not be by written ballot.

2.  In furtherance and not in limitation of the powers conferred by statute, the Board of Directors or the Stockholders are expressly authorized to alter, amend, repeal, in whole or in part, or adopt new Bylaws of the Corporation (the "Bylaws"), provided, however, that notice of such alteration, amendment, repeal or adoption of new Bylaws be contained in the notice of such meeting of the Stockholders or the Board of Directors as the case may be; provided further, however that the Board of Directors may not amend Article II, Section 3 of the Bylaws. All such amendments must be approved by either a majority of the entire Board of Directors then in office or the affirmative vote of the holders of not less than a majority of the outstanding shares of capital stock entitled to vote at such meeting of the Stockholders.

3.  No director shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted by the DGCL as the same exists or hereafter may be amended. If the DGCL is hereafter amended to authorize corporate action further limiting or eliminating the liability of directors, then the liability of a director to the Corporation or its stockholders shall be limited or eliminated to the fullest extent permitted by the DGCL, as so amended. Any repeal or amendment of this Article FIFTH, Section 3 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Second Amended and Restated Certificate of Incorporation inconsistent with this Article FIFTH, Section 3 will, unless otherwise required by law, be prospective only, and will not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

4.  To the maximum extent permitted from time to time under the DGCL, the Corporation renounces any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, business operations relating directly or indirectly to the Print Media Business that are from time to time presented to its directors other than in their capacity as a

director and other than those directors who are employees of the Corporation. "Print Media Business" shall mean (a) print advertising, direct marketing solutions and related value added services and (b) marketing products that create strategic value by using creative advertising, color management technologies, proprietary research, customer targeting expertise, premedia and media services.

5. *Election of Directors; Voting.*

(a) The number of directors constituting the Board of Directors shall be five (5); provided, however, that the number of directors constituting the Board of Directors may be increased or decreased with the prior consent of the Avenue Stockholders (for so long as the Avenue Stockholders have the right to designate a director to the Board of Directors in accordance with this Section 5), and the ACGN Stockholders (for so long as the ACGN Stockholders have the right to designate a director to the Board of Directors in accordance with this Section 5). The directorships shall be filled as follows:

(i) (A) prior to the Reduction Date, three (3) directorships shall be filled by individuals designated by the Avenue Stockholders and (B) following the Reduction Date and for so long as the Avenue Stockholders have a Total Percentage Ownership of at least five percent (5.0%), one (1) directorship shall be filled by an individual designated by the Avenue Stockholders; and

(ii) for so long as the ACGN Stockholders have a Total Percentage Ownership of at least five percent (5.0%), one (1) directorship shall be filled by an individual designated by the ACGN Stockholders.

(b) If the Avenue Stockholders or the ACGN Stockholders lose the right to designate one or more directors of the Board of Directors, as applicable, pursuant to this Section 5, any director vacancy created by such directorship shall be filled in accordance with the Bylaws.

(c) Each committee of the Board of Directors shall have at least three (3) directors prior to the Reduction Date and at least two (2) directors after the Reduction Date, subject to the terms and conditions of this Section 5. Prior to the Reduction Date, each committee of the Board of Directors shall include two (2) directors designated for election to the Board of Directors by the Avenue Stockholders. After the Reduction Date, each committee of the Board of Directors shall include one (1) director designated for election to the Board of Directors by the Avenue Stockholders for so long as the Avenue Stockholders have the right to designate a director to the Board of Directors in accordance with this Section 5. Each committee of the Board of Directors shall include one (1) director designated for election to the Board of Directors by the ACGN Stockholders for so long as the ACGN Stockholders have the right to designate a director to the Board of Directors in accordance with this Section 5.

SIXTH: Indemnification.

1. Each Person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding") by reason of

the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter a "Covered Person"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding, and such right to indemnification shall continue as to a Person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that, except for proceedings to enforce rights to indemnification, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board of Directors. The right to indemnification conferred by this Article SIXTH shall be a contract right and shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition.

2. The rights conferred on any Covered Person by this Article SIXTH shall not be exclusive of any other rights which any Covered Person may have or hereafter acquire under law, this Second Amended and Restated Certificate of Incorporation, the Bylaws, an agreement, vote of stockholders or disinterested directors, or otherwise.

3. Any repeal or amendment of this Article SIXTH by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Second Amended and Restated Certificate of Incorporation inconsistent with this Article SIXTH, will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader indemnification rights on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

4. This Article SIXTH shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to Persons other than Covered Persons.

SEVENTH: The Corporation and certain holders of the Common Stock are subject to the Stockholders' Agreement. The following provisions are inserted to promote the terms and conditions set forth therein.

1. *Preemptive Rights.*

Any issuance of Common Stock or Preferred Stock shall be subject the preemptive rights of certain holders of Common Stock as set forth in the Stockholders' Agreement.

2.  *Limitations on Transfer.*

Notwithstanding anything set forth in this Second Amended and Restated Certificate of Incorporation, or the compliance with any of the terms hereof, no Transfer of Common Stock shall be effective, and any such Transfer of the Common Stock, if any, shall be deemed null and void, if, as a result of any such Transfer, the Person acquiring beneficial ownership (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended) of the Common Stock upon consummation of such Transfer (the "Transferee") would have beneficial ownership (as defined in Rule 13d-3 under the Securities Exchange Act of 1934, as amended) of 5.0% or more of the Common Stock unless such Transferee is or becomes a signatory to the Stockholders' Agreement.

EIGHTH: Meetings of stockholders may be held within or without the State of Delaware, as the Bylaws may provide. The books of the Corporation may be kept (subject to any provision contained in the DGCL) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the Bylaws.

NINTH: The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Second Amended and Restated Certificate of Incorporation, in any manner now or hereafter prescribed by statute, and all rights conferred upon any stockholder of the Corporation herein are granted subject to this reservation.

TENTH: Subject to further amendment of this Second Amended and Restated Certificate of Incorporation of the Corporation, as provided by applicable law, the Corporation shall not issue any non-voting equity securities in violation of section 1123(a)(6) of the Bankruptcy Code.

IN WITNESS WHEREOF, Vertis Holdings, Inc. has caused this certificate to be signed by _____, its _____, on the __ day of _____, 2008.


VERTIS HOLDINGS, INC.

By: _____
    Name:
    Title:

# ANNEX A
## TO THE SECOND AMENDED AND RESTATED CERTIFICATE OF INCORPORATION
## OF
## VERTIS HOLDINGS, INC.

**CERTAIN DEFINITIONS**

For purposes of this Second Amended and Restated Certificate of Incorporation, in addition to the other terms defined herein, the following terms shall have the following meanings:

"ACGN Stockholders" means, collectively, the Goldman Stockholders and the TCW Stockholders, acting in accordance with the Stockholders' Agreement.

"Affiliate" means, with respect to any Person, any other Person that directly, or indirectly through one or more intermediaries, Controls, or is Controlled by, or is under common Control with, such Person and/or one or more Affiliates thereof.

"Avenue Stockholders" means, collectively, Avenue Investments, LP and its Affiliates, only for so long as such Person owns shares of capital stock of the Corporation.

"Control" means, (including, with correlative meaning, the terms "controlling," "controlled by" and "under common control with") with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management, policies or investment decisions of such Person, whether through the ownership of voting Securities, by contract or otherwise.

"Equity Incentive Plan" means, collectively, (a) the Vertis Holdings, Inc. Equity Incentive Plan, as amended, modified, supplemented or restated from time to time and (b) any other plan or agreement established, or entered into, by the Corporation for the purposes of issuing Securities to any employee, officer, consultant or director of the Corporation or its Subsidiaries as compensation.

"Equity Incentive Shares" means shares of capital stock of the Corporation issued pursuant to, or acquired in connection with, the terms of any Equity Incentive Plan.

"Goldman Stockholders" means, collectively, [_____] and its Affiliates, in each case, only for so long as such Person owns shares of capital stock of the Corporation.

"Governmental Authority" means any domestic or foreign government or political subdivision thereof, whether on a Federal, state or local level and whether executive, legislative or judicial in nature, including any agency, authority, board, bureau, commission, court, department or other instrumentality thereof.

"Person" shall be construed as broadly as possible and shall include an individual person, a partnership (including a limited liability partnership), a corporation, an association, a joint

stock company, a limited liability company, a trust, a joint venture, an unincorporated organization and a Governmental Authority.

"Reduction Date" means the first date on which the Total Percentage Ownership of the Avenue Stockholders is less than twenty percent (20.0%).

"Securities" means "securities" as defined in Section 2(1) of the Securities Act of 1933, as amended, and includes, with respect to any Person, such Person's capital stock or other equity interests or any options, warrants or other securities that are directly or indirectly convertible into, or exercisable or exchangeable for, such Person's capital stock.

"Stockholders' Agreement" means the Stockholders' Agreement dated as of [_____], 2008, among the Corporation, and the stockholders of the Corporation signatory thereto from time to time, as amended, supplemented, modified or restated from time to time.

"Subsidiary" means, at any time, with respect to any Person (the "Subject Person"), any other Person of which either (a) fifty percent (50.0%) or more of the Securities or other interests entitled to vote in the election of directors or comparable governance bodies performing similar functions or (b) fifty percent (50.0%) or more of an interest in the profits or capital of such Person, in each case, are at the time owned or Controlled directly or indirectly by the Subject Person or through one or more Subsidiaries of the Subject Person.

"TCW Stockholders" means, collectively, [_____] and its Affiliates, in each case, only for so long as such Person owns shares of capital stock of the Corporation.

"Total Percentage Ownership" means with respect to any Person, the fraction, expressed as a percentage, the numerator of which is the total number of shares of Common Stock held by such Person and the denominator of which is the total number of shares of Common Stock issued and outstanding at the time of determination (excluding, from each of the numerator and the denominator above, any options, warrants, convertible debt obligations or similar Securities, and all Equity Incentive Shares).